1

2

3

4

5

6

7

8

The Honorable Lauren King

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

JOSHUA A. DIEMERT, an individual,

10

Plaintiff,

No. 2:22-CV-01640-LK

11

v.

**DEFENDANT'S MOTION TO DISMISS
PURSUANT TO RULE 12(b)**

12

13

THE CITY OF SEATTLE, a municipal
corporation; BRUCE HARRELL, in his official
capacity as the Mayor of the City of Seattle,

Note on Motion Calendar:
April 7, 2023

14

Defendants.

ORAL AGRUMENT REQUESTED

15

16

**TO:**       **JOSHUA A. DIEMERT, Plaintiff**

17

18

**AND TO:**   **BRIAN T. HODGES, LAURA M. D'AGOSTINO, ANDREW R. QUINIO,
              and PACIFIC LEGAL FOUNDATION, Plaintiff's Counsel of Record**

19

20

21

22

23

24

25

26

27

DEFENDANT'S MOTION TO DISMISS PURSUANT TO RULE 12(b)
(Case No. 2:22-CV-01640-LK)
4887-1182-7279v.8 0002348-000031

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION AND RELIEF REQUESTED ................................................................. 1

II.   STATEMENT OF FACTS ................................................................................................. 2

    A.    The Race and Social Justice Initiative serves the critical purpose of advancing racial equity within the City's workforce, and it applies to all employees regardless of race. ................................................................. 2

    B.    Plaintiff enjoyed over eight years of employment with the City with no adverse actions of any kind, although he routinely protested the City's efforts to prevent discrimination against employees of color. ........................... 4

    C.    After filing his EEOC charges, Plaintiff faced no retaliatory action and voluntarily resigned his employment when he could not continue to work remotely. ............................................................................................................... 7

    D.    Various irrelevant and time-barred allegations included in the FAC have no bearing on Plaintiff's claims. ...................................................................... 8

    E.    Plaintiff did not file a tort claim prior to bringing his state law claims. ............... 9

III.  STATEMENT OF ISSUES ............................................................................................... 9

IV.   EVIDENCE RELIED UPON ........................................................................................... 9

V.    ARGUMENT AND AUTHORITY ................................................................................... 9

    A.    Plaintiff's Equal Protection Claim should be dismissed because he has not sufficiently alleged intentional discrimination and because the RSJI is narrowly tailored to advance a compelling government interest. ....................... 10

    B.    Plaintiff's Hostile Work Environment claim fails because racial equity programming directed to the entire workforce cannot constitute harassment as a matter of law. ................................................................................ 14

    C.    Plaintiff's Disparate Treatment claim fails as a matter of law because he did not experience an adverse employment action and was not constructively discharged ............................................................................... 16

        1.    Plaintiff does not allege any tangible action that the City took against him based upon his race ............................................................. 17

        2.    Plaintiff has not alleged sufficient facts to show constructive discharge. ...................................................................................... 19

CITY OF SEATTLE'S MOTION TO DISMISS - i
(2:22-CV-01640-LK)
4887-1182-7279v.8 0002348-000031

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1

2

D.      Plaintiff's retaliation claim fails because he did not engage in protected activity under the law and did not experience an adverse action motivated by retaliatory animus..............................................................................20

E.      Plaintiff's WLAD claims should be dismissed because Plaintiff failed to follow the Tort Claim Act..........................................................................22

VI.     CONCLUSION..............................................................................................23

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

CITY OF SEATTLE'S MOTION TO DISMISS - ii
(2:22-CV-01640-LK)
4887-1182-7279v.8 0002348-000031

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1

## I.      INTRODUCTION AND RELIEF REQUESTED

2

The City of Seattle ("City") is committed to disrupting systems that perpetuate inequity

3

in this community and within its workforce.  For that reason, the City was an early proponent of

4

racial equity in employment and is proud to have created a powerful program that works today to

5

incorporate principles of racial equity into all aspects of its programming, known as the Race and

6

Social Justice Initiative ("RSJI").  The RSJI is broad and encompasses topics ranging from

7

recognizing how America's history of stolen land and slavery informs the structures and systems

8

of today, to educating employees on how larger systems, as well as their own unconscious

9

beliefs or assumptions may impact their behavior and providing tools to assist them in ensuring

10

they do not perpetuate inequities through their actions.  The root goal of the RSJI is to create an

11

equitable and inclusive environment where *all* workers can thrive.

12

Plaintiff Joshua Diemert is a Caucasian male who was employed as Program Intake

13

Representative with the City of Seattle's Human Services Department ("HSD") for over eight

14

years.  He was never demoted, given a negative performance review, nor had a decrease in his

15

pay.  He was never denied a promotion for which he applied.  He was not terminated.  He

16

voluntarily resigned from employment on September 7, 2021, after being told that he would be

17

required to return to the office in-person, something he did not wish to do.

18

Despite experiencing no adverse employment action, Plaintiff claims that RSJI trainings

19

and programming implemented to drive equity within the City's workforce and programs

20

constituted harassment or other adverse action against him because of his race, and that he felt so

21

personally offended by the City's RSJI work that he had no choice but to resign.  The essence of

22

Plaintiff's claims—that racial equity training and related programming constitutes discrimination

23

against him as a white male—is not only antithetical to the purpose of the statutes under which

24

he brings this action, but it also fails to state a claim under them.  Because the RSJI is a

25

legitimate, appropriate program that is directed to all City employees regardless of race and

26

intended to advance equity across the board, Plaintiff's claims must fail as a matter of law.

27

1   If the Court does not dismiss all claims, it should at a minimum dismiss Plaintiff's claims

2   under the Washington Law Against Discrimination because Plaintiff failed to file a tort claim

3   and give 60 days' notice before bringing these claims, as required under the law.

4   **II.     STATEMENT OF FACTS**

5   Pursuant to the Court's Standing Order, defense counsel met and conferred with

6   Plaintiff's counsel in advance of bringing this motion.  Plaintiff agreed to dismiss Mayor Bruce

7   Harrell but did not agree to voluntarily dismiss any claims against the City.

8   **A.     The Race and Social Justice Initiative serves the critical purpose of
        advancing racial equity within the City's workforce, and it applies to all
9       employees regardless of race.**

10  The Race and Social Justice Initiative is the City's commitment to eliminate racial

11  disparities and achieve racial equity in Seattle.  Doc 11-9 at 3 ("The [RSJI] is a citywide effort to

12  end institutionalized racism and race-based disparities in City government.").  The RSJI is

13  intended to advance equity for ***all***, not to disadvantage white employees.  Document 11-7

14  (explaining that the goal of RSJI is to learn to recognize and interrupt bias within existing

15  structures so as to "create a relational culture that is fertile soil for our collective care, health,

16  wellbeing, creativity, power, and collaboration."); Doc 11-12 at 34 ("Racial equity is not just

17  about better outcomes for people of color.  It's about a world in which ***we all get to be whole and

18  valued*** . . . .") (emphasis added).  This work is critical to the City, including Plaintiff's former

19  department, the HSD.  *See* Doc 11-11 at 2 (noting that an HSD assessment noted "the white

20  supremacist culture of the department and inequities experienced by people of color" and

21  supported the conclusion that there was "much work to do" towards racial and social justice).

22  The RSJI includes, among other things, training and community-building work.  RSJI

23  trainings educate all employees on racial equity principles to enhance their understanding of

24  systemic bias, as well as to provide tools to help them identify and address disparities.  This

25  includes training on systemic racism and privilege.  Docs. 11-13-14 (topics of training include

26  understanding how the values that were passed down from our country's founding incorporate

27  principles that operate to perpetuate white supremacy).  Although the trainings attempt to show

CITY OF SEATTLE'S MOTION TO DISMISS - 2
(2:22-CV-01640-LK)
4887-1182-7279v.8 0002348-000031

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

employees that they are participants in and, in some cases, benefit from an inherently biased system, the trainings are focused on fostering awareness of and minimizing harm, not on casting value judgments or punishing individuals. *See* Doc 11-12 at 23 (discussing formation of the United States, including history of genocide, enslavement, and bordering), 30-33 (discussing inequitable outcomes for people of different races, as well as structural barriers contributing to those outcomes). Plaintiff's Complaint acknowledges as much as it alleges that training was focused on systemic and cultural issues. *See* First Amended Complaint ("FAC") at ¶70 (employees must acknowledge their privilege and that we live in a white supremacy culture); ¶83 (stating that City pressured white employees to accept that all individuals of European origin are inherently racist); ¶94 (recognition that white supremacy persists, including that "HSD is a white institution"); ¶96 (training indicated that the United States is built upon a system of white supremacy). The RSJI also involves building awareness of privilege as a tool to promote understanding. See Doc 11-14 at 9 (stating the purpose was to "ground participants in the principles and language of anti-racism").

The RSJI trainings are for all employees, not just for white employees. For example, Doc 11-7 notes that white people who advocate for change may also face barriers in doing this work, such as being viewed as "not a team player" or "confrontational" and may, as a result, also experience marginalization. Doc 11-7 at 3. As for the attack on "white culture" that Plaintiff alleges, the RSJI does not attack white employees' values. Instead, it sheds light on how certain values—a sense of urgency, for example—are rooted in a history of white supremacy and, if over-emphasized, may operate in a way that excludes people of color. *Id*. The RSJI does not teach that these values must be abandoned: "***[T]he intention is not to create an either/or situation***. . . . Rather, the intention is to counter the existing and potential harmful impacts of over-emphasizing timelines and deadlines at the expense of humans and other living systems, especially those most impacted by the inequities and harms we're trying to address." *Id*.

The RSJI also incorporates affinity groups. These are optional employee groups that can meet to discuss and develop understanding of the RSJI materials, and they are available to all

CITY OF SEATTLE'S MOTION TO DISMISS - 3
(2:22-CV-01640-LK)
4887-1182-7279v.8 0002348-000031

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

employees, regardless of race.  *Id.* at 2 ("The Race and Social Justice work of the department is further strengthened by the African Descent, Asian and Pacific Islander, Latinx, and White caucuses that meet individually and bring collective racial and cultural lenses to the work of the department.").  Affinity group work is voluntary.  *See* Doc 11-15 at 3 ("We're ***inviting*** City employees who identify as white to join this training to learn, reflect, challenge ourselves, and build skills and relationships that help us show up more fully as allies and accomplices for racial justice.") (emphasis added); FAC at ¶75 (stating he was "strongly encouraged" to participate in race-based affinity groups); ¶76 (he was "invited" to attend a discussion); ¶81-86 (stating he felt pressured to participate in affinity groups but not alleging that he was required to do so).

Another component of the RSJI is the Race Equity Toolkit ("RET").  This is a resource to assist departments in "disrupting inequitable decision-making processes."  Doc 11-9 at 3.  The RET, like the rest of the RSJI initiative, is driven by equity and does not condone or promote preferential treatment of employees based on race.  Doc 11-12 at 22 (stating that a learning objective is to understand "[W]hy leading with a racial equity lens is the strategy to create equity for **all**.") (emphasis in original).

**B.      Plaintiff enjoyed over eight years of employment with the City with no adverse actions of any kind, although he routinely protested the City's efforts to prevent discrimination against employees of color.**

Plaintiff was hired in January 2013 as a Program Intake Representative in the Utility Discount Program at Human Services Department ("HSD").  He admits he remained in this role throughout his employment, except for a period when he claims he was temporarily designated as a "lead" and received a pay increase.  FAC at ¶27-28.  Although he alleges that RSJI work was incorporated into his review (¶72), he does not allege that he received a negative evaluation at any time.  He also does not allege he at any time applied for but did not receive a promotion to an open position.  *Id.* at ¶111-113 (stating without identifying the timeframe that he assumed responsibilities outside of his scope and that despite doing good work never receiving a promotion or substantial pay increase, but not alleging that a promotion or increase was available or that anyone outside of his protected class received one under similar circumstances).

CITY OF SEATTLE'S MOTION TO DISMISS - 4
(2:22-CV-01640-LK)
4887-1182-7279v.8 0002348-000031

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

During the last few years of his employment, Plaintiff became increasingly vocal regarding his opposition to the City's race equity work.  Although Plaintiff characterizes his statements as complaints of discrimination, his communications reflect that he simply disagreed with the City's goals of advancing workplace equity, based on the misguided perception that advancing equity for others constituted discrimination against himself as a white male.[1]  The language from the communications Plaintiff cites in the complaint[2] demonstrates that his concerns were not of being harmed but instead statements of disapproval of the City's work to drive equity.  *See, e.g.*, Attachment 1, cited in FAC at ¶51 (July 13, 2017 email from Plaintiff to his supervisor claiming a "divisive and discriminatory" workplace begins with, "After yesterday's meeting, I have decided that I will no longer participate so I don't offend [female coworker] anymore with any 'mansplaining.' . . . Next time, instead of waiting until the end of the meeting to complain that the meeting was just a lot of 'mansplaining', please have someone interrupt and stop us up front so we know our place."); Attachment 2, cited in FAC at ¶54 (December 4, 2018 email where Plaintiff responds to an invitation to join a white caucus event by stating, "Please remove me from your email list. Although you have not included your discriminatory material in this email, I find your overt racism offensive and will file harassment charges with the EEOC if you continue."); Attachment 3, cited in FAC at ¶88 (June 21, 2021 email asking for permission to start an affinity group: "I would like to create a non-race-based group that advocates for western liberal values and rejects stereotyping people by race.  Should I just send out an email announcement or does the city only allow the promotion of political ideologies such as Critical Race Theory and Critical Social Justice that stereotype people by race?").

---

[1] Plaintiff also includes various conclusory allegations that he complained of discrimination, which are insufficient to demonstrate protected activity absent further detail.  *See* FAC at ¶52, 53, 55, 59.  Conclusory legal allegations and unwarranted inferences cannot defeat a motion to dismiss.  *Vasquez v. Los Angeles County*, 487 F.3d 1246, 1249 (9th Cir. 2007).

[2] The Court may consider documents referenced in the complaint without converting a motion to dismiss into a motion for summary judgment.  *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018) ("The doctrine [of incorporation by reference] prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims.")

CITY OF SEATTLE'S MOTION TO DISMISS - 5
(2:22-CV-01640-LK)
4887-1182-7279v.8 0002348-000031

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1    Despite Plaintiff's complaints, he does not allege that he received a negative review,

2    change in duties, pay decrease, or any other tangible consequence as a result of his objection to

3    the RSJI work.  Although Plaintiff's resistance to racial equity did not harm him, however, his

4    vocal opposition to the work did in some cases harm his colleagues, including people of color at

5    the City who were invested in RSJI's work.  For example, when another City employee Edward

6    Odom posted an article about the Tulsa Race Massacre and efforts to ban critical race theory on a

7    City SharePoint site, Plaintiff posted a lengthy objection to the post, claiming it was racist, and

8    stating "[The] Republican party was created to free the slaves from the Democrats."  Attachment

9    4, cited in FAC at ¶99.  When a colleague replied to Plaintiff's post, calling it ignorant, Plaintiff

10   responded, "I am sorry if my rejection of racial stereotypes upsets you. I am against people

11   attempting to racially scapegoat others because of their skin color which is why I stand against

12   CRT."  *Id.*

13   The "aggressive" email from Odom that Plaintiff cites in his complaint was in actuality

14   an effort to engage Plaintiff in a dialogue.  Attachment 5, cited in FAC at ¶99.  In an email

15   following up on Plaintiff's public post, Odom wrote, "I chose to respond by email because I

16   wouldn't want this content to be misconstrued and seen as demeaning.  I appreciate and invite

17   tough conversations and value the opinion of others. . . . ***I get it-it can seem as it was a personal***

18   ***attack directed against all white people, but it is not.***  It is about accurately telling the stories

19   that have been buried for years."  *Id.*  Plaintiff responded to Odom with a hateful diatribe:

20          I think that your public comment is more demeaning. Instead of attempting to
21          defend your position you resort to retaliatory attacks about one's intentions that you
             have no way of knowing unless you are a psychic or have evidence. Are you a
22          psychic? Do you have anyone on video declaring that they are against CRT because
             it made them feel guilty? You do not. Your response is just an underhanded attack
23          in attempt to denigrate myself or others for disagreeing with the racism embedded
             in critical race theory. Instead of attacking people that call out the racism in the
24          ideologies you are defending, why not defend the teachings of CRT themselves?
             Can you? Why sidestep the issue? Why don't we unpack what you are for and what
25          you are against?
             …
26          You are promoting political ideas in the workplace that condone racial stereotyping
27          and projecting it to an audience out of context and under false pretense. A person

should not be condoning CRT in the workplace no more than *Mein Kampf*. Its racist and based on the same worldview that denigrates all races of people. Next time, leave your political disinformation out of the story because your public support of racism does not belong in the workplace no matter how you dress it up.

Given the language and tone Plaintiff chose to use in interacting with his Black colleague Odom, it is not surprising that the complaint reflects that numerous City employees expressed discomfort with Plaintiff's vocal opposition to the City's racial equity work.  FAC at ¶66 (coworkers called him a white supremacist); ¶67 (his supervisor told him that his comments in the Undoing Institutional Racism workshop caused his coworkers to call him "racist" and "hateful"); (¶96 colleague objected to Plaintiff's comments, stating his words were "violence" and invaded her "safe space"); ¶98 (Plaintiff voluntarily joined a lunchroom conversation about white privilege and made comments that led his colleagues to feel he was "attempting to discredit their lived experience").

C.    **After filing his EEOC charges, Plaintiff faced no retaliatory action and voluntarily resigned his employment when he could not continue to work remotely.**

Following his EEOC charges, Plaintiff continued in his position with no adverse actions taken against him.  Apart from the continuation of the RSJI, Plaintiff raises very little of alleged concern between the time he filed his charges and his resignation.  FAC at ¶134 (stating that his supervisor emailed someone else asking how many applications he had but not stating that he faced any disciplinary action or even alleging that the supervisor discussed this issue with him); ¶136 (stating he did not have monthly supervisor meetings and that he had trouble getting approval to use Adobe PDF software).  Plaintiff also cites the denial of an FMLA claim but alleges no facts to support his baseless claim that he was denied FMLA or his speculative assertion that any alleged denial was connected to his complaints about RSJI.  *Id.* at ¶137-138.

Plaintiff acknowledges he quit his job because he was not permitted to work from home as of August 2021.  *Id.* at ¶140.  He alleges that BIPOC applicants would be given priority to telework over him based upon race because of the Racial Equity Toolkit.  The RET contains no

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

such provision, and there are no grounds for this speculative allegation in the complaint.[3]
Instead the RET provides a framework for decisions that includes consideration of how the
proposed initiative will increase or decrease racial equity and what potential unintended
consequences or benefits may be, as well as strategies to address the impacts, and how to use an
inclusive approach to decision-making that incorporates community perspectives.  It is used to
evaluate policies, initiatives, programs, or budget issues: whether or not employees are approved
to telework does not fall into any of the racial equity opportunity areas the RET lays out.

> **D.    Various irrelevant and time-barred allegations included in the FAC have no
> bearing on Plaintiff's claims.**

Although the focus of Plaintiff's action is his opposition to the City's racial equity
programming, the FAC includes an array of allegations that either (1) are time-barred because
they are discrete employment actions that occurred years before he filed his complaint; or
(2) have no connection to Plaintiff's claims of race discrimination and retaliation for reporting
race discrimination.

Discrete actions occurring long before the limitations period include Plaintiff's claim that
he was denied a promotion in August of 2015.[4]  FAC at ¶114-118 (arguing that he was denied a
promotion in August of 2015, although not alleging that he actually applied for an open position
or that he was more qualified than the person who received it).  It also includes the allegation
that Plaintiff's supervisor pressured him to step down from a lead position in April 2017,
allegedly based on a combination of retaliation for taking FMLA and racial bias.  FAC at ¶31-35
(acknowledging that he stepped down from the lead position but stating that he also "was
punished for taking FMLA leave because of his race").  *See also id.* at ¶104-109 (statements
alleged to have occurred in 2015, 2016, 2017, and 2018 related to hiring, data collection,
applications for assistance programs—none of which relate to any alleged actions taken related
to Plaintiff's own employment).

---

[3] The Race Equity Toolkit is available at https://www.seattle.gov/documents/Departments/RSJI/Resources/Racial-Equity-Toolkit-Fillable-RSJI-August-2012.pdf.

[4] The limitations period for Plaintiff's federal claims is 300 days, and it is three years for his state law claims.

CITY OF SEATTLE'S MOTION TO DISMISS - 8
(2:22-CV-01640-LK)
4887-1182-7279v.8 0002348-000031

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Plaintiff's complaint also includes various allegations that are unrelated to his discrimination claims. FAC at ¶50 (March 2017 allegation that he reported ethical issues); ¶56 (alleging another employee used the HSD system for personal gain); ¶103 (stating he was denied a medical request to be excused from RSJI trainings but not asserting a failure to accommodate claim); ¶119 (stating in an undated allegation that he was discriminated against for seeking back pay for performing out-of-class work); ¶137-38 (alleging without foundation that the Department of Labor found that the City violated his FMLA rights, and speculating this finding was "on account of his race").

**E.      Plaintiff did not file a tort claim prior to bringing his state law claims.**

Plaintiff filed his Complaint on November 16, 2022. Plaintiff amended his Complaint on January 19, 2023, to, among other things, add claims arising under the Washington Law Against Discrimination. Although the First Amended Complaint alleges that Plaintiff provided the City a Tort Claim Form on November 14, 2022 (FAC at ¶23), the referenced document is not a tort claim form. The City has to date not received a tort claim form from Plaintiff.

### III.      STATEMENT OF ISSUES

Whether the Court should grant the City's Motion to Dismiss when Plaintiff's claims are all premised on the idea that universally applied racial equity work constituted discrimination against him as a white man?

### IV.      EVIDENCE RELIED UPON

Defendants rely on the First Amended Complaint and the attached copies of documents referenced therein.

### V.      ARGUMENT AND AUTHORITY

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. The plaintiff must present "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 requires that a complaint's allegations give the defendant fair notice of the claim and the "grounds" on which it rests. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007). "[A] plaintiff's

CITY OF SEATTLE'S MOTION TO DISMISS - 9
(2:22-CV-01640-LK)
4887-1182-7279v.8 0002348-000031

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citing *Conley v. Gibson*, 355 U.S. 41, 46-47 (1957)).  A plaintiff must allege enough facts to state a claim for relief that is plausible on its face.  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1940, 173 L. Ed. 2d 868 (2009); *Twombly*, 550 U.S. at 570.

Although the Court must accept as true the complaint's well-pleaded facts, conclusory legal allegations and unwarranted inferences cannot defeat a motion to dismiss.  *See Vasquez v. Los Angeles County*, 487 F.3d 1246, 1249 (9th Cir. 2007).  "[T]he Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context." *Iqbal*, 556 U.S. at 686. "A complaint will not survive a motion to dismiss if it 'tenders naked assertions devoid of further factual enhancement.'" *Blantz v. California Dep't. of Corr. & Rehab., Div. of Corr. Health Care Servs.*, 727 F.3d 917, 927 (9th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678).  When the allegations fail to state a claim, "this basic deficiency should. . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Twombly*, 550 U.S. at 558 (citation omitted).

A.    **Plaintiff's Equal Protection Claim should be dismissed because he has not sufficiently alleged intentional discrimination and because the RSJI is narrowly tailored to advance a compelling government interest.**

To establish a §1983 Equal Protection violation, a plaintiff must show "that the defendants, acting under color of state law, discriminated against [him] as [a] member[ ] of an identifiable class and that the discrimination was intentional." *Flores v. Morgan Hill Unified Sch. Dist.*, 324 F.3d 1130, 1134 (9th Cir. 2003).  That is, a plaintiff must show that the defendant acted with an intent or purpose to discriminate against him based upon his membership in a protected class. *Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003).

As discussed in relation to his Title VII claims below, Plaintiff fails to allege sufficient facts to support a finding that he was treated differently based upon a protected class or that any differential treatment rose to the level that would violate the law.  In other words, there is no cognizable race-based classification or action at issue in this case.  Even if Plaintiff could meet

CITY OF SEATTLE'S MOTION TO DISMISS - 10
(2:22-CV-01640-LK)
4887-1182-7279v.8 0002348-000031

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

this burden, however, his Equal Protection claim would fail because the RSJI is narrowly tailored to achieve the compelling state interest of eradicating systemic racism within the City's workforce. *W. States Paving Co. v. Washington State Dep't of Transp.*, 407 F.3d 983, 990 (9th Cir. 2005).

It is well-recognized that this country's racist history has led to ongoing disparities, such that employers like the City are called upon to do the difficult work of rooting out and addressing inequities. "We cannot forget our own history, and we cannot change it. We can, however, forge a new path forward, committing to justice as we do so." *State v. Towessnute*, 197 Wn.2d 574, 575, 578, 486 P.3d 11, 113 (2021). On June 4, 2020, the Washington State Supreme Court issued the following statement to members of the legal community and judiciary:

> The devaluation and degradation of black lives is not a recent event. It is a persistent and systemic injustice that predates this nation's founding. But recent events have brought to the forefront of our collective consciousness a painful fact that is, for too many of our citizens, common knowledge: the injustices faced by black Americans are not relics of the past. We continue to see racialized policing and the overrepresentation of black Americans in every stage of our criminal and juvenile justice systems. Our institutions remain affected by the vestiges of slavery: Jim Crow laws that were never dismantled and racist court decisions that were never disavowed.

> The legal community must recognize that we all bear responsibility for this on-going injustice, and that we are capable of taking steps to address it, if only we have the courage and the will. The injustice still plaguing our country has its roots in the individual and collective actions of many, and it cannot be addressed without the individual and collective actions of us all. . . .

> Finally, as individuals, we must recognize that systemic racial injustice against black Americans is not an omnipresent specter that will inevitably persist. It is the collective product of each of our individual actions—every action, every day. It is only by carefully reflecting on our actions, taking individual responsibility for them, and constantly striving for better that we can address the shameful legacy we inherit. We call on every member of our legal community to reflect on this moment and ask ourselves how we may work together to eradicate racism. As we lean in to do this hard and necessary work, may we also remember to support our black colleagues by lifting their voices. Listening to and acknowledging their experiences will enrich and inform our shared cause of dismantling systemic racism.

CITY OF SEATTLE'S MOTION TO DISMISS - 11
(2:22-CV-01640-LK)
4887-1182-7279v.8 0002348-000031

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Open Letter from Wash. State Sup. Ct. to Members of Judiciary & Legal Cmty. (June 4, 2020).[5] *See also Henderson v. Thompson*, 200 Wn.2d 417, 433, 518 P.3d 1011, 1022 (2022) (describing how hidden biases negatively impact justice in legal proceedings, noting, "[Racism] is a part of our common historical experience and, therefore, a part of our culture. It arises from the assumptions we have learned to make about the world, ourselves, and others as well as from the patterns of our fundamental social activities.") (*citing Towessnute*, 197 Wn.2d at 575 (2021) (in recalling 1916 mandate and vacating conviction of Yakima Tribal member for fishing without a state license, rejecting the earlier opinion's racist language and concluding that such past opinions "continue to perpetrate injustice by their very existence") (overturning *State v. Towessnute*, 89 Wn. 478, 154 P. 805 (1916)); *also citing* Charles R. Lawrence III, The Id, the Ego, and Equal Protection: Reckoning with Unconscious Racism, 39 STAN. L. REV. 317, 330 (1987)); *see also State of Washington v. Saintcalle*, 178 Wn.2d 34, 46, 309 P.3d 326, 335 (2013), *abrogated on other grounds by City of Seattle v. Erickson*, 188 Wn.2d 721, 398 P.3d 1124 (2017) ("[T]he problem is that racism itself has changed. . . .  Racism now lives not in the open but beneath the surface—in our institutions and our subconscious thought processes—because we suppress it and because we create it anew through cognitive processes that have nothing to do with racial animus.").[6]

The City's RSJI work—including its focus on acknowledging and addressing systemic and institutional racism—is precisely the type of effort that employers must undertake in order to even begin to undo the legacy of slavery and colonialism in this country, and it is expressly intended to drive equity, not to advance the interest of any one group over another.  *See* Executive Order 2018-04  (showing that the RSJI is motivated in part by disparities by race and gender related to reports of workplace harassment and discrimination).  Because the RSJI is

---

[5] Available at
https://www.courts.wa.gov/content/publicUpload/Supreme%20Court%20News/Judiciary%20Legal%20Community%20SIGNED%20060420.pdf
[6] See also Task Force On Race and the Criminal Justice System, *Preliminary Report on Race and Washington's Criminal Justice System*, 35 SEATTLE U. L. REV. 623 (2012) (hereinafter Task Force Report), available at
https://digitalcommons.law.seattleu.edu/cgi/viewcontent.cgi?article=2076&context=sulr.

CITY OF SEATTLE'S MOTION TO DISMISS - 12
(2:22-CV-01640-LK)
4887-1182-7279v.8 0002348-000031

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

narrowly tailored to achieve the compelling purpose of eradicating systemic discrimination in the City's workforce and services, Plaintiff's Equal Protection claim fails.

To the extent Plaintiff relies on specific language by his coworkers outside of the trainings that he felt targeted him based on race or specific language he attributes to third-party trainers, his Equal Protection claim also fails because he does not plead facts that establish municipal liability under §1983.  In order to set forth a claim against a municipality under 42 U.S.C. §1983, Plaintiff must show that the City's employees or agents acted through an official custom, pattern or policy that permits deliberate indifference to or violates the plaintiff's civil rights; or that it ratified the unlawful conduct.  *See Monell v. Dep't of Soc. Servs. Of City of New York.*, 436 U.S. 658, 690–91, 98 S. Ct. 2018, 56 L.Ed.2d 611 (1978);  *Larez v. City of Los Angeles*, 946 F.2d 630, 646–47 (9th Cir.1991).  The municipal action must be the moving force behind the injury of which plaintiff complains.  *Bd. Of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 405, 117 S. Ct. 1382, 1389, 137 L.Ed.2d 626 (1997).  Here, Plaintiff cites specific language from trainers and interactions with his colleagues in support of his claim.  Because these statements by individual employees or third-party trainers are not the official actions of the City, they cannot support a §1983 claim.  *Bair v. City of Atlantic City*, 100 F. Supp. 2d 262, 267 (D.N.J. 2000) ("A municipality cannot be sued for civil rights violations under the doctrine of *respondeat superior*; it can only be held responsible for the deprivation of constitutional rights if a municipal policy or custom of some nature caused the constitutional injury.") (citing *Monell,* 436 U.S. 658); *see also City of Canton, Ohio v. Harris,* 489 U.S. 378, 109 S. Ct. 1197, 103 L.Ed.2d 412 (1989) ("[A] local government may not be sued under §1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy . . . , whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under §1983.").

CITY OF SEATTLE'S MOTION TO DISMISS - 13
(2:22-CV-01640-LK)
4887-1182-7279v.8 0002348-000031

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

**B.    Plaintiff's Hostile Work Environment claim fails because racial equity programming directed to the entire workforce cannot constitute harassment as a matter of law.**

To state a claim of hostile work environment, Plaintiff must allege: (1) he was subjected to conduct of a harassing nature based on his race; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of his employment and create an abusive work environment.  *Vasquez v. County of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003); *Glasgow v. Georgia-Pacific Corp.*, 103 Wn.2d 401, 406-07 (1985).  Here, while Plaintiff alleges that the RSJI programming was unwelcome, he fails to allege sufficient facts to support a finding in his favor on the remaining factors.

First, it is clear as a matter of law that the RSJI is not directed at Plaintiff because of his race.  The complaint acknowledges that RSJI work pervades the work environment at the City and is necessarily directed to the workforce as a whole, not just white employees.  Plaintiff was not singled out or treated differently.  Second, the RSJI does not constitute harassment.  Plaintiff claims that education on historical atrocities, systemic bias, and white privilege constituted harassment against him.  The fundamental premise underlying his claim—that he was harmed simply by being educated about the realities of systemic discrimination—must be rejected. Employers like the City who are committed to advancing equity have a significant amount of work to do if they are to truly level the playing field and create equitable working environments. A finding that a white employee may claim he was harassed by virtue of being educated on racial disparities would function as a gag order on employers, preventing them from advancing equity within their organizations and ultimately burdening employees from marginalized backgrounds, including employees of color.

Plaintiff also cannot state a claim of hostile work environment because any alleged race-based conduct was not severe or pervasive.  To determine whether an environment is sufficiently hostile or abusive to violate Tile VII, the court considers "all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

employee's work performance." *Vasquez* 349 F.3d at 642. (citing *Christian v. Umpqua Bank*, 984 F.3d 801, 809 (9th Cir. 2020)).  "Not every insult or harassing comment will constitute a hostile work environment."  *Ray v. Henderson*, 217 F.3d 1234, 1245 (9th Cir. 2000).  A hostile work environment "must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so."  *Id.* (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S. Ct. 2275, 2283–84, 141 L. Ed. 2d 662 (1998)).

   The core allegation in Plaintiff's complaint is that the RSJI itself constituted harassment. FAC at ¶153 (harassing conduct included "offensive racial mandatory race-based training, segregated staff meetings, race-based affinity groups, and frequent and repeated commitments to the Defendants' RSJI program.").  *See also* FAC at ¶93 (alleging that starting meetings with a "proclamation that the land upon which they all stood was stolen by 'white people'" constituted "racist messaging").  The RSJI is critical to advancing racial equity, and a reasonable person would not find it to be abusive or hostile.  Plaintiff also alleges that his coworkers spoke negatively about him, including stating that he is a "white supremacist," that he was "racist" and "hateful," or that he was "the reincarnation of people that shot native Americans from trains, rounded up jews for the camps, hunted down gypsies in Europe and runaway slaves in America." FAC at ¶¶66-68.  Plaintiff does not allege that he personally observed some of these statements or that he was aware of them before his resignation.  *See, e.g.*, FAC at ¶68 (stating his colleagues "used their work emails" to belittle him).  Other statements appear to be direct responses to Plaintiff's negative public statements about racial equity.  *Id.* at ¶67 (noting Plaintiff's coworkers called him "hateful" after he objected during an Undoing Institutional Racism training).  Others are alleged to have occurred five or six years before he filed this action.  *Id.* at ¶48-49 (citing alleged comments in 2015 and 2016).  Others are attributed to third-party facilitators and were alleged to have been made to a group, not to Plaintiff individually.  *Id.* at ¶65.

   Taken together, the interactions alleged in the complaint are insufficient as a matter of law to reach the standard of objective harassment.  *See Sanchez v. City of Santa Ana*, 936 F.2d

1027, 1031, 1036 (9th Cir.1990) (allegations that employer posted a racially offensive cartoon, made racially offensive slurs, targeted Latinos when enforcing rules, provided unsafe vehicles to Latinos, did not provide adequate police backup to Latino officers, and kept illegal personnel files on plaintiffs because they were Latino were insufficient); *Manatt v. Bank of America*, *NA*, 339 F.3d 792 (9th Cir. 2003) (coworkers saying, "China Man" and pulling "their eyes back with their fingers in an attempt to imitate or mock the appearance of Asians," ridiculing plaintiff's accent, and referring to her as "China woman" was offensive and insensitive but insufficient to create an actionable hostile work environment); *Vasquez*, 349 F.3d at 643 (no hostile work environment where the employee was told that he had "a typical Hispanic macho attitude," that he should work in the field because "Hispanics do good in the field" and where he was yelled at in front of others).  This is especially true in this case, as most comments from coworkers appear to have been reactions to Plaintiff's outspoken criticism of racial equity work.  *See Fried v. Wynn Las Vegas, LLC*, 18 F.4th 643, 649 (9th Cir. 2021) (noting that "the context in which the [allegedly harassing] comments were made is also important"; there, the employee could not claim comments about him cooking were gender-based because he had told others his dream job was to own a food truck; here, comments that Plaintiff was racist or hatful were based on Plaintiff's vocal opposition to racial equity work).

### C.    Plaintiff's Disparate Treatment claim fails as a matter of law because he did not experience an adverse employment action and was not constructively discharged.

To establish a *prima facie* case of disparate treatment in violation of Title VII, a plaintiff must establish that (1) the plaintiff is a member of a protected class; (2) he performed his job satisfactorily; (3) he experienced an adverse employment action; and (4) similarly situated individuals outside of plaintiff's protected class were treated more favorably.  *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006).  Disparate treatment occurs "where an employer has treated a particular person less favorably than others because of a protected trait."  *Wood v. City of San Diego*, 678 F.3d 1075, 1081 (9th Cir. 2012).

CITY OF SEATTLE'S MOTION TO DISMISS - 16
(2:22-CV-01640-LK)
4887-1182-7279v.8 0002348-000031

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1

   **1.**  **Plaintiff does not allege any tangible action that the City took against**
     **him based upon his race.**

2

  Plaintiff's disparate treatment claim fails because he did not experience an adverse

3
employment action.  An adverse employment action is one that "materially affect[s] the

4
compensation, terms, conditions, or privileges of . . . employment." *Davis v. Team Elec. Co.*,

5
520 F.3d 1080, 1089 (9th Cir. 2008) (citing *Chuang v. Univ. of California Davis, Bd. of Trustees*,

6
225 F.3d 1115, 1126 (9th Cir. 2000)).  Under the WLAD, this means "a significant change in

7
employment status, such as hiring, firing, failing to promote, reassignment with significantly

8
different responsibilities, or a decision causing a significant change in benefits." *Marin v. King*

9
*County*, 194 Wn. App. 795, 808-09, 378 P.3d 203, 212 (2016) (quoting *Anica v. Wal-Mart*

10
*Stores, Inc.*, 120 Wn. App. 481, 488 (2004).  Plaintiff's disparate treatment claims allege that the

11
City treated him differently than other employees because he was subject to trainings and

12
conversations about racial equity.[7]  None of his allegations are sufficient to state an adverse

13
action.

14
  Plaintiff's discomfort with racial equity work does not support a disparate treatment

15
claim.  In *Brooks v. City of San Mateo*, 229 F.3d 917, 929 (9th Cir. 2000), an employee who

16
complained of sexual harassment was required thereafter to participate in "group therapy

17
sessions" in which the employer explained its sexual harassment policy.  Although the employee

18
was uncomfortable in the sessions, this did not constitute an adverse action under Title VII.  The

19
Court noted the employee was not "singled out for the sessions, as all city employees were

20
required to participate in them."  *Id.*  Moreover, her employer had "an interest in educating its

21
employees about the adverse effects of misconduct that has occurred in the workplace."  *Id.*  The

22
Court held, an employer's "legitimate effort to deal with a traumatic workplace situation and

23
educate its employees regarding sexual harassment cannot be the basis for a retaliation claim

24
under Title VII."  *Id.*  Here, being required to attend trainings that were intended to address racial

25

26

27

---

[7] Plaintiff also includes various allegations with tenuous, if any, connections to race; allegations arising prior to the statute of limitations; and speculation in support of his claim of adverse action.  FAC at ¶171. *Antonius v. King County*, 153 Wn.2d 256, 264, 103 P.3d 729, 733 (2004) (for "discrete acts" like termination, failure to promote, denial of transfer, or refusal to hire, "the limitations period runs from the act itself, and if the limitations period has run, a discrete act is not actionable even if it relates to acts alleged in timely filed charges.").

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

disparities and to advance equity did not constitute an adverse action.  Nor does the City's decision not to authorize Plaintiff's affinity group constitute disparate treatment, as Plaintiff does not allege that another similarly situated individual was allowed to create an affinity group outside of the RSJI or that the denial of his proposed affinity group had any negative impact on his employment.

Plaintiff also has not alleged sufficient facts to support a finding of discriminatory intent, as required for his claim.  The RSJI is race neutral.  The City's interest in advancing racial equity for its workforce by eliminating systemic racism does not constitute a discriminatory intent or motive against white employees, either in general or in relation to any particular action the City took in relation to Plaintiff.  Plaintiff's claims fail on their face on this additional basis.  *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1295–96 (9th Cir. 2000) (existence of program with stated goal of "increasing diversity in management" and fact that reduction in force "was monitored to determine whether it had any impact on women or minorities" did not constitute evidence that white male plaintiff was terminated due to race); *Filozof v. Monroe Cmty. Coll.*, 583 F. Supp. 2d 393, 402 (W.D.N.Y. 2008), *aff'd*, 411 F. App'x 423 (2d Cir. 2011) (leadership statements "emphasiz[ing] the need to increase diversity among faculty and staff" and stating the hiring committee could "perceive a candidate's minority status as a positive" did not support claim of discrimination under Title VII; also recognizing that "diversity in higher education has been recognized as a compelling government interest."); *Bernstein v. St. Paul Cos., Inc.,* 134 F.Supp.2d 730, 739 (D. Md. 2001) ("[A]n employer's statement that it is committed to diversity 'if expressed in terms of creating opportunities for employees of different races and both genders ... is not proof of discriminatory motive with respect to any specific hiring decision. Indeed, it would be difficult to find today a company of any size that does not have a diversity policy.'"); *Lutes v. Goldin*, 62 F. Supp. 2d 118, 130 (D.D.C. 1999) (company's stated interest in advancing diversity did not equate to proof of motive to discriminate against plaintiff; statements included, "We won't have [a] space program that will be made up of white middle age males" and describing the workforce as "too frail, too pale, to[o] male and too stale";

CITY OF SEATTLE'S MOTION TO DISMISS - 18
(2:22-CV-01640-LK)
4887-1182-7279v.8 0002348-000031

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

plaintiff could not tie statements to specific employment action he claimed was discriminatory); *Reed v. Agilent Techs., Inc.,* 174 F.Supp.2d 176, 185 (D. Del. 2001) (unless the plaintiff can demonstrate that the defendant's diversity policy "had some negative impact upon his individual employment situation, the mere existence of a policy promoting diversity awareness is not evidence of discrimination"); *Jones v. Bernanke*, 493 F.Supp.2d 18, 29 (D.D.C. 2007) (testimony regarding manager's objective of increasing diversity in the workplace did not support discrimination claim).

> **2.    Plaintiff has not alleged sufficient facts to show constructive discharge.**

Lacking any adverse action, Plaintiff claims he was constructively discharged.  Federal case law describes constructive discharge as "an employee's reasonable decision to resign because of unendurable working conditions."  *State of Washington v. Horning Bros., LLC*, 339 F. Supp. 3d 1106, 1130–31 (E.D. Wash. 2018) (citing *Pennsylvania State Police v. Suders*, 542 U.S. 129, 141, 124 S. Ct. 2342, 159 L.Ed.2d 204 (2004)).  This is an objective inquiry for the Court, under both federal and state law.  *Id.* (noting that under Washington law, an employee must show: (1) the employer engaged in deliberate conduct which made the employee's working conditions intolerable; (2) a reasonable person in the employee's position would be forced to resign; (3) the employee resigned solely because of the intolerable conditions; and (4) the employee suffered damages) (citing *Allstot v. Edwards*, 116 Wn. App. 424, 433, 65 P.3d 696 (2003)).  Intolerable working conditions exist where an employee is subjected to "aggravating circumstances or a continuous pattern of discriminatory treatment" on the part of the employer. *Id.*  Further, courts applying Washington law must "presume [the] resignation is voluntary and, thus, cannot give rise to a claim for constructive discharge."  *Townsend v. Walla Walla Sch. Dist.*, 147 Wn. App. 620, 627, 196 P.3d 748, 752 (2008).  The employee may rebut this presumption "by showing the resignation was prompted by duress or an employer's oppressive actions."  *Id.* at 627-28.  Mere subjective dissatisfaction, however, is insufficient to overcome the presumption.  *Id.* at 628.

CITY OF SEATTLE'S MOTION TO DISMISS - 19
(2:22-CV-01640-LK)
4887-1182-7279v.8 0002348-000031

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Here, Plaintiff's dissatisfaction with the City's racial equity work is insufficient to support a constructive discharge claim because a reasonable person would not find that attending racial equity trainings and being invited to attend voluntary affinity group sessions constituted oppression. Moreover, it is apparent from the face of the complaint that Plaintiff resigned because he could no longer work from home, not because of ongoing harassment. FAC at ¶140.

**D. Plaintiff's retaliation claim fails because he did not engage in protected activity under the law and did not experience an adverse action motivated by retaliatory animus.**

To establish a retaliation claim under Title VII, an employee must show that he or she engaged in statutorily protected activity, suffered an adverse employment action, and that there is a causal link between the protected activity and the adverse action. *Nilsson v. City of Mesa*, 503 F.3d 947, 953–54 (9th Cir. 2007). Engaging in statutorily protected activity means that the employee protested or otherwise opposed an unlawful employment practice against employees protected by Title VII. *Moyo v. Gomez*, 40 F.3d 982, 984 (9th Cir. 1994). While it is not necessary that the employment practice actually be unlawful, opposition activity must be "based on a reasonable belief that the employer has engaged in an unlawful employment practice." *Id.* (citing *EEOC v. Crown Zellerbach Corp.*, 720 F.2d 1008, 1013 (9th Cir. 1983)). "The reasonableness of a plaintiff's belief that an unlawful employment practice occurred must be assessed according to an objective standard." *Id.*

Plaintiff's allegations do not establish that he complained of conduct that he reasonably believed violated the law. Racial equity work, such as the RSJI and other use of critical race theory, is not unlawful. Instead, it is both proper and encouraged. In a January 20, 2021 Executive Order, President Biden stated,

> Entrenched disparities in our laws and public policies, and in our public and private institutions, have often denied [] equal opportunity to individuals and communities. . . .
>
> It is therefore the policy of my Administration that the Federal Government should pursue a comprehensive approach to advancing equity for all, including people of color and others who have been historically underserved, marginalized, and adversely affected by persistent poverty and inequality. Affirmatively advancing

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

equity, civil rights, racial justice, and equal opportunity is the responsibility of the whole of our Government.  Because advancing equity requires a systematic approach to embedding fairness in decision-making processes, executive departments and agencies (agencies) must recognize and work to redress inequities in their policies and programs that serve as barriers to equal opportunity.  . . . Consistent with these aims, each agency must assess whether, and to what extent, its programs and policies perpetuate systemic barriers to opportunities and benefits for people of color and other underserved groups.  Such assessments will better equip agencies to develop policies and programs that deliver resources and benefits equitably to all.

Executive Order On Advancing Racial Equity and Support for Underserved Communities Through the Federal Government.  86 FR 7009, (January 20, 2021) (revoking Executive Order 13950 of September 22, 2020, which had banned use of critical race theory by federal contractors).

Plaintiff's complaints here were that racial equity work that included systemic racism training and community measures like affinity groups violated his rights as a white male.  While Plaintiff may genuinely believe this is the case, he cannot show that a reasonable person could believe the same, given the state of the law.  Because the conduct of which Plaintiff complained was not illegal and could not reasonably be construed as violative of Title VII or the WLAD, his claims fail.  *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 271, 121 S. Ct. 1508, 1510, 149 L. Ed. 2d 509 (2001) (retaliation claim failed when "[n]o reasonable person could have believed that the single incident [of alleged harassment] violated Title VII's standard.").

Plaintiff also does not allege an adverse employment action motivated by retaliation.  Not every undesirable occurrence at work constitutes an adverse action for purposes of a Title VII retaliation claim: "only non-trivial employment actions that would deter reasonable employees from complaining about Title VII violations will constitute actionable retaliation." *Brooks* 229 F.3d at 928–29.  *See Ray*, 217 F.3d at 1243 ("[A]n action is cognizable as an adverse employment action if it is reasonably likely to deter employees from engaging in protected activity.").  Among those employment decisions that can constitute an adverse employment action are termination, dissemination of a negative employment reference, issuance of an undeserved negative performance review and refusal to consider for promotion. *Brooks*, 229

CITY OF SEATTLE'S MOTION TO DISMISS - 21
(2:22-CV-01640-LK)
4887-1182-7279v.8 0002348-000031

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

F.3d at 928.  By contrast, less serious slights like "declining to hold a job open" for an employee

and "badmouthing an employee outside the job reference context" do not constitute adverse

employment actions.  *Id.* at 929.  Here, Plaintiff alleges his manager stopped scheduling

meetings with him and that Plaintiff had trouble accessing software he needed for his job.  Taken

in the light most favorable to Plaintiff, these slights are insufficient to show an adverse

employment action.

> **E.     Plaintiff's WLAD claims should be dismissed because Plaintiff failed to follow the Tort Claim Act.**

Because none of Plaintiff's claims have merit on their face, all claims should be

dismissed with prejudice.  If the Court does not dismiss the claims, it should nevertheless dismiss

Plaintiff's WLAD claims for his failure to comply with RCW 4.96 *et seq.*

Prior to commencing any tort action against a local governmental entity, potential

plaintiffs must first file a pre-suit claim for damages.  RCW 4.96.010(1) ("[f]iling a claim for

damages within the time allowed by law shall be a condition precedent to the commencement of

any action claiming damages"); *see also* Seattle Municipal Code 5.24.005.  Further, RCW

4.96.020(4) states that action for damages may not be "commenced against any local

governmental entity, or against any local governmental entity's officers, employees, or

volunteers" until sixty calendar days have elapsed after the pre-suit tort claim was first presented

to the agent of the governmental entity.  RCW 4.96.020(4).  The purpose of this pre-suit tort

claim requirement is "to allow government entities time to investigate, evaluate, and settle

claims" before they are sued.  *Renner v. City of Marysville*, 168 Wn.2d 540, 545, 230 P.3d 569

(2010) (quoting *Medina v. Public Utility Dist. No. 1 of Benton County*, 147 Wn.2d 303, 310, 53

P.3d 993 (2002)).

A plaintiff must comply with the statutory notice requirements contained in RCW 4.96.

RCW 4.96.020(5).  "Although the claim filing statutory scheme authorizes substantial

compliance with the laws specifying the content of the notice of claim, strict compliance is

clearly emphasized with the filing procedures themselves."  *Reyes v. City of Renton*, 121 Wn.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

App. 498, 502, 86 P.3d 155, 157 (2004) (internal quotation marks omitted).

Plaintiff filed his Complaint on November 16, 2022.  Plaintiff amended his Complaint on January 19, 2023, to, among other things, add claims arising under the Washington Law Against Discrimination.  Although the First Amended Complaint alleges that Plaintiff provided the City a Tort Claim Form on November 14, 2022 (FAC at ¶23), the referenced document is not a tort claim form.  The City has to date not received a tort claim form from Plaintiff. Because Plaintiff did not comply with RCW 4.96, the Court should dismiss his WLAD claims. *Hintz v. Kitsap County*, 92 Wn. App. 10, 14, 960 P.2d 946, 948 (1998) ("The proper remedy for failure to comply with a notice of claim statute is dismissal of the suit.").

## VI.   CONCLUSION

"Courts take a step toward achieving greater justice when the people who comprise them comprehend the legacy of injustices built into our legal systems, actively work to prevent racism before it occurs, and also recognize how our participation in these systems may reify them." *Henderson v. Thompson*, 200 Wn.2d 417, 446, 518 P.3d 1011, 1028 (2022).  On their face, Plaintiff's claims in this case rely on the premise that a reasonable Caucasian male would find being educated on and asked to assist in undoing centuries of systemic racism to constitute severe, pervasive, and intolerable working conditions.  Because the law cannot and should not be read to allow a claim under these circumstances, the City respectfully requests that the Court dismiss Plaintiff's claims with prejudice.

DATED this 10th day of March, 2023.

DAVIS WRIGHT TREMAINE LLP
*Attorneys for Defendants The City of Seattle and Bruce Harrell*

By  /s/Victoria Slade
Sheehan Sullivan, WSBA #33189
Victoria M. Slade, WSBA 44597
Darrah N. Hinton, WSBA #53542
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610

CITY OF SEATTLE'S MOTION TO DISMISS - 23
(2:22-CV-01640-LK)
4887-1182-7279v.8 0002348-000031

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Telephone:  206.622.3150
Fax:  206.757.7700
Email:  sulls@dwt.com
Email:  vickyslade@dwt.com
Email:  darrahhinton@dwt.com

CITY OF SEATTLE'S MOTION TO DISMISS - 24
(2:22-CV-01640-LK)
4887-1182-7279v.8 0002348-000031

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1

### CERTIFICATE OF SERVICE

2      I hereby certify that I caused a true and correct copy of the document to which this

3  Certificate of Service is attached to be served in the manner as indicated below:

4      **PACIFIC LEGAL FOUNDATION**              ☐ Via Legal Messenger
       *Attorneys for Plaintiff:*
5                                                ☐ Via U.S. Mail, postage prepaid

6      **Brian T. Hodges, WSBA #31976**          ☐ Via Federal Express
       1425 Broadway, Suite 429
7      Seattle, WA 98122                         ☐ Via Facsimile
       Telephone: 425.576.0484
8      Email: bhodges@pacificlegal.org          ☐ Via Electronic Mail

9                                                ☒ **Via Court ECF**
       **Laura M. D'Agostino, Virginia Bar #91556**
10     *Admitted Pro Hac Vice*
       3100 Clarendon Boulevard, Suite 1000
11     Arlington, VA 22201
       Telephone: 916.503.9010
12     Email: ldagostino@pacificlegal.org

13     **Andrew R. Quinio, California Bar #288101**
14     *Admitted Pro Hac Vice*
       555 Capitol Mall, Suite 1290
15     Sacramento, CA 95814
       Telephone: 916.419.7111
16     Email: aquinio@pacificlegal.org

17

18     Declared under penalty of perjury under the laws of the State of Washington.

19     DATED at Mount Vernon, Washington this 10th day of March, 2023.

20
                                        */s/ Carol Huerta*
21                                      Carol Huerta, Legal Assistant
                                        DAVIS WRIGHT TREMAINE LLP
22                                      920 Fifth Avenue, Suite 3300
                                        Seattle, WA 98104-1610
23                                      Telephone: 206.622.3150
                                        Email: carolhuerta@dwt.com
24

25

26

27

CITY OF SEATTLE'S MOTION TO DISMISS - 25
(2:22-CV-01640-LK)
4887-1182-7279v.8 0002348-000031

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax