The Honorable Jamal Whitehead

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JOSHUA A. DIEMERT, an individual,

                    Plaintiff,

        v.

THE CITY OF SEATTLE, a municipal
corporation,

                    Defendant.

No. 2:22-CV-01640-JNW

**REPLY IN SUPPORT OF DEFENDANT'S CORRECTED MOTION TO DISMISS PURSUANT TO RULE 12(b)**

Note on Motion Calendar:  April 7, 2023

**ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

Page

I.     INTRODUCTION ..................................................................................................... 1

II.    ARGUMENT .......................................................................................................... 2

       A.     The Court should reject Plaintiff's theory that racial equity training and
              programming constitutes discrimination............................................................. 2

       B.     Discrete employment actions occurring before the statute of limitations are
              barred and not actionable under the continuing violation doctrine...................... 4

       C.     Plaintiff's remaining allegations are insufficient to rise to the level of an
              adverse employment action, and any allegation of discriminatory intent is
              speculative.......................................................................................................... 5

       D.     Plaintiff's allegations are insufficient to allege a claim for a racially hostile
              work environment. .............................................................................................. 6

       E.     Plaintiff has failed to allege sufficient facts to show he was retaliated
              against or constructively discharged. .................................................................. 8

       F.     Plaintiff's § 1983 claims fail on the additional basis that he was not treated
              differently, and there is no motivation to discriminate against him. .................. 10

III.   CONCLUSION...................................................................................................... 11

REPLY IN SUPPORT OF DEFENDANT'S CORRECTED
MOTION TO DISMISS PURSUANT TO RULE 12(b) - i
(Case 2:22-CV-01640-JNW)
4873-5893-9228v.2 0002348-000031

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

## I.   INTRODUCTION

The City of Seattle's ("City") Race and Social Justice Initiative ("RSJI") is a program that is designed to drive equity in the City's workforce and programming so that *all employees* can thrive.  There is no aspect of the RSJI that condones or encourages mistreatment of white employees.  Instead, the RSJI promotes a workplace where all employees can navigate equitably, without barriers based on race or other protected class.

It is clear from the face of the First Amended Complaint ("FAC") and exhibits thereto that Plaintiff's case is premised on his belief that the City's work to combat systemic racism constitutes discrimination against himself as a white man, as well as his position that discussion of racial equity in the workplace constitutes harassment.  These allegations are, as a matter of law, not sufficient to state a claim of discrimination or harassment.  The RSJI is directed at all employees and not just white employees.  The RSJI, statements related to it regarding white privilege, and similar concepts are intended to advance understanding of systemic racism and do not constitute race-based harassment.  Moreover, the RSJI serves the critical purpose of driving racial equity—something employers must prioritize to create diverse and inclusive workplaces.

The assorted allegations that Plaintiff adds to buttress his complaints about the RSJI are insufficient to state a claim under any of his causes of action.  *First*, Plaintiff's disparate treatment claim, alleging that he was forced to step down from a lead position, denied a promotion, and denied compensation for out-of-class work is time-barred.  *Second,* no other allegations rise to the level of an adverse employment action.  *Third*, Plaintiff's speculative and conclusory assertions that various actions were attributed to him are not facts and insufficient to defeat the City's Motion.  *Fourth*, Plaintiff's allegations of unwelcome interactions with colleagues do not constitute the kind of severe or pervasive race-based harassment required to establish a hostile work environment claim.  *Fifth*, while Plaintiff did raise complaints, it was not reasonable for him to believe the conduct of which he complained constituted unlawful discrimination for purposes of his retaliation claim.  Further, the conditions Plaintiff describes following his complaints do not rise to the level of an adverse action for purposes of a retaliation

REPLY IN SUPPORT OF DEFENDANT'S CORRECTED
MOTION TO DISMISS PURSUANT TO RULE 12(b) - 1
(Case 2:22-CV-01640-JNW)
4873-5893-9228v.2 0002348-000031

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

claim, or to the level of intolerable conduct required to support a constructive discharge claim. **Finally**, even if Plaintiff's allegations were true, they would not constitute deprivation of his rights for purposes of his Equal Protection claim; importantly, because the City did not intentionally discriminate against him.

Because Plaintiffs' allegations are insufficient to sustain any of his causes of action, the Court should grant the City's Motion and dismiss all claims with prejudice.[1]

## II.   ARGUMENT

### A.   The Court should reject Plaintiff's theory that racial equity training and programming constitutes discrimination.

Plaintiff alleges the City's Motion oversimplifies his action by claiming that it is focused on the RSJI's racial equity training and programming. Despite Plaintiff's shift in focus onto allegations that are not directly tied to racial equity work, it is evident from the FAC that his action revolves around the RSJI. *See, e.g*, FAC at ¶¶ 38-45 (describing RSJI); ¶ 69 (stating that City meetings incorporated RSJI trainings); ¶ 70 (citing exercises regarding awareness of white privilege), ¶¶ 71-72 (citing prevalence of equity trainings and other RSJI activities); ¶ 73 (claiming antiracism exercise caused emotional distress); ¶ 74 (complaining of training regarding "Characteristics of White Supremacy Culture"); ¶¶ 75-77 and ¶¶ 81-87 (discussing affinity group work); ¶ 93 (citing "racist" messaging in emails and meetings that included acknowledgment that land was stolen from native tribes); ¶ 104 (claiming his doctor stated, "a major source of stress for him . . . are his cultural sensitivity training classes").

The documents Plaintiff attaches to his Complaint also demonstrate that the RSJI is at the core of Plaintiff's complaints. Plaintiff's 12-23-20 EEOC Charge is focused entirely on the RSJI: "Since several years ago, the City of Seattle implemented the Race and Social Justice Initiative (RSJI) which is based on Critical Race Theory. It mandates that I take mandatory training sessions that degrade, stereotype, and demean people based on inherent identities and national origin." Doc. 11-1 at 2. Similarly, Plaintiff's June 30, 2022 EEOC charge concludes

---

[1] The City withdraws its request to dismiss based on failure to file a Tort Claim.

REPLY IN SUPPORT OF DEFENDANT'S CORRECTED
MOTION TO DISMISS PURSUANT TO RULE 12(b) - 2
(Case 2:22-CV-01640-JNW)
4873-5893-9228v.2 0002348-000031

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1    with a statement attributing all of the alleged conduct described therein to the RSJI:

2        Respondent explicitly denigrates employees who identify as straight, White,
         American-born, Christian males through their policies, trainings, and
3        communications. ***In particular, the Respondents RSJI, a discriminatory program
         that all departments in the city are required to implement, is the cause of the
4        events above.*** RSJI promotes notions such as white privilege and the collective
         guilt I allegedly bear for societal inequality because of my skin color. Anti-white
5        talk is normalized by Respondent and occurs regularly. Respondent mandated my
         participation in RSJI-related programs and trainings, and RSJI forms the foundation
6        of the Respondents discrimination and hostility towards me.

7    Doc. 11-3 at 3 (emphasis added).

8        The majority of Plaintiff's allegations regarding communications with his coworkers are

9    also not harassment, but instead reflect Plaintiff's distorted view of teachings from racial equity

10   programming. For example, in his first EEOC charge (Doc. 11-3), he claims coworkers told him

11   "you can't be racist towards a white person"; "all white people are racist"; and that he has "white

12   privilege." *Id.* at 3. As social justice educator Robin DiAngelo explains, such pronouncements

13   are not personal attacks, but instead reflect RSJI's education on the societal power differential

14   between whites and other races in our society:

15       Although mainstream definitions of racism are typically some variation of
         individual "race prejudice", which anyone of any race can have, Whiteness scholars
16       define racism as encompassing economic, political, social, and cultural structures,
         actions, and beliefs that systematize and perpetuate an unequal distribution of
17       privileges, resources and power between white people and people of color (Hilliard,
         1992). This unequal distribution benefits whites and disadvantages people of color
18       overall and as a group. Racism is not fluid in the U.S.; it does not flow back and
         forth, one day benefiting whites and another day (or even era) benefiting people of
19       color. The direction of power between whites and people of color is historic,
         traditional, normalized, and deeply embedded in the fabric of U.S. society.
20

21   Robin DiAngelo, *White Fragility*, 3 INTERNATIONAL JOURNAL OF CRITICAL PEDAGOGY 54

22   (2011). While Plaintiff hears statements about "white privilege" and inherently racist systems as

23   an attack, there is nothing in the FAC to suggest that such comments are discriminatory or

24   harassing, as opposed to factual.

25       Plaintiff essentially alleges that he felt uncomfortable learning about systemic racism,

26   being told about his inherent privilege as a white person, being advised that he benefits from

27   inherently racist systems, and being taught about his own implicit biases. He claims, that as a

white male, this discomfort constitutes discrimination.  Plaintiff's interest in avoiding discomfort does not outweigh the City's interest in creating a workplace that is diverse, equitable, and inclusive for all employees, including members of marginalized groups.  Because the RSJI is the foundation for Plaintiff's entire case, and because the RSJI cannot, as a matter of law, constitute discrimination, the Court should grant the City's Motion.

**B.**    **Discrete employment actions occurring before the statute of limitations are barred and not actionable under the continuing violation doctrine.**

In an effort to bolster his claims, Plaintiff cites allegations occurring long before the statute of limitations, and he attempts to shoehorn them into this action under the continuing violation doctrine.  The Court should reject this effort.

The statute of limitations for Plaintiff's claims under Washington law is three years, and the statute of limitations for his claims under Title VII and § 1983 is 300 days.  *Antonius v. King County,* 153 Wn.2d 256, 261-62, 103 P.3d 729 (2004) (WLAD claims); *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116, 122 S. Ct. 2061, 153 L.Ed.2d 106 (2002) (Title VII).  The limitations period starts to run when a cause of action accrues, meaning the date the party has the right to seek relief in the courts.  *Colwell v. Eising,* 118 Wn.2d 861, 867 (1992).  *See Washington v. Boeing Co.*, 105 Wn. App. 1, 14-15 (2000) (refusing to consider allegations of disparate treatment and retaliation occurring outside the three-year statute of limitations); *Morgan*, 536 U.S. 101 at 108–13 (applying the same concept to Title VII claims).

Plaintiff relies on the continuing violation theory to argue his allegations are timely.  This theory allows the consideration of events outside the limitations period where they are part of the same unlawful act, i.e., they make up the same hostile work environment.  *Morgan,* 536 U.S. 101, 122.  The continuing violation theory does not apply, however, to discrete employment acts that would be sufficient on their own to support a claim.  *See Davis v. City of Seattle*, 2008 WL 202708 (W.D. Wash. Jan. 22, 2008) (holding that plaintiff's attempt to group one claim of hostile work environment discrete acts, like not promoting her or transfer to a different shop because of her gender, each had the "requisite degree of permanence" to trigger her duty to

REPLY IN SUPPORT OF DEFENDANT'S CORRECTED
MOTION TO DISMISS PURSUANT TO RULE 12(b) - 4
(Case 2:22-CV-01640-JNW)
4873-5893-9228v.2 0002348-000031

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

assert her rights and could not be used to circumvent the statute of limitations); *Raines v. Seattle School Dist. No. 1*, 2013 WL 496199 (W.D. Wash. 2013) (noting that alleged conduct (failure to promote, refusal to hire) all constituted discrete acts that cannot be cobbled together to form a hostile work environment claim, and none related to an offending act within the statute of limitations); *Richards v. City of Seattle*, 2008 WL 2570668 (W.D. Wash. June 26, 2008), aff'd, 342 F. App'x 289 (9th Cir. 2009) (finding that discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire, cannot qualify as related acts outside the limitations periods since they have the requisite degree of permanence to trigger the duty to assert rights).

Here, Plaintiff's allegations that he was forced to step down from a lead role in March 2017 (FAC at ¶¶ 27-37), denied a promotion in 2015 (FAC at ¶¶ 111-118), and not compensated for out of class work in 2015 (FAC at ¶ 119) all have the degree of permanence that would start the clock on the statute of limitations. Because they occurred long before the statute of limitations, these actions are barred and cannot form the basis for Plaintiff's claims.

### C. Plaintiff's remaining allegations are insufficient to rise to the level of an adverse employment action, and any allegation of discriminatory intent is speculative.

Plaintiff offers additional allegations he claims are sufficient to meet the burden of demonstrating he suffered an adverse employment action for purposes of his disparate treatment claim. None suffice.

Plaintiff's claim that another employee used race in making a hiring or programmatic decision, even if true, is not sufficient because he does not allege it impacted the terms of his own employment. FAC at ¶¶ 104-110. Further, Plaintiff's allegations about Shamsu Said, who he baselessly identifies as a "supervisor," do not establish an adverse action. Plaintiff claims Said "verbally accosted" him, stated he was "complicit in the sins of slavery," that Said later "chest-bumped" him, told him he had "white privilege," and that his race "was to blame for the atrocities in the world." FAC at ¶¶ 57-58. Even if true, these allegations fail to establish an adverse employment action because they do not show any tangible aspect of his employment was

REPLY IN SUPPORT OF DEFENDANT'S CORRECTED
MOTION TO DISMISS PURSUANT TO RULE 12(b) - 5
(Case 2:22-CV-01640-JNW)
4873-5893-9228v.2 0002348-000031

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1    impacted.  Nor does Plaintiff allege that being assigned to Said after he made a complaint

2    impacted the terms and conditions of his employment.  FAC at ¶¶ 120-121.  And, although he

3    complains that Said was not "reprimanded," he acknowledges that Said moved after the

4    complaint, and he does not allege that similar conduct occurred after the move.  FAC at ¶ 120.[2]

5    Importantly, Plaintiff fails to plausibly allege that Said's actions were motivated by racial

6    animus.  To the contrary, Plaintiff alleges that Said's actions were retaliation based on Plaintiff's

7    ethics complaint against him.  FAC at ¶¶ 56, 58.

8          Among other elements, a disparate treatment plaintiff must show that he experienced an

9    adverse employment action.  *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th

10    Cir. 2006).  Plaintiff in this case was not demoted, did not experience a title change, did not

11    apply for a job he failed to get, did not receive a reduction in pay, was not discharged, and did

12    not even receive a negative performance evaluation.  Instead, he resigned from his position when

13    he was asked to return to the office in person.  FAC at ¶ 140.  There is no adverse action alleged.

### D.    Plaintiff's allegations are insufficient to allege a claim for a racially hostile work environment.

16          As discussed above, Plaintiff cannot revive the statute of limitations on discrete

17    employment acts.  His allegation of being denied opportunities for advancement therefore cannot

18    support his harassment claim.[3]

19          As discussed above, the RSJI applies to all employees equally and does not constitute

20    harassment.  The out-of-jurisdiction district court cases Plaintiff relies on are not to the contrary.

21          In *Mais v. Albemarle Cnty. Sch. Bd.,* No. 3:22-CV-51, 2023 WL 2143471 (W.D. Va. Feb.

22    21, 2023), plaintiff survived a motion to dismiss her claims under Title VII after alleging her

23    coworkers were "openly cursing about her and calling her vulgar names at work," including a

24    "white racist bitch" and a "two-faced racist bitch."  *Id.* at 2.  Here, Plaintiff alleges that his

---

[2] Although Plaintiff challenges the quality of the investigation into his concerns both as to Said and elsewhere, even if true, an allegedly inferior investigation does not constitute an adverse employment action, as there is no cause of action in Washington for negligent investigation.  *Lambert v. Morehouse*, 68 Wn. App. 500, 504 (1993).
[3] The FAC also alleges that the position was not renewed, so it does not appear Plaintiff has alleged facts sufficient to support a finding that a position existed that he applied for but did not receive.  FAC at ¶36.

REPLY IN SUPPORT OF DEFENDANT'S CORRECTED
MOTION TO DISMISS PURSUANT TO RULE 12(b) - 6
(Case 2:22-CV-01640-JNW)
4873-5893-9228v.2 0002348-000031

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

coworkers told him he had white privilege and pushed back on his denigration of the RSJI work. FAC at ¶ 98. While Plaintiff claims one employee called him "some asshole," he does not allege he heard this comment, rather, it appears to have been in private emails. *Id.* at ¶ 98. In *Mais*, the employer failed to investigate or respond to the plaintiff's complaint, but rather, required plaintiff to make a public apology. Here, the City did investigate Plaintiff's allegations. Far from requiring a public apology, the City tolerated Plaintiff's aggressive comments toward his coworkers in opposition to racial equity work. *See* MTD, Dkt. 19-1, Attachment 5 (arguing to a colleague that teaching critical race theory was akin to citing *Mein Kampf* in the workplace). Finally, the *Mais* court notably did not find that the systemic racism trainings themselves constituted harassment.

*Devine v. Pittsburgh Bd. of Pub. Educ.*, No. 2:13-CV-220, 2015 WL 3646453 (W.D. Pa. June 10, 2015), is also inapt. There, the teacher-plaintiff claimed her principal called her the "embodiment of 'white privilege.'" After receiving a satisfactory rating in early January, the principal contemplated putting plaintiff on a performance plan later that month and had her formally observed. The plaintiff received a negative performance rating and was advised she would be fired for cause unless she resigned a month later. The court found there was an issue of fact regarding whether the performance issues were legitimate and whether similarly situated black teachers with the same issues received better treatment. Here, in contrast, Plaintiff does not allege he received a negative comment about his job performance, was placed on an improvement plan, nor asked to resign. Importantly, the *Devine* court found that the principal's statement that it was "her life mission to stamp out white privilege" and that "black students should look at black faces" were insufficient to support a logical inference of racial bias regarding the decisions about plaintiff's employment.

The third and final allegedly analogous case that Plaintiff cites in defense of the City's Motion is *Hartman v. Pena*, 914 F. Supp. 225, 229 (N.D. Ill. 1995). This case involved egregious circumstances that do not approximate to the events that occurred here. There, the only claim that survived summary judgment was plaintiff's sexual harassment claim, which

REPLY IN SUPPORT OF DEFENDANT'S CORRECTED
MOTION TO DISMISS PURSUANT TO RULE 12(b) - 7
(Case 2:22-CV-01640-JNW)
4873-5893-9228v.2 0002348-000031

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

involved allegations of direct physical unwanted contact by co-workers as part of an approved work-related training.  The training at issue involved men walking between two lines of women while the women made comments, touched the men, or gave them "a little slap on the butt."  Plaintiff claimed that the women touched his genitalia and other parts of his body when he proceeded between them.  During a subsequent discussion the men "were numerically rated with their names on a chart subscribed to drawing of male genitalia," with the chart "illustrat[ing] human penises in various states of arousal."  Plaintiff received the "lowest" rating and contended that directors made comments about his race and religion to the group.  The allegations contained in *Pena* are in stark contrast to plaintiff's extrapolations that the City, through it's RSJI trainings, about historical privileges and systemic racism, intentionally harmed him personally.

Removing the discrete time-barred acts and the RSJI training, Plaintiff relies on a handful of interactions—FAC ¶ 56 (alleging Said used the HSD system for personal gain); ¶ 103 (stating he was denied a medical request excusing him from RSJI trainings but not asserting a failure to accommodate claim); ¶ 137-38 (alleging, without foundation, that the Department of Labor found that the City violated his FMLA rights, and speculating this finding was "on account of his race").  Even taken as true (and even considering allegations outside the statute of limitations for purposes of this claim), these allegations are nowhere near the conduct that creates a hostile work environment in this jurisdiction, therefore, Plaintiff's claim should be dismissed.  *See Vasquez v. County of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003), as amended (Jan. 2, 2004); *Glasgow v. Georgia-Pacific Corp.*, 103 Wn.2d 401, 406-07 (1985); *Ray v. Henderson*, 217 F.3d 1234, 1245 (9th Cir. 2000).

### E.    Plaintiff has failed to allege sufficient facts to show he was retaliated against or constructively discharged.

Plaintiff also fails to establish facts sufficient to support a retaliation claim.  Although Plaintiff alleges that he raised complaints, he fails to allege that the complaints were of actions that he ***reasonably believed*** constituted unlawful discrimination.  Most of Plaintiff's complaints were about the RSJI itself.  *See,* FAC ¶ 4 (including complaint about affinity groups).  Other

REPLY IN SUPPORT OF DEFENDANT'S CORRECTED
MOTION TO DISMISS PURSUANT TO RULE 12(b) - 8
(Case 2:22-CV-01640-JNW)
4873-5893-9228v.2 0002348-000031

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

complaints are not of conduct that could be reasonably construed to violate Title VII or the WLAD.  For example, Plaintiff argues that he complained that Said was committing an ethical violation and that Said was not reprimanded as a result of Plaintiff's complaints.

For a Plaintiff to plausibly claim retaliation, he must show that a reasonable person would find the alleged offensive conduct to be unlawful.  As discussed in detail in the City's Motion, racial equity work is not unlawful.  On the contrary, it is widely used and endorsed by the President of United States and the Supreme Court of Washington.  *See* MTD at 11.  Because the law does not support a conclusion that a reasonable employee would construe racial equity work as unlawful, Plaintiff cannot state a claim for retaliation.

Plaintiff also has not alleged facts sufficient to establish an adverse employment action for purposes of his retaliation claim.  This would require Plaintiff to experience an adverse employment action that is reasonably likely to deter an employee from engaging in protected activity.  *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000).  Here, Plaintiff alleges that his supervisor cancelled meetings with him, scrutinized his conduct, and that he did not have a software update.  Plaintiff does not allege that the cancellation of his meetings, if it occurred, had any impact on his ability to work or his working conditions.  The same is true for the software update, which Plaintiff also fails to tie to any alleged retaliatory motive.  Plaintiff claims that he drew extra scrutiny from his supervisor but does not support this allegation with facts.  The only allegation along these lines in the FAC is that Plaintiff saw an email in which Plaintiff's supervisor discussed him.  FAC at ¶ 133 (failing to assert that his supervisor counseled him, gave him a negative performance review, or even that he became aware of this email outside of the context of this litigation).

Plaintiff also alleges that he was denied FMLA in retaliation for his complaints.  FAC at ¶¶ 137-138.  Even if true, this allegation relies on pure speculation.  The facts alleged in the FAC only state that the claim was denied and that there was a Department of Labor finding that an individual in Human Resources "had caused roadblocks" in his ability to obtain leave by providing incorrect instructions.  FAC at ¶ 137.  There is no factual basis alleged for Plaintiff's

REPLY IN SUPPORT OF DEFENDANT'S CORRECTED
MOTION TO DISMISS PURSUANT TO RULE 12(b) - 9
(Case 2:22-CV-01640-JNW)
4873-5893-9228v.2 0002348-000031

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

speculative conclusion that this alleged denial and "roadblocks" had any connection to Plaintiff's complaints.  Similarly, Plaintiff's allegation that the City covertly surveilled him by creating an alleged "confidential file" on him is speculative.  FAC at ¶ 102.  Plaintiff cannot rely on such conclusory statements and speculation to defeat a motion to dismiss.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964, 167 L. Ed. 2d 929 (2007).

Plaintiff's constructive discharge claim fails for the same reason as his retaliation claim— the facts that he alleges surrounding the conditions near the end of his employment are nowhere near sufficient to meet the showing that the City intentionally created oppressive or intolerable working conditions.  *State of Washington v. Horning Bros., LLC*, 339 F. Supp. 3d 1106, 1130–31 (E.D. Wash. 2018).  As discussed in the City's Motion, Plaintiff's dissatisfaction with the City's race equity work does not meet the objective standard for intolerable conditions.  *See Townsend v. Walla Walla Sch. Dist.*, 147 Wn. App. 620, 627.  Moreover, it is evident from the face of the complaint that Plaintiff resigned because he wished to continue to work remotely.  FAC at ¶ 140.

### F.   Plaintiff's § 1983 claims fail on the additional basis that he was not treated differently, and there is no motivation to discriminate against him.

To establish an Equal Protection claim, Plaintiff must prove the City intentionally "deprived him of rights secured by the constitution or federal statues" on the basis of his race. *Ortez v. Washington County, State of Oregon*, 88 F.3d 804, 810 (9th Cir. 1996).  As discussed in detail above and in the City's Motion, none of Plaintiff's allegations are sufficient to state a claim that he was deprived of his rights under state or federal employment law.  Plaintiff's § 1983 claim therefore fails.  In addition, the facts do not support a finding of intentional discrimination.  Instead, the City patiently tolerated an employee who vocally opposed programs intended to increase equity in the work environment, to the point that his minority colleagues felt demeaned and diminished (according to the allegations in his own complaint).  FAC at ¶ 98. Plaintiff was not treated differently than others, and he was not mistreated based on his race.

///

REPLY IN SUPPORT OF DEFENDANT'S CORRECTED
MOTION TO DISMISS PURSUANT TO RULE 12(b) - 10
(Case 2:22-CV-01640-JNW)
4873-5893-9228v.2 0002348-000031

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

### III.   CONCLUSION

Circumstances may exist where a white plaintiff is subjected to derogatory race-based comments such that the environment is hostile, and he has no choice but to resign.  A plaintiff in such a work environment can and should use the structures of non-discrimination law to seek redress.  Respectfully, it is evident from the face of the Complaint that this is not the case here.  Instead, Plaintiff perverts the statutes upon which he relies to pursue the novel theory that a white person's comfort is more important than an employer's interest in dismantling systemic racism and educating its workforce to reduce the bias that marginalized groups face.  Because the law does not support such a claim, the Court should dismiss the action.

DATED this 7th day of April, 2023.

*I certify that this Reply contains 3,971 words in compliance with Local Civil Rules.*

DAVIS WRIGHT TREMAINE LLP
*Attorneys for Defendant The City of Seattle*

By ___*/s/ Darrah N. Hinton*_____
    Sheehan Sullivan, WSBA #33189
    Victoria M. Slade, WSBA 44597
    Darrah N. Hinton, WSBA #53542
    920 Fifth Avenue, Suite 3300
    Seattle, WA  98104-1610
    Telephone:  206.622.3150
    Fax:  206.757.7700
    Email:  sulls@dwt.com
    Email:  vickyslade@dwt.com
    Email:  darrahhinton@dwt.com

REPLY IN SUPPORT OF DEFENDANT'S CORRECTED
MOTION TO DISMISS PURSUANT TO RULE 12(b) - 11
(Case 2:22-CV-01640-JNW)
4873-5893-9228v.2 0002348-000031

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I caused a true and correct copy of the document to which this Certificate of Service is attached to be served in the manner as indicated below:

**PACIFIC LEGAL FOUNDATION**
*Attorneys for Plaintiff:*

**Brian T. Hodges, WSBA #31976**
1425 Broadway, Suite 429
Seattle, WA  98122
Telephone:  425.576.0484
Email:  bhodges@pacificlegal.org

**Laura M. D'Agostino, Virginia Bar #91556**
*Admitted Pro Hac Vice*
3100 Clarendon Boulevard, Suite 1000
Arlington, VA  22201
Telephone:  916.503.9010
Email:  ldagostino@pacificlegal.org

**Andrew R. Quinio, California Bar #288101**
*Admitted Pro Hac Vice*
555 Capitol Mall, Suite 1290
Sacramento, CA  95814
Telephone:  916.419.7111
Email:  aquinio@pacificlegal.org

☐  Via Legal Messenger

☐  Via U.S. Mail, postage prepaid

☐  Via Federal Express

☐  Via Facsimile

☐  Via Electronic Mail

☒  **Via Court ECF**

Declared under penalty of perjury under the laws of the State of Washington.

DATED at Renton, Washington this 7th day of April, 2023.

*/s/ Greta Nelson*

Greta Nelson, Legal Assistant
DAVIS WRIGHT TREMAINE LLP
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
Telephone:  206.622.3150
Email:  gretanelson@dwt.com

REPLY IN SUPPORT OF DEFENDANT'S CORRECTED
MOTION TO DISMISS PURSUANT TO RULE 12(b) - 12
(Case 2:22-CV-01640-JNW)
4873-5893-9228v.2 0002348-000031

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax