1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

The Honorable Jamal Whitehead

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JOSHUA A. DIEMERT, an individual,

               Plaintiff,

    v.

THE CITY OF SEATTLE, a municipal corporation,

               Defendant.

No. 2:22-cv-01640-LK

**DEFENDANT'S ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES**

Defendant THE CITY OF SEATTLE, a municipal corporation ("Defendant"), files this Answer to Plaintiff Joshua A. Diemert's Complaint for Declaratory Relief and Damages ("Complaint"). To the extent that any allegation in the Complaint is not specifically admitted, the allegation is denied. Defendant answers the corresponding numbered paragraphs of the Complaint as follows:

**INTRODUCTION**

1.     Joshua Diemert began his employment with the City of Seattle in 2013. He was excited to use his skills and expertise to serve vulnerable and marginalized communities as a social worker in Seattle's Human Services Department (HSD). As a devoted father with a background in government work, Mr. Diemert believed his new job would provide stability for his family.

///

DEFENDANT'S ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES- 1 (Case 2:22-cv-01640-LK)
4885-6827-5585v.1 0002348-000031

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1    **ANSWER**:  **Defendant admits that Plaintiff began his employment with the City of**

2    **Seattle on January 2, 2013.  Defendant lacks sufficient knowledge or information as to**

3    **Plaintiff's state of mind to admit or deny the remaining allegations contained in Paragraph**

4    **1 and therefore denies the same.**

5         2.      Mr. Diemert quickly developed good relationships across several City

6    departments and excelled. During his first year, he received the HSD's "maximum achievement"

7    award. But alongside that positive experience, Mr. Diemert began to understand that his race

8    would negatively impact not only his day-to-day work life, but his opportunities for career

9    advancement.

10    **ANSWER**:  **Defendant admits that Plaintiff received HSD's "maximum**

11    **achievement" award based on his work on a particular HSD initiative.  Defendant lacks**

12    **sufficient information as to Plaintiff's state of mind to admit or deny the remaining**

13    **allegations contained in Paragraph 2 and therefore denies the same.**

14         3.      That his race would be an albatross around his neck is a deliberate outgrowth of

15    the City's Race and Social Justice Initiative (RSJI). The RSJI is a city-wide program that

16    requires race-based thinking and decision-making in an effort to end "structural racism."

17    Paramount within the RSJI are the tenets that white male individuals like Mr. Diemert "are

18    bolstered by racism," that they "internalize it," and that "individuals, institutions, and

19    communities are often unconsciously and habitually rewarded for supporting white privilege and

20    power."

21    **ANSWER**:  **Defendant admits that the City's Race and Social Justice Initiative**

22    **(RSJI) is a city-wide program that seeks to realize the vision of racial equity and, among**

23    **other things, supports utilizing an equity-based lens in an effort to end structural racism.**

24    **Defendant denies the remaining allegations contained in Paragraph 3.**

25         4.      As his career developed, the discrimination at HSD became increasingly

26    pervasive and hostile. The City routinely urged Mr. Diemert to join race-based affinity groups

27    and required him to participate in training sessions that demeaned and degraded him based on his

DEFENDANT'S ANSWER TO PLAINTIFF'S FIRST AMENDED
COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES- 2
(Case 2:22-cv-01640-LK)
4885-6827-5585v.1 0002348-000031

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

racial and ethnic identity. He was chastised and punished for combatting racially discriminatory hiring practices by HSD colleagues. And he was denied opportunities for advancement by the City based on his racial and ethnic identity. His supervisors and other colleagues continually dismissed his concerns over a period of years and claimed he could not be a victim of racism and discrimination because he possessed "white privilege."

**ANSWER**:  **Denied.**

5.      This discrimination had a significantly negative impact on Mr. Diemert's mental and physical health.

**ANSWER:  This paragraph contains a legal conclusion to which no response is required.  To the extent a response is required, Defendant denies the allegations in this paragraph.**

6.      Mr. Diemert was compelled to take a constructive discharge from his employment with the City when it became clear that Defendants had no intention of correcting this dysfunctional work environment, that he would continue suffering retaliation, that he was endangering his health by remaining employed with the City, and that because of his race, there was no hope of advancement.

**ANSWER:  Paragraph 6 contains legal argument to which no response is required; to the extent a response is required, Defendant denies the allegations contained in Paragraph 6.**

7.      Accordingly, Mr. Diemert brings this action under the Equal Protection Clause of the Fourteenth Amendment, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq., and the Washington Law Against Discrimination, RCW 49.60, to vindicate his rights, seek compensation for his injuries, and to prevent the City of Seattle from treating individuals differently because of their race.

**ANSWER**:  **Paragraph 7 contains legal argument to which no response is required; to the extent a response is required, Defendant denies the allegations contained in Paragraph 7.**

DEFENDANT'S ANSWER TO PLAINTIFF'S FIRST AMENDED
COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES- 3
(Case 2:22-cv-01640-LK)
4885-6827-5585v.1 0002348-000031

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1

**JURISDICTION AND VENUE**

2          8.       This case arises directly under the Equal Protection Clause of the Fourteenth

3   Amendment, 42 U.S.C. § 1983, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.

4   § 2000e, et seq, and the Washington Law Against Discrimination, RCW 49.60.

5          **ANSWER**: **Paragraph 8 contain legal conclusions to which no response is required.**

6          9.       The Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §§

7   1331 and 1343, and 42 U.S.C. § 2000e-5(f)(3). The Court has supplemental jurisdiction to

8   adjudicate Plaintiff's WLAD claims pursuant to 28 U.S.C. § 1367(a). The events, parties,

9   witnesses, and injuries that form the basis of the Title VII claims are the same or related to the

10   events, parties, witnesses, and injuries that form the basis of the WLAD claims.

11         **ANSWER**: **Paragraph 9 contains legal conclusions to which no response is**

12   **required.**

13         10.     This Court has authority to issue a declaratory judgment, attorneys' fees, and

14   other necessary and proper relief under 28 U.S.C. §§ 2201 and 2202.

15         **ANSWER**: **Paragraph 10 contains legal conclusions to which no response is**

16   **required.**

17         11.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) and 42 U.S.C. §

18   2000e-5(f)(3) as the acts or omissions giving rise to the claims of this suit occurred within the

19   Western District of Washington.

20         **ANSWER**: **The allegations in Paragraph 11 contain legal conclusions to which no**

21   **response is required.**

22                                          **PARTIES**

23         12.     Plaintiff Joshua A. Diemert is a former City of Seattle employee who worked as a

24   program intake representative in the City of Seattle's Department of Human Services from

25   January 2013 to September 2021.

26         **ANSWER**: **Admit.**

27   ///

DEFENDANT'S ANSWER TO PLAINTIFF'S FIRST AMENDED
COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES- 4
(Case 2:22-cv-01640-LK)
4885-6827-5585v.1 0002348-000031

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1   13.     Defendant City of Seattle is a municipality created under the laws of the State of

2   Washington. The Seattle City Council is its governing body. The City of Seattle is an employer

3   within the meaning of 42 U.S.C. § 2000e(b) and RCW 49.60.040 (11).

4        **ANSWER**:  **Admit.**

5        14.     Defendant Bruce Harrell is the Mayor of Seattle. As Mayor, he collaborates with

6   the City Council, City Departments, Race and Social Justice Initiative Coordinating Team, and

7   the Race and Social Justice Initiative Sub-Cabinet to implement and enforce the Race and Social

8   Justice Initiative across all City functions.

9        **ANSWER**:  **Defendant admits that Bruce Harrell is the Mayor of Seattle.  By way of**

10  **further Answer, Mayor Harrell has been dismissed from this action with prejudice and is**

11  **not a Defendant.  Except as expressly admitted, Defendant denies the remaining allegations**

12  **in this paragraph.**

13                **EXHAUSTION OF ADMINISTRATIVE REMEDIES**

14       15.     On December 23, 2020, Mr. Diemert filed a charge of retaliation and

15  discrimination on the basis of race, color, sex, and national origin with the U.S. Equal

16  Employment Opportunity Commission (EEOC) (No. 551-2020-04009). *See* **Exh. 1**.

17       **ANSWER**:  **Admit.**

18       16.     On January 16, 2021, Mr. Diemert also filed an amended charge of retaliation and

19  discrimination on the basis of race, color, sex, and national origin with the EEOC. *See* **Exh. 2.**

20       **ANSWER**:  **Admit.**

21       17.     On June 30, 2022, Mr. Diemert filed an additional charge with the EEOC (No.

22  551-2022¬05568), detailing additional, continuing acts of discrimination he experienced

23  between December 23, 2020, and September 7, 2021. *See* **Exh. 3.**

24       **ANSWER**:  **Defendant admits that Mr. Diemert filed an additional charge with the**

25  **EEOC (No. 551-2022-05568) in which he alleges acts of discrimination between December**

26  **23, 2020, and September 7, 2021.  Defendant denies that Mr. Diemert was subject to**

27  **unlawful discrimination or continuing acts of discrimination.**

DEFENDANT'S ANSWER TO PLAINTIFF'S FIRST AMENDED
COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES- 5
(Case 2:22-cv-01640-LK)
4885-6827-5585v.1 0002348-000031

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1  18.    Mr. Diemert received the Notice of Right to Sue for charge 551-2020-04009

2  (Notice 04009) on August 19, 2022. The EEOC issued a corrected Notice of Right to Sue on

3  August 22, 2022. *See* **Exh. 4.**

4  **ANSWER**:  **Admit.**

5  19.    Mr. Diemert received the Notice of Right to Sue for charge 551-2022-05568 on

6  November 15, 2022. *See* **Exh. 5.**

7  **ANSWER**:  **Admit.**

8  20.    Mr. Diemert filed his complaint with this Court on November 16, 2022.

9  Therefore, the suit was timely filed within the 90 days allowed from the receipt of both Right to

10  Sue letters.

11  **ANSWER**:  **Defendant admits that Mr. Diemert filed his Complaint with this Court**

12  **on November 16, 2022.  The remainder of Paragraph 20 contains legal conclusions to which**

13  **no response is required.**

14  21.    Defendants were served with the complaint on January 17, 2023.

15  **ANSWER**:  **Defendant admits that the City of Seattle was served with the**

16  **Complaint on January 17, 2023.**

17  22.    Mr. Diemert files this First Amended Complaint as a matter of course on January

18  19, 2023, and within 21 days after initial service pursuant to Fed. R. Civ. P. 15(a)(1)(A).

19  **ANSWER**:  **Defendant admits that Mr. Diemert filed his First Amended Complaint**

20  **on January 19, 2023.  The remainder of Paragraph 22 contains legal conclusions to which**

21  **no response is required.**

22  23.    The City of Seattle received Mr. Diemert's Tort Claim Form on November 14,

23  2022. See Exh. 6. Pursuant to RCW 4.96.020, more than sixty calendar days have elapsed.

24  **ANSWER**:  **Defendant admits that the City of Seattle received Mr. Diemert's Tort**

25  **Claim Form on November 14, 2022.  The remainder of Paragraph 23 contains legal**

26  **conclusions to which no response is required.**

27  ///

DEFENDANT'S ANSWER TO PLAINTIFF'S FIRST AMENDED
COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES- 6
(Case 2:22-cv-01640-LK)
4885-6827-5585v.1 0002348-000031

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

24.     The racially hostile work environment persisted both before and after filing the initial EEOC Charge (No. 551-2020-04009).

**ANSWER**:  **Paragraph 24 contains legal conclusions to which no response is required.  To the extent a response is required, Defendant denies the allegations in this paragraph and specifically denies that Mr. Diemert was subject to a racially hostile work environment.**

25.     All required conditions precedent under Title VII (42 U.S.C. § 2000e, et seq.) have been exhausted and/or performed by Mr. Diemert before filing this complaint.

**ANSWER:  Paragraph 25 contains legal conclusions to which no response is required.**

## FACTUAL BACKGROUND

**A.      Mr. Diemert's Employment with the City of Seattle**

26.     Plaintiff Joshua Diemert is a former City of Seattle employee. Seattle classifies Mr. Diemert as a white male.

**ANSWER:  Defendant admits that Mr. Diemert is a former City of Seattle employee who, while employed, self-identified as a white male.**

27.     Mr. Diemert was hired in January 2013 as a full-time program intake representative in the Human Services Department. He remained in this position from January 2013 until September 2021; the only exception being from 2016 to March 2017, when Mr. Diemert served in a "lead" role in the HSD.

**ANSWER:  Admit.**

28.     Mr. Diemert had been working as a "lead" in HSD since 2014, but he only received a slight pay increase and title change from 2016 until he was forced to resign from the role in March 2017.

**ANSWER:  Defendant admits that Mr. Diemert worked as a Senior Program Intake Specialist on a temporary basis from August 24, 2016, until the assignment ended effective March 21, 2017.  Defendant further admits that this temporary role was accompanied by a**

DEFENDANT'S ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES- 7 (Case 2:22-cv-01640-LK)
4885-6827-5585v.1 0002348-000031

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1    pay increase.  **The remaining allegations in this Paragraph are denied.**

2    29.    As he began working, Mr. Diemert was in high demand across several City

3    departments. In 2014, he obtained a "maximum achievement" award. This is awarded to HSD

4    employees whose "performance and efforts have made a noticeable difference to their

5    colleagues, the Department and/or the clients and communities" served.

6    **ANSWER:  Defendant admits Mr. Diemert and one of his colleagues were the**

7    **recipients of the City of Seattle Human Services Department's 2014 MAX (Maximum**

8    **Achievement) Award, in recognition of Mr. Diemert and his colleague's work on a new**

9    **application and data system for the Utility Assistance Programs administered by HSD.**

10   **Except as expressly admitted, the remaining allegations in this Paragraph are denied.**

11   30.    Mr. Diemert was instrumental in creating and developing an electronic database

12   for the City. Afterwards, Mr. Diemert was responsible for interdepartmental and internal training

13   for the new database and served as a liaison between IT and different departments utilizing this

14   database. Mr. Diemert helped launch the Vehicle License Fee Rebate Program and assisted with

15   the creation of an internal rules and policies handbook for the Utility Discount Program. Mr.

16   Diemert also assisted Department Director Jason Johnson (Mr. Johnson) in data gathering and

17   analyzing, preparing reports, as well as other projects for the Mayor's Office. All these tasks and

18   work projects were done in addition to Mr. Diemert's regular job duties and responsibilities.

19   **ANSWER:  Defendant admits that Mr. Diemert performed special projects as part**

20   **of his position, including the projects identified in Paragraph 30.  Defendant denies that**

21   **any of the referenced work exceeded the scope of Mr. Diemert's position.**

22   31.    When Mr. Diemert was serving in a "lead" position in HSD in 2016, he

23   repeatedly informed his supervisors that the role of the position had changed and that the amount

24   of work had drastically increased due to new responsibilities created from the new technology

25   being utilized and new city programs that had been created. It was also around this time that Mr.

26   Diemert was managing a chronic medical issue and taking FMLA leave.

27   ///

DEFENDANT'S ANSWER TO PLAINTIFF'S FIRST AMENDED
COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES- 8
(Case 2:22-cv-01640-LK)
4885-6827-5585v.1 0002348-000031

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

**ANSWER:  Defendant objects that Paragraph 31 is vague and ambiguous as to "around this time" to which it refers to Mr. Diemert "managing a chronic medical issue and taking FMLA leave."  Defendant admits that Mr. Diemert took FMLA between August 2, 2016 and February 28, 2017. Defendant denies the remaining allegations in this paragraph .**

32.     In or around April of 2017, Mr. Diemert's supervisor Tina Inay (Supervisor Inay) refused to give him any assistance, telling him that he should step down because his FMLA needs conflicted with "business needs."

**ANSWER:  Denied.**

33.     At first, Mr. Diemert did not step down from his "lead" position and told Supervisor Inay that he would not do so. Supervisor Inay berated Mr. Diemert for using his "white privilege" to keep the position and told him he was responsible for denying a "person of color" an opportunity for promotion.

**ANSWER:  Denied.**

34.     As a result of Supervisor Inay's unrelenting coercion and racial harassment, and with Mr. Diemert's own health in the balance, Mr. Diemert stepped down from the "lead" position he valued despite faithfully fulfilling his job duties. On the day that he stepped down, Mr. Diemert met with Brian Sharkey (Mr. Sharkey), the Deputy Director of Human Resources, Finance and Administrative Services, to discuss Ms. Inay's verbal abuse and to sign certain documents. However, Mr. Diemert did not receive any support as Mr. Sharkey supported Supervisor Inay's racial views.

**ANSWER: Defendant admits that Mr. Diemert's temporary assignment to the Senior Program Intake Specialist role ended on March 21, 2017, after he voluntarily stepped down and a permanent candidate was selected.  Defendant lacks sufficient information or knowledge to respond as to details regarding any meeting between Mr. Diemert and Brian Sharkey and therefore denies same.  Except as expressly admitted, the remaining allegations in this paragraph are denied.**

DEFENDANT'S ANSWER TO PLAINTIFF'S FIRST AMENDED
COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES- 9
(Case 2:22-cv-01640-LK)
4885-6827-5585v.1 0002348-000031

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

35.     Based on the explicit discussions of his race by management, Mr. Diemert was punished for taking FMLA leave because of his race and the City coerced him to resign from his supervisory role in order to fill the "lead" position according to the racially discriminatory objectives of the City's Race and Social Justice Initiative.

**ANSWER: Denied.**

36.     Moreover, City documents reveal that Mr. Diemert's position was not renewed, and it was terminated before the full expiration of the position. The City then filled the intermittent lead position with an employee that identified as a woman of color and who had significantly less experience than Mr. Diemert. However, Mr. Diemert was still expected to fulfill some of his lead duties as a "subject matter expert," but without the title or pay increase. The City would later replace this intermittent lead. The City also waited until after Mr. Diemert had stepped down to follow his recommendation to divide the work of the intermittent lead position between two people. Not only did the Department promote two people of color with no supervisory experience, Shamsu Said (Mr. Said) and Trinh Nguyen (Ms. Nguyen), but the Department required Mr. Diemert to assist both leads for over a year since neither knew the program rules or how to perform the functions of their new jobs.

**ANSWER: Defendant lacks sufficient information regarding the referenced documents to respond as to the allegations in this paragraph and on that basis denies them. To the extent a further response is required, Defendant denies the allegations in this paragraph.**

37.     All the aforementioned intermittent leads, including Mr. Said and Ms. Nguyen, were selected over Mr. Diemert because of their race.

**ANSWER: Defendant denies the allegations in this paragraph and specifically denies that Mr. Diemert applied for or requested to be maintained in any lead position.**

B.     **Seattle's Race and Social Justice Initiative**

38.     The Race and Social Justice Initiative is a citywide effort that purports to end institutional racism in City government, and to achieve racial equity.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

**ANSWER:  Defendant admits that the Race and Social Justice Initiative is a citywide effort to end institutionalized racism in City government, advance equity, and address intersectionality and inclusion.**

39.     The Race and Social Justice Initiative is based on the foundational premise that American society has "internalized and normalized" culture and practices that are "rooted in white supremacy, colonialism, classism, Christian hegemony, sexism, heterosexism, physical ableism, mental health oppression, all of the above or other systems of oppression." *See* **Exh. 7**.

**ANSWER:  Defendant admits that the Exhibited document is part of materials that have been used in the Race and Social Justice Initiative and that the cited language appears within that document.  Defendant further responds that the document speaks for itself.  To the extent not expressly admitted, Defendant denies the remaining allegations in this paragraph.**

40.     The RSJI aims to end American culture because it was created by "white, wealthy, Christian, cis-gender, straight, non-disabled men coming from Europe who wanted to protect their place within hierarchy and empire." In its place, it seeks to create a "relational culture" that "interrupts] the many overlapping aspects of white supremacy culture." **_Id._** Traits such as "individualism," "perfectionism," a "sense of urgency," and "objectivity" are based in "white supremacy culture" and need to be rooted out. *See **Id.***

**ANSWER:  Defendant admits that the RSJI seeks to create a "relational culture" that interrupts the many overlapping aspects of white supremacy culture.  Defendant further admits the RSJI acknowledges that traits such as "individualism," "perfectionism," a "sense of urgency," and "objectivity" are based in "white supremacy culture" and can, if over-emphasized, contribute to inequity in the work environment.  Except as expressly admitted, Defendant denies the remaining allegations in this paragraph.**

41.     Moreover, RSJI posits that race is the most important factor, that employees must lead with race, "center People of Color," "de-center whiteness," that all white employees should work at undoing their "whiteness" and "prioritize the leadership of Black, Indigenous, and

DEFENDANT'S ANSWER TO PLAINTIFF'S FIRST AMENDED
COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES- 11
(Case 2:22-cv-01640-LK)
4885-6827-5585v.1 0002348-000031

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

People of Color ..*See* **Exh. 8**.

**ANSWER:  Defendant admits that Exhibit 8 has been utilized in the RSJI and that the cited language appears within that document, although the language is taken out of context.  Defendant further responds that the document speaks for itself.  Except as expressly admitted, Defendant denies the remaining allegations in this paragraph.**

42.     RSJI divides people into two main categories, white and "Black, Indigenous and People of ' Color" (BIPOC), or "oppressor" and "oppressed." City training promotes "BIPOC Affinity Spaces" and encourages the exclusion of "white folks." *See* **Exhs. 7-8**.

**ANSWER:  Denied.**

43.     Since 2005, all City departments have developed and implemented annual RSJI work plans and City employees are encouraged to attend training to look at "program and budget change decisions from a race and social equity perspective." To accomplish this, employees are asked to use a Racial Equity Toolkit.

**ANSWER:  Defendants admits that many of its departments have developed and implemented annual RSJI work plans since 2005.  Defendant further admits that the RSJI has at times included training and the use of a Racial Equity Toolkit.  Defendant lacks sufficient information or knowledge to admit or deny the remaining allegations in this paragraph and, on that basis, denies them.**

44.     The City's Office for Civil Rights believes that institutionalizing the Racial Equity Toolkit is its "most pressing priority" because it "know[s] that the impacts of racial iniquities cannot be assessed or addressed *without interrupting the color blind ways* departments make decisions." *See* **Exh. 9** (emphasis added). The City instructs its employees that "colorblindness" is a form of white supremacy and HSD has been at the forefront of implementing these policies.

**ANSWER:  Defendant admits that Exhibit 9 has been utilized in the RSJI and that the cited language appears within that document.  Defendant further responds that the document speaks for itself.  Except as expressly admitted, Defendant denies the remaining**

DEFENDANT'S ANSWER TO PLAINTIFF'S FIRST AMENDED
COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES- 12
(Case 2:22-cv-01640-LK)
4885-6827-5585v.1 0002348-000031

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

**allegations in this paragraph.**

45.     Mr. Diemert experienced severe discrimination and harassment because of the City and HSD's pervasive focus on race and supposed "white supremacy."

**ANSWER:  Denied.**

**C.     Mr. Diemert Reported Incidents of Discrimination Prior to Filing His EEOC Charge in 2020**

46.     Mr. Diemert repeatedly reported incidents of discrimination and objected to discriminatory conduct throughout the entirety of his employment with the City.

**ANSWER:  Defendant admits that Mr. Diemert raised allegations of perceived incidents of discrimination and vocalized his disagreement with what he perceived to be discriminatory conduct.  Defendant denies the remaining allegations contained in Paragraph 46, including that Mr. Diemert was subject to unlawful discrimination.**

47.     Mr. Diemert reported discrimination he had experienced from Supervisor Inay and others to Mr. Sharkey, Andi Morales (Ms. Morales), his union representative, HR representatives, as well as other supervisors and managers. His complaints of discrimination were never redressed.

**ANSWER:  Denied.**

48.     For example, in August of 2015, department restructuring led to the Utility Discount Program being included in the Youth and Family Empowerment Division (YFE). Upon introducing himself to YFE Manager Javier Pulido, Mr. Pulido condescendingly asked Mr. Diemert, "what could a straight white male possibly offer our department?" Mr. Diemert informed multiple supervisors and managers of this incident, including Javier Pulido's brother, Supervisor Carlos Pulido.

**ANSWER: Defendant admits that Mr. Diemert reported an incident consistent with the quoted language in this paragraph and further responds that Mr. Diemert raised this allegation for the first time several years after he claims it occurred.  Except as expressly admitted, Defendant denies the remaining allegations in this paragraph.**

DEFENDANT'S ANSWER TO PLAINTIFF'S FIRST AMENDED
COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES- 13
(Case 2:22-cv-01640-LK)
4885-6827-5585v.1 0002348-000031

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

49.     In 2016, Director Gloria Hatcher-Mays (Director Hatcher-Mays) called Mr. Diemert to her office and berated him for attempting to correct co-worker Sabrina Budner's discriminatory behavior towards a white applicant. Director Hatcher-Mays stated that it was impossible to be racist toward "white people." She did not initiate any employment actions against Ms. Budner. Mr. Diemert reported this incident to multiple managers and directors, including his HR representative, but the City took no action. Mr. Diemert also reported this issue in a June 21, 2021, email to Senior Officer Ryan Groce (Senior Officer Groce), Supervisor Chaney Kilpatrick-Goodwill (Supervisor Kilpatrick-Goodwill), and Ron Mirabueno (Mr. Mirabueno).

**ANSWER:  Defendant admits that on or around June 21, 2021, Mr. Diemert alleged in an email to Ryan Groce, Chaney Kilpatrick-Goodwill, and Ron Mirabueno that Ms. Hatcher-Mays "verbally reprimanded" him for calling perceived actions by Sabrina Budner racist.  Defendant further admits that Mr. Diemert alleged in the June 21, 2021, email that Ms. Hatcher-Mays told him "[Y]ou can't be racist towards white people." Defendant lacks sufficient information or knowledge to form a belief as to the truth of the allegations pertaining to the conversations with Ms. Hatcher-Mays and therefore denies same.  Defendant denies the remaining allegations contained in Paragraph 49.**

50.     Between March and June of 2017, Mr. Diemert also informed the City's Attorney's Office of the discriminatory acts and unethical practices that occurred in his department. Director Hatcher-Mays filed a discrimination suit against the City, and Mr. Diemert provided information to the City attorneys investigating Director Hatcher-Mays' complaint. Mr. Diemert was asked to keep all emails and documents pertaining to all incidents and was told that the City attorneys would contact him in the future to retrieve them. The lawsuit against the City was dropped and the City's Attorney's Office never contacted Mr. Diemert or elevated his concerns for further investigation.

**ANSWER:  Defendant admits that Mr. Diemert received a litigation hold communication pertaining to a threatened action. Defendant asserts the attorney client**

DEFENDANT'S ANSWER TO PLAINTIFF'S FIRST AMENDED
COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES- 14
(Case 2:22-cv-01640-LK)
4885-6827-5585v.1 0002348-000031

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

**privilege with regard to any further response related to that subject.  Defendant lacks sufficient information or knowledge to form a belief as to the truth of the allegation that Mr. Diemert communicated concerns to the City Attorney's Office between March and June of 2017 or that those concerns were not elevated for further investigation and on that basis denies same.  Except as expressly admitted, the remaining allegations in this paragraph are denied.**

51.     On July 13, 2017, Mr. Diemert informed Supervisor Inay of the "divisive and discriminatory" comments he received from a fellow coworker, Fabiola Arvizu. Mr. Diemert also noted "this is not the first time I have dealt with the increased discrimination in the City," and explained that "the lack of concern for this blatant discrimination from past management and a valid fear of retribution" had led him to believe it is better for him to be silent than to disrupt the "city of Seattle status quo."

**ANSWER:  Defendant admits that Mr. Diemert sent Ms. Inay an email on or around July 13, 2017, wherein Mr. Diemert stated that he would no longer participate in department meetings in an effort to avoid "offend[ing]" employee Fabiola Arvizu after Ms. Arvizu allegedly told Mr. Diemert that he was "mansplaining" during a meeting. Defendant also admits that Mr. Diemert characterized Ms. Arvizu's alleged comment as "divisive and discriminatory talk."  Defendant further admits that Mr. Diemert characterized Ms. Arvizu's alleged comment as "blatant discrimination" and stated, a perceived "lack of concern for this blatant discrimination from past management and a valid fear of retribution" led Mr. Diemert to believe it was better from him to "be silent than to disrupt the 'City of Seattle status quo."**

52.     On November 14, 2018, Mr. Diemert contacted his union representative, Shaun van Eyk (Mr. van Eyk), about the racially hostile work environment he was experiencing and the toll it was taking on his health.

**ANSWER:  Defendant lacks sufficient knowledge or information as to the allegations in Paragraph 52 regarding communications between Mr. Diemert and his union**

DEFENDANT'S ANSWER TO PLAINTIFF'S FIRST AMENDED
COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES- 15
(Case 2:22-cv-01640-LK)
4885-6827-5585v.1 0002348-000031

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1    representative and therefore denies the same.

2        53.    Mr. Diemert met with Mr. van Eyk for two hours on November 27, 2018, and

3    discussed many of his concerns in detail. Mr. van Eyk told Mr. Diemert that he would meet with

4    Felicia Caldwell from the Seattle Department of Human Resources about the racially segregated

5    trainings, but Mr. Diemert never received a clear answer to his concerns, which Mr. van Eyk

6    ultimately ignored.

7        **ANSWER:  Defendant lacks sufficient knowledge or information to admit or deny**

8    **the allegations contained in Paragraph 53 regarding communications between Mr. Diemert**

9    **and his union representative, and therefore, denies the same.**

10       54.    On December 4, 2018, Mr. Diemert received an email from Leslea Bowling, a

11   Planning and Development Specialist from the Human Services Department, inviting him to

12   review a meeting agenda for the white caucus, one of the City's racially segregated groups

13   designed for staff members the City classified as "white." Mr. Diemert responded by telling her

14   to remove him from the email list and noted that he found Ms. Bowling's actions to be racially

15   offensive and that he would file harassment charges with the EEOC if she continued.

16       **ANSWER:  Defendant admits that on or around December 4, 2018, Mr. Diemert**

17   **received an email from Leslea Bowling, Planning and Development Specialist from the**

18   **Human Services Department, inviting all recipients—not just Mr. Diemert—to review the**

19   **agenda for the White Caucus Affinity Group.  Defendant denies that the White Caucus**

20   **Affinity Group was racially segregated and further denies that the City maintained any**

21   **racially segregated groups.  Defendant admits Mr. Diemert responded to Bowling's**

22   **invitation by asking to be removed from the email list stating "I find your overt racism**

23   **offensive and will file harassment charges with the EEOC if you continue."**

24       55.    In 2018 or 2019, Mr. Diemert met with a Senior Human Resource Specialist, Ms.

25   Morales for almost two hours and reported his concerns about the toxic environment created by

26   the City through its promotion and enforcement of the RSJI, the effects it had on his health, and

27   possible solutions that could alleviate the hostility in the office. Ms. Morales told Mr. Diemert

DEFENDANT'S ANSWER TO PLAINTIFF'S FIRST AMENDED
COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES- 16
(Case 2:22-cv-01640-LK)
4885-6827-5585v.1 0002348-000031

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

that she would look into a lateral position change into a different department for him as a solution, but also reminded him that the advancement of RSJI was part of his job responsibilities no matter what department he worked for.

**ANSWER:  Defendant admits that Mr. Diemert met with Ms. Morales in 2018 and/or 2019 related to Mr. Diemert's medical condition and need for FMLA leave. Defendant denies the remaining allegations in this paragraph.**

56.     In October 2019, Mr. Diemert believed that his team lead, Mr. Said, a City employee, had been misusing the HSD system for personal gain. Mr. Diemert reported the incident to the Mayor's Office Operations Manager, Rodrigo Sanchez (Mr. Sanchez), who then informed Supervisor Kilpatrick-Goodwill about the incident. Mr. Diemert provided them with evidence, but nothing was done to address Mr. Said's actions. Instead, Mr. Sanchez and Supervisor Kilpatrick-Goodwill told Mr. Diemert to keep quiet and to be silent.

**ANSWER:  Defendant admits that Mr. Diemert raised allegations regarding  the actions of Mr. Said with regard to a particular HSD program.  Defendant further admits that Mr. Diemert reported his allegations to Mr. Sanchez.  Defendant admits that Mr. Diemert provided documentation as part of his allegation.  Defendant denies the remainder of Paragraph 56.**

57.     Shortly after Mr. Diemert reported Mr. Said in November 2019, Mr. Said verbally accosted Mr. Diemert, claiming that he was complicit in the sins of slavery, parroting language promoted in the City's RSJI program. Subsequently, Mr. Said would publicly accost Mr. Diemert in the office.

**ANSWER:  Denied.**

58.     On February 19, 2020, Mr. Said chest bumped Mr. Diemert, got in his face, told him that he had "white privilege," and suggested that Mr. Diemert had racist motives for reporting him. Mr. Said also asserted that Mr. Diemert and his race were to blame for the atrocities in the world, like slavery, segregation, and wealth disparities, and implied that Mr. Said was not responsible for his actions because the "racist" system drove him to commit fraud. Mr.

DEFENDANT'S ANSWER TO PLAINTIFF'S FIRST AMENDED
COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES- 17
(Case 2:22-cv-01640-LK)
4885-6827-5585v.1 0002348-000031

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

Diemert immediately reported the altercation to the Ethics Department, but the City took no action against Mr. Said.

**ANSWER:  Defendant admits that Mr. Diemert reported that Mr. Said used a "heated tone" when speaking with him.  Defendant denies the remaining allegations contained in Paragraph 58.**

59.    In February 2020, Mr. Diemert met with Director Tanya Kim, where he discussed the unethical and illegal behavior he witnessed during his time at HSD, as well as the City's failure to address incidents when he reported them.

**ANSWER:  Defendant admits Mr. Diemert met with Director Tanya Kim in February 2020.  Defendant lacks sufficient information to admit or deny the remaining allegations contained in Paragraph 59 and therefore denies them.**

60.    Mr. Diemert reported incidents of discrimination and harassment on several occasions to supervisors, coworkers, and other City employees prior to filing his EEOC charges. The City knew Mr. Diemert was experiencing a racially hostile work environment and did not make any serious effort to redress it.

**ANSWER:  Defendant admits Mr. Diemert raised allegations of what he perceived to be discrimination and harassment on several occasions to supervisors, coworkers, and other City employees, prior to filing his EEOC charges—which the City investigated and did not substantiate.  Defendant denies the remainder of Paragraph 60.**

61.    During employee orientations, the City explains that there are "mandatory reporters," which it defines as "a person or entity that is obligated to immediately report or investigate claims of harassment, discrimination, retaliation, or misconduct." *See* **Exh. 10**. "Management Representatives," including supervisors, managers, leads, crew chiefs, and directors are all identified as "mandatory reporters." **Id.** Mr. Diemert alerted supervisors, managers, leads, directors, and fellow coworkers to the discrimination and racial harassment he was experiencing. Moreover, Mr. Diemert continued reporting the discrimination and harassment he experienced after he filed his EEOC charges.

DEFENDANT'S ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES- 18 (Case 2:22-cv-01640-LK) 4885-6827-5585v.1 0002348-000031

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1    **ANSWER:  Defendant admits that its policies defined "mandatory reporters" as "a**

2    **person or entity that is obligated to immediately report or investigate claims of harassment,**

3    **discrimination, retaliation, or misconduct."  Defendant further admits that "Management**

4    **Representatives" include supervisors, managers, leads, crew chiefs, and directors.**

5    **Defendant admits that Mr. Diemert raised allegations of perceived discrimination and**

6    **racial harassment—which were not substantiated—with supervisors, managers, and**

7    **directors both before and after filing his first EEOC charge.  Defendant denies the**

8    **remaining allegations contained in Paragraph 61.**

9          **D.      Mandatory RSJI Training Created a Racially Hostile Work Environment**

10         62.     The Department requires that all employees participate in Race and Social Justice

11   Initiative training that aggressively promotes the concept of "white privilege" and the collective

12   guilt that white employees like Mr. Diemert purportedly bear for societal inequality. *See* **Exhs.**

13   **11 and 12**.

14         **ANSWER:  Defendant admits that it requires employees to attend certain Race and**

15   **Social Justice Initiative trainings.  Defendant admits that some RSJI trainings discuss the**

16   **concept of "white privilege."  Defendant denies the remaining allegations contained in**

17   **Paragraph 62.**

18         63.     As a member of the Department, Mr. Diemert's annual reviews included his

19   supervisor's assessments of whether Mr. Diemert completed RSJI activities or events.

20         **ANSWER:  Defendant admits that an employee's participation in RSJI activities or**

21   **events is included as an assessment category on annual reviews.**

22         64.     As part of his Race and Social Justice Initiative training in 2019, Mr. Diemert

23   attended a two-day "Undoing Institutional Racism" (UIR) workshop. This was hosted by El

24   Centro De La Raza and taught by the People's Institute for Survival and Beyond.

25         **ANSWER:  Admitted.**

26         65.     The UIR workshop is rooted in critical race theory, and the facilitators at the

27   event stated that "white people are like the devil," that "racism is in white people's DNA," and

DEFENDANT'S ANSWER TO PLAINTIFF'S FIRST AMENDED
COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES- 19
(Case 2:22-cv-01640-LK)
4885-6827-5585v.1 0002348-000031

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1  that "white people are cannibals."

2  **ANSWER:  Defendant admits that critical race theory informs portions of the UIR**

3  **workshop material.  Defendant denies the remaining allegations in this paragraph,**

4  **including that the quoted language was used in the UIR workshop.**

5  66.    When Mr. Diemert objected, the facilitators used their platform to belittle and

6  attack Mr. Diemert. Other coworkers that were present continued the mockery in the workplace

7  and made Mr. Diemert the office pariah. Mr. Diemert's coworkers called him a "white

8  supremacist."

9  **ANSWER:  Defendant lacks sufficient information or knowledge to form a belief as**

10  **to the truth of the allegations in Paragraph 66, and, on that basis, denies them.**

11  67.    Mr. Diemert's supervisor, Supervisor Kilpatrick-Goodwill, told him during one of

12  their meetings in 2020 that coworkers were still talking about his comments from the UIR

13  workshop. Coworkers treated Mr. Diemert differently and would call him "racist" and "hateful."

14  **ANSWER:  Defendant denies that Ms. Kilpatrick-Goodwill told Mr. Diemert that**

15  **his coworkers were talking about his comments from the UIR workshop.  Defendant lacks**

16  **sufficient information or knowledge to form a belief as to the truth of the allegations**

17  **related to Mr. Diemert's perception of his coworkers' treatment of him or their alleged**

18  **statements about him and, and on that basis, denies the same.**

19  68.    Mr. Diemert's colleagues used their work emails to berate and entertain violence

20  against him, referring to him as "some asshole," the "reincarnation of the people that shot native

21  Americans from trains, rounded up jews for the camps, hunted down gypsies in Europe and

22  runaway slaves in America," noting that it was not worth addressing his concerns because he

23  would "just come back with more stupidity," and that someone should "get a guy to swing by

24  when Josh is in the restroom and beat him bloody."

25  **ANSWER:  Defendant admits that the cited language appears in employee**

26  **communications that were not directed to Mr. Diemert or shared with Defendant's**

27  **management or Human Resources department at the time and further responds that the**

DEFENDANT'S ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES- 20 (Case 2:22-cv-01640-LK)
4885-6827-5585v.1 0002348-000031

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1  documents speak for themselves.  Except as expressly admitted, Defendant denies the

2  remaining allegations in this paragraph.

3      69.     Nor was Mr. Diemert able to avoid discriminatory messaging and harassment

4  once his training requirements were completed. Every meeting, activity, and City summit

5  incorporated RSJI training. The diffused nature of the Race and Social Justice Initiative further

6  ensured that Mr. Diemert had no opportunity for a reprieve from racial harassment.

7      **ANSWER:  Defendant admits that RSJI is incorporated into numerous aspects of**

8  **City operations.  Except as expressly admitted, Defendant denies the allegations in**

9  **Paragraph 69, including the allegation that the RSJI trainings were discriminatory or**

10 **harassing.**

11     70.     On multiple occasions between 2014 and 2020, Mr. Diemert was forced to play

12 "Privilege Bingo" that divisively singles out employees based on characteristics such as

13 "Christian", "white" and "male" to identify if the employee is privileged compared with other

14 colleagues and the clients they serve. The City believes that employees must "acknowledge" the

15 privileges afforded to them by living in a "white supremacy culture" before they can

16 "acknowledge the impacts of white supremacy."

17     **ANSWER:  Defendant admits that RSJI work incorporated training regarding**

18 **unearned privilege, including exercises similar to the exercise described in Paragraph 70.**

19 **Defendant denies that any such exercise "divisively singles out employees" based on**

20 **personal characteristics.  Except as expressly admitted, the remaining allegations in this**

21 **paragraph are denied.**

22     71.     In addition to the formal training, the City pressured Mr. Diemert into

23 participating in team-specific RSJI training, unit RSJI-created training, department RSJI-created

24 training, City-wide RSJI-created training, and external RSJI-created training.

25     **ANSWER:  Defendant admits that RSJI training and programming took place at a**

26 **City level, as well as at the department and unit levels, and further admits that trainings**

27 **came from different sources, internal and external to the City.  Except as expressly**

DEFENDANT'S ANSWER TO PLAINTIFF'S FIRST AMENDED
COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES- 21
(Case 2:22-cv-01640-LK)
4885-6827-5585v.1 0002348-000031

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1    **admitted, the remaining allegations in this paragraph are denied.**

2    72.    For Mr. Diemert to receive HSD's "fully performing" rating and to meet

3    expectations, he was required to participate in all assigned RSJI activities. These would include

4    the additional training added to summits, retreats, unit meetings, or other meetings. To receive a

5    rating of "exceeding expectations," Mr. Diemert was required to embrace RSJI principles and

6    encourage others to participate in training.

7        **ANSWER:  Denied.**

8    73.    During a required department retreat, Mr. Diemert was forced to participate in a

9    "racist/anti-racist continuum" line where employees were all asked to stand up and place

10   themselves in a single file line with other co-workers based on how "racist" or "anti-racist" each

11   is in comparison with each other, with one end of the line being "racist" and the other end of the

12   line being "anti-racist." Employees would move around based on the racial stereotypes promoted

13   by RSJI and get behind or in front of other employees. These types of required exercises caused

14   extreme emotional distress to Mr. Diemert.

15       **ANSWER:  Defendant admits that employees voluntarily engaged in anti-racist**

16   **trainings through the RSJI.  Defendant lacks sufficient information or knowledge to form a**

17   **belief as to the details of the training described in Paragraph 74 or of the training's impact**

18   **on Mr. Diemert, and on that basis, denies the same.  Except as expressly admitted,**

19   **Defendant denies the remaining allegations in this paragraph.**

20   74.    Another example of these additional training sessions was a 2020 "Theory of

21   Change" workshop Mr. Diemert attended, where he was required to evaluate his Department

22   according to the standards described in a document entitled "Characteristics of White Supremacy

23   Culture." *See* **Exh. 13 and 14**.

24       **ANSWER:  Defendant admits that Exhibits 13 and 14 are accurate copies of**

25   **materials that have been used in parts of the RSJI programming and further responds that**

26   **the documents speak for themselves.  Except as expressly admitted, the remaining**

27   **allegations in this paragraph are denied.**

DEFENDANT'S ANSWER TO PLAINTIFF'S FIRST AMENDED
COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES- 22
(Case 2:22-cv-01640-LK)
4885-6827-5585v.1 0002348-000031

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

75.     The City also strongly encouraged Mr. Diemert to participate in race-based affinity groups, caucuses, and employee resource groups at the unit and department levels despite his repeated objections to the exercises and materials.

**ANSWER:  Defendant admits that Mr. Diemert was invited to participate in affinity groups, caucuses, and employee resource groups at the unit and department levels. Defendant denies the remaining allegations contained in Paragraph 75.**

76.     For example, Mr. Diemert was invited to attend a discussion on "white racial literacy," which was "open to all people who identify as white in HSD." On another occasion, he received an invitation from Owen Kajfasz, a senior data analyst with the City, to a "White Caucus" meeting, which asked attendees to read an article entitled, "White People Are Cowards."

**ANSWER:  Defendant lacks sufficient information or knowledge to form a belief as to the truth of the allegations in Paragraph 76 and on that basis denies the same.**

77.     The City's Office for Civil Rights promotes segregated training for City employees. In June 2020, the Office of Civil Rights emailed Mr. Diemert stating that it was hosting a training on "Internalized Racial Superiority," and that this was "specifically targeted for White employees." The training focused on examining white employees' "complicity in the system of white supremacy," and how white employees "internalize and reinforce" racism. *See* **Exh. 15**. The goal of the training was to turn these employees into white "accomplices" who would interrupt the "whiteness" that they saw in their colleagues.

**ANSWER:  Defendant admits that on or about June 11, 2020, Mr. Diemert was invited to attend a voluntary training on internalized racial superiority that was designed for White Caucus members or others who self-identify as White.  Defendant further admits the purpose of the training was for participants to examine the system of white supremacy—how it is internalized and reinforced—in an effort to cultivate practices that enable City employees to interrupt racism in their work and engagement with the community.  Defendant denies the remaining allegations contained in Paragraph 77.**

DEFENDANT'S ANSWER TO PLAINTIFF'S FIRST AMENDED
COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES- 23
(Case 2:22-cv-01640-LK)
4885-6827-5585v.1 0002348-000031

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

78.     Employees who attempted to attend a training that was not designated for their race would be harassed or reprimanded for their decision.

**ANSWER:  Denied.**

79.     In 2018, Mr. Diemert asked to sign up for a training reserved only for people of color. Mr. Diemert's union representative, Mr. van Eyk, became very agitated and told Mr. Diemert that he should not sign up. Mr. Diemert later discovered emails that suggested that Mr. van Eyk was not interested in genuinely advocating for Mr. Diemert's concerns, but instead focused on advocating for the very discriminatory policies that were harming Mr. Diemert and contributing to his hostile work environment.

**ANSWER:  Defendant lacks sufficient knowledge or information to admit or deny the allegations contained in Paragraph 79 related to Mr. Diemert's communications with his union representative, and therefore, denies the same.**

80.     The City's use of race and social justice training came under scrutiny in 2020. On August 26, 2020, the United States Department of Justice sent a letter to Seattle's City Attorney regarding public reports that the City had conducted "training sessions for its white employees and employees of color in June 2020," potentially in violation of Title VII of the Civil Rights Act. While DOJ did not reach any conclusions in the letter about whether a violation had occurred, it requested additional information from the City.[1]

**ANSWER:  Defendant admits that the United States Department of Justice (DOJ) sent a letter on or about August 26, 2020, related to training sessions the City had conducted for its employees representative of various races and further admits that the DOJ requested additional information from the City.  Defendant admits that the DOJ letter did not include conclusions that the City had violated Title VII of the Civil Rights Act and by way of further answer states that the DOJ later dropped the referenced inquiry. Except as expressly admitted, Defendant denies the remaining allegations contained in Paragraph 80.**

---

[1] https://www.documentcloud.org/documents/7203169-Seattle-Notice-Ltr-8-26-20-via-Email.html

DEFENDANT'S ANSWER TO PLAINTIFF'S FIRST AMENDED
COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES- 24
(Case 2:22-cv-01640-LK)
4885-6827-5585v.1 0002348-000031

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

**E.      Harassment and Coercion to Participate in Race-Based Affinity Groups**

81.      In addition to pressuring employees to attend race-based training, the City of Seattle and HSD created and promoted race-specific "affinity groups" or "caucuses." As one City training material notes, "caucuses are times when people of color and white people within an organization meet separately in order to do our different work."

**ANSWER:  Defendant admits that it offers affinity groups or caucuses, which allow employees to voluntarily meet during off-work hours, or during work hours with permission, to advance the City's Race and Social Justice Initiative's efforts to eliminate racial disparities and achieve racial equity.  Defendant admits that caucuses are times when various groups within an organization meet separately to engage in work that advances the City's Race and Social Justice Initiative.  Defendant denies the remaining allegations contained in Paragraph 81.**

82.      These groups are focused on "forwarding the City of Seattle's Race and Social Justice Initiative's efforts to eliminate racial disparities and achieve racial equity in Seattle."

**ANSWER:  Defendant lacks sufficient information or knowledge regarding the source of the quoted language to admit or deny the allegation in this paragraph and therefore denies same.**

83.      The City expected white employees to join the white affinity group and pressured them to accept that white employees and individuals of European origin are all inherently racist, privileged, powerful, and consciously or unconsciously to blame for systemic racism in the workplace and society due to their "white privilege."

**ANSWER:  Denied.**

84.      White caucus groups are expressly "accountable" to the "change team" and to the "Latinx, African Descent, and Asian and Pacific Islander (API) Caucuses."

**ANSWER:  Defendant lacks sufficient context to respond to the allegations in Paragraph 84.  To the extent an answer is required, Defendant denies the allegations contained in Paragraph 84.**

DEFENDANT'S ANSWER TO PLAINTIFF'S FIRST AMENDED
COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES- 25
(Case 2:22-cv-01640-LK)
4885-6827-5585v.1 0002348-000031

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

85.     In these caucuses Mr. Diemert was encouraged to "work through guilt" that he should bear due to his race.

**ANSWER:  Defendant lacks sufficient context to respond to the allegations in Paragraph 85.  To the extent an answer is required, Defendant denies the allegations contained in Paragraph 85.**

86.     Mr. Diemert consistently opposed invitations to join the City of Seattle's "white caucus." Despite expressing his discomfort and communicating how these types of communications and programs were taking a toll on his health, and that he did not want to receive further communications from the City's white caucus, he continued to receive communications from the group.

**ANSWER:  Defendant admits Mr. Diemert rejected an invitation to join at least one affinity group event and further admits that he objected to the invitation.  Defendant lacks sufficient information or knowledge to respond as to Mr. Diemert's state of mind or as to communications he claims to have received and on that basis denies the remaining allegations in Paragraph 86.**

87.     City staff never encouraged or told Mr. Diemert that he was allowed to attend any other affinity groups other than the "white caucus," and based on how coworkers were treated if they attempted to attend training for the wrong "race," Mr. Diemert knew that any attempt to attend other affinity groups would result in a reprimand or further harassment.

**ANSWER:  Denied.**

88.     On June 21, 2021, Mr. Diemert sent Senior Officer Groce an email where he explained that he felt that "all of the Race & Social Justice training (RSJ), including the affinity caucuses, are blatantly racist, stereotype people based on superficial characteristics and apply negative attributes to entire groups of people based off the color of their skin." Mr. Diemert expressed his concern about "constantly being bombarded with racially denigrating material on the City of Seattle intranet, splash pages, incoming emails and in material dispersed around the workplace" so that he was not allowed to "just do the work" he was hired to do. In 2021, Mr.

DEFENDANT'S ANSWER TO PLAINTIFF'S FIRST AMENDED
COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES- 26
(Case 2:22-cv-01640-LK)
4885-6827-5585v.1 0002348-000031

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Diemert proposed the creation of a non-race-based affinity group that opposes stereotypes. He was told by Senior Officer Groce that he was not authorized to begin work on it and that it would need to support the City's commitment to workforce equity based on the principles of the City's RSJI.

**ANSWER:  Defendant admits that Mr. Diemert sent Ryan Groce, Employee and Labor Relations Manager, an email on June 21, 2021 containing the quoted language in Paragraph 88 and further responds that the document speaks for itself.  Defendant further admits that Mr. Diemert proposed that Defendant create an employee group that was contrary to Defendant's racial equity values and that he was told that the creation of such a group would require approval.  Except as expressly admitted, Defendant denies the remaining allegations in Paragraph 88.**

89.     In a subsequent email, the HR Director described how Mr. Diemert "requested to start an affinity group that opposes Change Team Values," and that he was told that he "wasn't authorized to move forward based on City business needs." Mr. Diemert also learned that rather than addressing his criticisms of RSJI, Senior Officer Groce apologized to his immediate supervisors for "the potentially harmful things" Mr. Diemert had stated in the email and forwarded his email to Nikki Dias (Ms. Dias), a union representative and political organizer, who suggested that Mr. Diemert was taking "a position that could result in insubordination."

**ANSWER:  Defendant admits that Mr. Diemert requested to start an affinity group that opposes Change Team Values and that this request was denied.  Defendant further admits that Mr. Groce apologized to his immediate supervisors for the potentially offensive contents of Mr. Diemert's email on this matter and that Mr. Groce's email was forwarded to Nikki Dias, whose response included the cited language.**

F.      **Mr. Diemert Experienced Severe and Recurring Stereotyping and Harassment Based on His Race**

90.     City-approved workshops and affinity groups not only promulgated racist RSJI ideology, but employees in director and supervisory roles over Mr. Diemert also frequently

DEFENDANT'S ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES- 27 (Case 2:22-cv-01640-LK) 4885-6827-5585v.1 0002348-000031

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

reiterated these same principles. For example, in a 2016 unit meeting, Mr. Johnson, former division director, told staff that "all white people" have "white privilege" and are "racist." He also noted that it was impossible for black people to be racist, and that white people can never experience racism.

**ANSWER:  Defendant denies that the RSJI or any employee acting in accordance with it "promulgated racist [] ideology."  Defendant lacks sufficient information or knowledge as to what was said during the referenced 2016 unit meeting and on that basis, denies the remaining allegations contained in Paragraph 90.**

91.     On another occasion in 2020, Supervisor Kilpatrick-Goodwill, Mr. Diemert's supervisor and supervisor of HSD's utility-assistance programs, told Mr. Diemert that it is impossible for one to be racist towards "white people," that all "white people" are racist, and that "black people" cannot be racist, thereby echoing the same racially hostile messaging disseminated in RSJI training and related workshops.

**ANSWER:  Defendant lacks sufficient information or knowledge to form a belief as to the truth of the allegations contained in Paragraph 91, and on that basis, denies the same.**

92.     Throughout the entirety of his employment, Mr. Diemert also attended meetings where supervisors forced their employees to identify their race and to stand and affirm where they ranked themselves on a defined "continuum of racism." He felt pressured into conforming to some of these exercises for fear of retaliation and hostility from his supervisors and coworkers.

**ANSWER:   Defendant lacks sufficient information to form a belief as to the truth of the allegations contained in Paragraph 92, including as to Mr. Diemert's state of mind, and on, that basis, denies the same.**

93.     The City also disseminated and encouraged racist messaging in emails, lunchroom conversations, meetings, and training. City meetings and summits often started with a proclamation that the land upon which they all stood was stolen by "white people," who are

DEFENDANT'S ANSWER TO PLAINTIFF'S FIRST AMENDED
COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES- 28
(Case 2:22-cv-01640-LK)
4885-6827-5585v.1 0002348-000031

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

blamed for legacies of genocide, enslavement, exploitation, displacement, and all other forms of structural violence.

**ANSWER:  Defendant admits that some City meetings start with a land acknowledgment in order to recognize and honor the traditional land of indigenous communities in this region.  Except as expressly admitted, Defendant denies the remaining allegations in this paragraph.**

94.    These attitudes are also present when City employees interact with one another in training and other work contexts. It was commonplace for Mr. Diemert to hear statements like: "HSD is still a white institution," and that "white people" have to give up "power, priorities, and privilege."

**ANSWER:  Defendant admits that the City acknowledges the ways in which HSD can improve in advancing racial equity.  Except as expressly admitted, Defendant denies the remaining allegations contained in Paragraph 94.**

95.    Mr. Diemert experienced numerous severe and pervasive incidents of harassment that altered the conditions of his employment and created an abusive working environment.

**ANSWER:  Denied.**

96.    In 2017, for example, Mr. Diemert's co-worker, Consuelo Crow (Ms. Crow), began a discussion in the lunchroom in which she stated that "white people" are to be blamed for "all atrocities" and that the United States was built upon a system of "white supremacy." She told Mr. Diemert that he was "privileged" and labeled him a "racist" because he favored capitalism. Ms. Crow also said that his words were "violence" and that he was invading her "safe space."

**ANSWER:  Defendant lacks sufficient information or knowledge to form a belief as to the truth of the allegations contained in Paragraph 96, and on that basis, denies the same.**

97.    This type of discrimination and harassment was regular and routine, often occurring several times a week, and was encouraged by the RSJI framework, programming, and

DEFENDANT'S ANSWER TO PLAINTIFF'S FIRST AMENDED
COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES- 29
(Case 2:22-cv-01640-LK)
4885-6827-5585v.1 0002348-000031

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1    training.

2         **ANSWER:  Denied.**

3         98.     In 2020, while Mr. Diemert was attempting to cook his food, a group of co-

4    workers was sitting at one of the few lunchroom tables, openly talking about "white privilege."

5    The group consisted of Supervisor Kilpatrick-Goodwill, a supervisor from Seattle City Light,

6    Monica Jones, and other co-workers. Mr. Diemert joined their conversation. Members of the

7    group told Mr. Diemert that his response was invalid because he was "white" and "did not have a

8    right to speak about black oppression" and that Mr. Diemert was attempting to discredit their

9    lived experiences with his "white privilege." They also proceeded to make general disparaging

10   comments about "white people."

11        **ANSWER:  Defendant admits that Mr. Diemert intervened in a lunchroom**

12   **conversation between Ms. Kilpatrick-Goodwill and Monica Jones regarding**

13   **Ms. Kilpatrick-Goodwill's and Ms. Jones's personal experiences of race.  Defendant**

14   **further admits that Mr. Diemert made remarks that Ms. Kilpatrick-Goodwill found**

15   **unwelcome and unfounded related to race.  Defendant denies that participants in the**

16   **conversation made "general disparaging comments about 'white people.'"  Defendant lacks**

17   **sufficient information or knowledge to form a belief as to the truth of the allegations**

18   **regarding the specific language used in the conversation, any other individuals who may**

19   **have been present, or the date of the conversation and on that basis denies same.  Except as**

20   **expressly admitted, the remaining allegations in this paragraph are denied.**

21        99.     In June 2021, Race and Social Justice Lead/Chief Equity Officer Edward Odom

22   (Mr. Odom) shared an article regarding Critical Race Theory (CRT) and laws attempting to ban

23   the teaching of it, drawing specific attention towards the 1921 Tulsa Race Massacre. Mr.

24   Diemert commented on the post that Mr. Odom shared. Mr. Odom responded to Mr. Diemert's

25   comment by saying that white people like him should feel guilty for atrocities like the Tulsa

26   Race Massacre. Mr. Odom then sent Mr. Diemert an aggressive and condescending email further

27   attacking him for his comments.

DEFENDANT'S ANSWER TO PLAINTIFF'S FIRST AMENDED
COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES- 30
(Case 2:22-cv-01640-LK)
4885-6827-5585v.1 0002348-000031

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1    **ANSWER:  Defendant admits that Edward Odom, who was at the time an**

2  **Information Technology employee with the City, created a post sharing an article**

3  **discussing Critical Race Theory and the historical context of the Tulsa Race Massacre.**

4  **Defendant further admits that Mr. Diemert made a public comment on the post that**

5  **several people found offensive and that caused Mr. Odom to reach out to Mr. Diemert over**

6  **email in order to engage in a discussion.  Except as expressly admitted, Defendant denies**

7  **the remaining allegations contained in Paragraph 99, including that Mr. Odom's message**

8  **was "aggressive and condescending" or that it "attack[ed] him."**

9    100.    Mr. Odom shared his criticism of Mr. Diemert with many other senior staff

10  members in the IT Department and elsewhere who disparaged Mr. Diemert in both public and

11  private.

12    **ANSWER:  Defendant lacks sufficient information or knowledge to form a belief as**

13  **to the truth of the allegations contained in Paragraph 100, and on that basis, denies the**

14  **same.**

15    101.    This adverse treatment contrasted with the welcoming reception the City

16  demonstrated towards employees that identified as "BIPOC" whenever such employees would

17  share concerns over City articles, resources, and training.

18    **ANSWER:  Defendant denies that it engaged in adverse treatment towards Plaintiff**

19  **and further denies that it responded differently to employee concerns on the basis of race.**

20    102.    Moreover, City documents further reveal that the City was not concerned about

21  Mr. Diemert's well-being, but it was instead actively investigating M. Diemert for no apparent

22  reason, going so far as to assemble a "confidential file" on him.

23    **ANSWER:  Denied.**

24    **G.    The City's Discriminatory Conduct Negatively Impacted Mr. Diemert's**
25          **Health**

26    103.    The hostile work environment created by the City took a heavy toll on Mr.

27  Diemert's health, to the point that his doctor noted in a December 5, 2018, letter that "a major

DEFENDANT'S ANSWER TO PLAINTIFF'S FIRST AMENDED
COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES- 31
(Case 2:22-cv-01640-LK)
4885-6827-5585v.1 0002348-000031

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1  source of stress for him ... are his cultural sensitivity training classes. These events are causing

2  significant effects on him and are severely detrimental to his health. For the next few months, he

3  needs to be excused from attending these classes." Mr. Diemert submitted medical

4  documentation to the City to demonstrate the impact his hostile work environment was having on

5  his health, but HSD never honored his doctor's request to have him excused from RSJI-type

6  training.

7  **ANSWER:  Defendant admits that on or about December 5, 2018, Mr. Diemert**

8  **submitted a note from his physician, stating that cultural sensitivity training classes**

9  **exacerbated Mr. Diemert's medical condition, which was triggered by stress.  Defendant**

10  **denies that it failed to honor a request from Mr. Diemert to be excused from RSJI**

11  **trainings.  Defendant lacks sufficient information or knowledge to form a belief as to the**

12  **truth of the remaining allegations, including allegations pertaining to Mr. Diemert's health,**

13  **and therefore denies the same.**

14  **H.  Blatant Acts of Discrimination Against White Job Applicants and Benefit**

15  **Seekers Are Encouraged and Ignored**

16  104.  Between the years of 2015 and 2017, Mr. Diemert regularly participated in

17  interview panels to screen prospective City employees. He was told by Director Hatcher-Mays

18  that he should specifically focus on hiring "black female refugees that speak Farsi."

19  **ANSWER:  Defendant admits that Mr. Diemert at times participated in interview**

20  **panels for prospective City employees.  Defendant denies that Mr. Diemert was advised to**

21  **make hiring decisions based upon race, color, or national origin. Except as expressly**

22  **admitted, Defendant denies the remaining allegations in Paragraph 104.**

23  105.  On multiple occasions, upper-level managers told Mr. Diemert and other

24  Department employees that when new jobs become available, particularly in senior roles, they

25  were looking to fill those positions with people of color and that white men should not apply.

26  Acting Director of HSD, Tanya Kim (Acting Director Kim), and former director Mr. Johnson

27  would both encourage City employees to push job openings toward "BIPOC" (Black,

DEFENDANT'S ANSWER TO PLAINTIFF'S FIRST AMENDED
COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES- 32
(Case 2:22-cv-01640-LK)
4885-6827-5585v.1 0002348-000031

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1    Indigenous, and People of Color) communities.

2        **ANSWER:  Defendant admits that it engaged in efforts intended to ensure a diverse**

3    **candidate pool.  Defendant denies that it hired or excluded candidates on the basis of race.**

4    **Except as expressly admitted, Defendant denies the remaining allegations contained in**

5    **Paragraph 105.**

6        106.    Mr. Diemert also witnessed HSD's data gathering in 2018 systematically exclude

7    white people. The Department teamed up with the University of Washington to complete a

8    disaggregation study to assess racial and ethnic subgroups that were underserved. Mr. Diemert

9    noticed that his Department only wanted to break down race and ethnic subgroups for non-white

10   groups. When he asked why they were not considering doing this for white individuals as well,

11   Department staff told him that white people are "privileged" and that there was no reason to

12   subgroup them. Mr. Diemert explained that they had many clients that were extremely poor and

13   would benefit if they were not just stereotyped as white. His department told him that this was

14   not needed because they benefitted by living in a system of "white supremacy."

15       **ANSWER:  Defendant admits it partnered with the University of Washington**

16   **including in 2018 to complete a disaggregation study in order to assess data for individual**

17   **racial and ethnic subgroups that were otherwise grouped together.  Defendant lacks**

18   **sufficient information or knowledge to form a belief as to the truth of the remainder of the**

19   **allegations contained in Paragraph 106, and on that basis, denies the same.**

20       107.    In 2016, Mr. Diemert learned from his subordinates that they had been denying

21   eligible white applicants program benefits solely because of their race.

22       **ANSWER:  Defendant lacks sufficient information or knowledge to form a belief as**

23   **to the truth of the allegations contained in Paragraph 107, and on that basis, denies the**

24   **same.**

25       108.    Mr. Diemert audited some of the cases and found that his co-worker, Ms. Budner,

26   had denied an eligible white applicant for an assistance program. When Mr. Diemert questioned

27   her about this, she stated that the eligible person was denied because he had "white privilege."

DEFENDANT'S ANSWER TO PLAINTIFF'S FIRST AMENDED
COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES- 33
(Case 2:22-cv-01640-LK)
4885-6827-5585v.1 0002348-000031

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1    **ANSWER:  Defendant lacks sufficient information or knowledge to form a belief as**

2    **to the truth of the allegations contained in Paragraph 108, and on that basis, denies the**

3    **same.**

4    109.    Mr. Diemert told Ms. Budner that she was not permitted to process applications in

5    a discriminatory manner. The City took no action against this blatant act of discrimination.

6    **ANSWER:  Defendant lacks sufficient information or knowledge to form a belief as**

7    **to the truth of the allegations contained in Paragraph 109, and on that basis, denies the**

8    **same.**

9    110.    After the start of the pandemic, and throughout 2020 and 2021, Department

10    leadership and co-workers openly discussed the need to carry out layoffs based on race during

11    Department all-staff video meetings. Mr. Diemert felt denigrated and humiliated, as he had to

12    attend these meetings and listen to Department staff and other City leaders brainstorming how

13    they could lay off white workers, and how this could be done using the Racial Equity Toolkit or

14    the Race and Social Justice Initiative. They discussed how BIPOC employees would be

15    negatively affected under a seniority system, and methods to give BIPOC more "time" so that

16    they could effectively "bump" white employees who had seniority. These types of discussions

17    also occurred in other departments.

18    **ANSWER:  Defendant admits that it applied a racial equity lens to prevent layoff**

19    **decisions from disproportionately impacting BIPOC employees.  Except as expressly**

20    **admitted, Defendants denies the remaining allegations contained in Paragraph 110,**

21    **including the allegation that it discussed carrying out layoffs based on race.**

22        **I.    The City Denied Mr. Diemert Opportunities to Advance Within His Office**

23            **Because of His Race**

24    111.    Mr. Johnson, the former division director for homelessness, promised Mr.

25    Diemert that he would eventually see a title change and corresponding pay upgrade, and for Mr.

26    Diemert to not be concerned about working outside of his department.

27    ///

DEFENDANT'S ANSWER TO PLAINTIFF'S FIRST AMENDED
COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES- 34
(Case 2:22-cv-01640-LK)
4885-6827-5585v.1 0002348-000031

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1    **ANSWER:  Defendant lacks sufficient information or knowledge to form a belief as**

2    **to the truth of the vague and undated allegations contained in Paragraph 111, and on that**

3    **basis, denies the same.**

4    112.    Relying on Mr. Johnson's communication, Mr. Diemert assumed work

5    responsibilities that exceeded the scope of his job title and worked with employees across several

6    City departments. However, despite Mr. Diemert having a positive employment record, receiving

7    an award for his good work, and consistently complying with City policies and procedures, he

8    never received a permanent promotion nor a substantial pay increase during his over eight years

9    as a City employee.

10    **ANSWER:  Defendant admits that Mr. Diemert had generally satisfactory job**

11    **performance and received the MAX award referenced in Paragraph 29. Defendant further**

12    **admits that Mr. Diemert did not apply for or receive a permanent promotion while**

13    **employed at the City.  Except as expressly admitted, the remaining allegations in this**

14    **paragraph are denied.**

15    113.    His lack of promotion was a result of his race and his willingness to question the

16    City's Race and Social Justice Initiative.

17    **ANSWER:  Denied.**

18    114.    One specific example of the City denying Mr. Diemert a promotion and

19    recognition that was due to him on account of his race pertains to his work on the "Vehicle

20    License Fee Rebate Program" that occurred sometime in 2015. Former Director Hatcher-Mays

21    had not done the proper hiring or preparation for the program launch in June of 2015. Mr.

22    Diemert worked overtime to help her launch the program and run it. He developed the internal

23    policies for the program. It was supposed to have been staffed with a supervisor, two line

24    workers, an outreach coordinator, and one administrative staff member. Mr. Diemert ended up

25    doing the work for all these positions, and he worked alongside other departments to make the

26    program work

27    ///

DEFENDANT'S ANSWER TO PLAINTIFF'S FIRST AMENDED
COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES- 35
(Case 2:22-cv-01640-LK)
4885-6827-5585v.1 0002348-000031

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1    **ANSWER:  Defendant lacks sufficient information or knowledge to form a belief as**

2    **to the truth of the untimely allegations contained in Paragraph 114, and on that basis,**

3    **denies the same.**

4    115.    Director Hatcher-Mays told the other departments that Mr. Diemert was the

5    supervisor even though he received neither the title nor the corresponding pay increase. As a

6    result of doing the work of six positions, Mr. Diemert was delayed in completing a certain task

7    for the program. This resulted in someone making a complaint to the Customer Service Bureau

8    **ANSWER:  Defendant lacks sufficient information or knowledge to form a belief as**

9    **to the truth of the untimely allegations contained in Paragraph 115, and on that basis,**

10    **denies the same.**

11    116.    In August of 2015, Director Hatcher-Mays hired Iris Guzman (Ms. Guzman), a

12    person of color, as a supervisor and had Mr. Diemert train her. Previously, Director Hatcher-

13    Mayes had advised Mr. Diemert not to apply for the supervisor position because she was looking

14    for someone who was bilingual and who had contacts within one of the marginalized

15    communities they were targeting. She had also noted that she was planning on expanding the

16    Utility Discount Program supervisor role into two positions, knowing that Mr. Diemert would

17    want to be considered for one of the positions. However, after hiring Ms. Guzman, Director

18    Hatcher-Mayes advised Mr. Diemert that there had been a change of plans and there would no

19    longer be a supervisory position for him to vie for. Moreover, even after hiring Ms. Guzman,

20    Director Hatcher-Mays directed Mr. Diemert to continue running the program because Ms.

21    Guzman had no supervising experience.

22    **ANSWER:  Defendant admits that it hired Iris Guzman as a supervisor on or**

23    **around August of 2015.  Defendant lacks sufficient information or knowledge to form a**

24    **belief as to the truth of the remaining, untimely allegations contained in Paragraph 116,**

25    **and on that basis, denies the same.**

26    117.    Ms. Guzman was chosen over Mr. Diemert for the position because of her race.

27    **ANSWER:  Denied.**

DEFENDANT'S ANSWER TO PLAINTIFF'S FIRST AMENDED
COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES- 36
(Case 2:22-cv-01640-LK)
4885-6827-5585v.1 0002348-000031

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

118.     Despite Ms. Guzman's lack of experience and involvement in the project, she still received the pay and title, even though Mr. Diemert continued to perform substantial work. As a result of these conditions, Mr. Diemert eventually communicated that he would no longer do anything in support of the program. Shortly after, he was ordered by Department Director Tiffany Washington to continue in the role, and he was required to work overtime on October 23, 2015, to meet with SDOT and to review and authorize an outgoing email for the VLFR program (a responsibility of the VLFR Program Supervisor, Ms. Guzman). Less than a week later, Mr. Diemert suffered from his first grand mal seizure.

**ANSWER:  Defendant lacks sufficient information or knowledge to form a belief as to the truth of the untimely allegations contained in Paragraph 118, and on that basis, denies the same.**

119.     The City also discriminated against Mr. Diemert when he sought back pay for performing out of class work. When Supervisor Kilpatrick-Goodwill brought her back pay request to the HR Department, her request was honored. When Mr. Diemert requested back pay, he was told that while the City acknowledged that he performed out of class work, and that he could note this experience on his resume, he would have to hire a lawyer and file a lawsuit in order to obtain any back pay.

**ANSWER:  Defendant lacks sufficient information or knowledge to form a belief as to the truth of the untimely allegations contained in Paragraph 119 and on that basis denies same.**

**J.     The Department Required Mr. Diemert to Work Under Mr. Said Despite Mr. Diemert Reporting Mr. Said for Misconduct, and Experiencing Racial Harassment and Discrimination from Him**

120.     Despite Mr. Said racially harassing Mr. Diemert on several occasions, the City did not offer any solution apart from suggesting Mr. Diemert move away from his preferred workstation. But when Mr. Diemert complained that it would be unfair to punish him for reporting discrimination, Mr. Said was ultimately moved just a few feet away from Mr. Diemert's workstation. The City's investigation into Mr. Said's discriminatory behavior was

inadequate and did not include any interviews with any of the employees that had been witnesses.

**ANSWER:  Defendant admits that it suggested to Mr. Diemert that he move his workstation as a way of mitigating his alleged discomfort around Mr. Said.  Defendant further admits that, when Mr. Diemert refused to move his workspace, Defendant moved Mr. Said's workspace, despite the City's investigation's conclusion that Mr. Diemert's complaints were not substantiated.  Defendant denies that Mr. Said had any authority over Mr. Diemert's employment and denies that Mr. Diemert worked "under" Mr. Said. Defendant further denies that its investigation into Mr. Diemert's complaint about Mr. Said was inadequate.  Except as expressly admitted, Defendant denies the remaining allegations contained in Paragraph 120.**

121.    In its report to the EEOC, the City claimed that Mr. Said was no longer Mr. Diemert's supervisor and no longer worked in that office. But this was not true. Following Mr. Said's harassing behavior toward Mr. Diemert, Mr. Said continued to supervise Mr. Diemert directly and evaluate his work product. As a Lead Program Intake Representative (PIR), Mr. Said was in a position of authority and control over Mr. Diemert. Lead PIRs review the work of non-lead PIRs like Mr. Diemert regarding approval into the Utility Discount Program. Supervisor Kilpatrick- Goodwill required Mr. Diemert to include Mr. Said in his emails and report his absences to Mr. Said. Following Mr. Diemert's allegations, Mr. Said's role overseeing Mr. Diemert's work did not change.

**ANSWER:  Defendant admits that it represented in its EEOC charge response that Mr. Said was not Mr. Diemert's supervisor.  Defendant denies the remaining allegations contained in Paragraph 121, including the allegation that Mr. Said supervised Mr. Diemert.**

122.    In April 2020, Marc Mayo (Mr. Mayo), an Ethics and Whistleblower Advisor, Trainer, and Investigator for the City of Seattle Ethics and Elections Commission contacted Mr. Diemert and informed him of the results of the investigation. He told Mr. Diemert that the

DEFENDANT'S ANSWER TO PLAINTIFF'S FIRST AMENDED
COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES- 38
(Case 2:22-cv-01640-LK)
4885-6827-5585v.1 0002348-000031

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

investigation had determined that while line workers were not allowed to work on cases regarding family members, the rules technically did not apply to those in leadership positions. Mr. Mayo claimed that Mr. Said was exempt from ethical requirements regarding self-dealing because he was in a leadership role.

**ANSWER:  Defendant lacks sufficient information or knowledge to form a belief as to the truth of alleged communications between Mr. Mayo and Mr. Diemert and on that basis denies the allegations in Paragraph 122.**

123.    Department management allowed Mr. Said's hostility and discriminatory conduct towards Mr. Diemert to continue. Mr. Said continued to be Mr. Diemert's lead, resulting in Mr. Diemert having to report to the very individual he had turned in for misconduct.

**ANSWER:  Denied.**

124.    Mr. Said was not reprimanded for physically threatening Mr. Diemert or for the racist remarks he made toward Mr. Diemert.

**ANSWER:  Defendant denies that Mr. Said physically threatened or made racist remarks to Mr. Diemert.  Defendant admits that Mr. Said did not receive a reprimand or other disciplinary action on account of Mr. Diemert's unsubstantiated complaints.**

125.    Mr. Diemert was disturbed and distressed about the City's inaction against Mr. Said. He decided to go public with his allegations against Mr. Said. On August 31, 2021, Mr. Diemert tried to send an email to his colleagues at the Department, outlining Mr. Said's improprieties and highlighting the City's total inaction. The email to the Department bounced because the City had been monitoring and limiting Mr. Diemert's email privileges in light of his complaints about RSJI. He subsequently sent the email to his unit, which successfully went through.

**ANSWER:  Defendant admits that Mr. Diemert sent an email to City of Seattle employees on or around August 31, 2021, in which he publicly maligned Mr. Said. Defendant lacks sufficient information or knowledge to form a belief as to the truth of the remaining allegations contained in Paragraph 125, and on that basis, denies the same.**

DEFENDANT'S ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES- 39 (Case 2:22-cv-01640-LK) 4885-6827-5585v.1 0002348-000031

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

126.     The Ethics Department eventually found that Mr. Diemert's allegations had merit and that Mr. Said's actions were unethical and a violation of City rules.[2]

**ANSWER:  Defendant admits that after investigation, Mr. Said's actions related to allowing customers who were related to him to access City discount programs were found to be in violation of City rules.  Defendant denies the remaining allegations contained in Paragraph 126.**

127.     An administrator in Mr. Diemert's unit, John Fields, Jr., quit over what he saw as the City's prior sham investigation. The City then again attempted to defend and protect Mr. Said from any accountability by requesting administrative dismissal of the complaint against Mr. Said from the Seattle Ethics and Elections Commission because it claimed the offense was "minor." The City misled and minimized Mr. Said's knowledge and involvement with the fraud by characterizing the issue as only a procedural review error, despite Mr. Said being aware that his sister was ineligible for the program, submitting the application on her behalf, and being directly involved in the business as confirmed by business filings with the State of Washington. At its April 6, 2022, meeting, the Commission rejected the request for administrative dismissal and commissioners expressed their discomfort with the effort to dismiss a claim of self-dealing as a "minor" violation.[3]

**ANSWER:  Defendant admits that it requested administrative dismissal of the charges against Mr. Said on the basis that the charges were minor, and it further admits that the Commission rejected this request.  Defendant denies that John Fields left his employment with Defendant due to any alleged "sham investigation."  Except as expressly admitted, Defendant denies the remaining allegations contained in Paragraph 127.**

128.     The City's protection and discriminatory preference for Mr. Said traces back to its Race and Social Justice Initiative.

**ANSWER:  Denied.**

---

[2] http://www.seattlechannel.org/ethics?videoid=x136993 at 12:55-31:15
[3] *Id.*

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

**K.    The City Placed a RSJI Change Team Member in Charge of the Investigation of Mr. Diemert's Claims of a Hostile Work Environment**

129.    Mr. Diemert filed his first complaint with the EEOC on December 23, 2020, which was amended in January 2021. The filing of that complaint triggered an internal investigation by the City's Department of Human Resources (SDHR).

**ANSWER:  Admitted.**

130.    The SDHR investigation did not constitute a serious effort from the City to investigate Mr. Diemert's claims. The lead investigator assigned to his case, Brandon Kuykendall (Mr. Kuykendall), was an active volunteer and member of a Change Team, one of the many entities specifically tasked with infusing RSJI principles into all City operations. Mr. Diemert felt that this created an unavoidable conflict of interest. As Mr. Diemert explained in an email to Mr. Kuykendall and the head of SDHR, "that means you have someone who is part of my complaint investigating himself while simultaneously involved in the overt racism and discrimination my complaint details." But SDHR refused to appoint a different investigator.

**ANSWER:  Defendant admits that Brandon Kuykendall was assigned to investigate Mr. Diemert's allegations and further admits that Mr. Kuykendall was an active volunteer and a member of the Change Team, which has a role in infusing RSJI principles into City operations.  Defendant further admits that Mr. Diemert complained that Mr. Kuykendall's involvement in the RSJI work constituted a conflict of interest.  Defendant denies that it refused to appoint a different investigator and by way of further answer asserts that it did appoint an additional investigator to examine Mr. Diemert's claims.  Except as expressly admitted, Defendant denies the remaining allegations contained in Paragraph 130.**

131.    Mr. Kuykendall conducted a haphazard investigation and wrote a report that exonerated the Change Team. Mr. Kuykendall wrote the first draft of his report finding no fault even before he completed his investigation and without thoroughly investigating Mr. Diemert's claims. Mr. Kuykendall did not interview key witnesses or take the necessary steps to engage in a thorough investigation. Mr. Kuykendall approached Mr. Diemert's claims with skepticism and hostility and interviewed Senior Officer Groce, Mr. Mirabueno, Mr. Sharkey, and Supervisor

DEFENDANT'S ANSWER TO PLAINTIFF'S FIRST AMENDED
COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES- 41
(Case 2:22-cv-01640-LK)
4885-6827-5585v.1 0002348-000031

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1   Kilpatrick- Goodwill, all of whom had ignored Mr. Diemert's previous reports of discrimination.

2   It is also Mr. Diemert's understanding that Mr. Kuykendall interviewed Casey Tonnelly, the

3   same RSJI trainer that encouraged excluding white employees from work spaces, "decentering

4   whiteness," and who helped prepare the PowerPoint contained in **Exh. 8**.

5        **ANSWER:  Defendant admits that it conducted a thorough investigation, which**

6   **included interviewing the facilitators of the training that Mr. Diemert shared concerns**

7   **about.  Defendant lacks sufficient information or knowledge to form a belief as to the truth**

8   **of the remaining allegations contained in Paragraph 131, and on that basis, denies the**

9   **same.**

10       132.    On August 27, 2021, Mr. Diemert received the final report from Mr. Kuykendall.

11  The incomplete investigation and the inaccurate and one-sided nature of the report once again

12  showed Mr. Diemert that there was no chance that the Department or the City would abandon its

13  relentless RSJI push. To Defendants, Mr. Diemert was merely a member of a disfavored racial

14  group.

15       **ANSWER:  Defendant admits that on or about August 27, 2021, Mr. Diemert**

16  **received the findings of the investigation.  Defendant denies the remaining allegations**

17  **contained in Paragraph 132.**

18       **L.    The City's Treatment of Mr. Diemert Grew Worse After He Filed His EEOC**
19            **Complaint**

20       133.    Mr. Diemert was subject to increasingly adverse treatment after he submitted his

21  EEOC complaint and continued to raise his concerns about the RSJI program in the workplace.

22       **ANSWER:  Denied.**

23       134.    In January 2021, Supervisor Kilpatrick-Goodwill retaliated against Mr. Diemert

24  because he had filed his EEOC charge on December 23, 2020, and because he had voiced his

25  objections to the City's RSJI on numerous occasions. In response to Mr. Diemert inquiring about

26  why the inbox for public emails was not being checked and the length of time it was taking for

27  emailed applications to be assigned to staff, Ms. Kilpatrick sent out an email asking, "how many

DEFENDANT'S ANSWER TO PLAINTIFF'S FIRST AMENDED
COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES- 42
(Case 2:22-cv-01640-LK)
4885-6827-5585v.1 0002348-000031

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

applications does Josh have sitting in the drawer ... what is the oldest date of his applications and delays?" She did not question other employees about the same issue, despite other employees having delayed applications.

**ANSWER**:  **Defendant denies that Ms. Kilpatrick-Goodwill retaliated against Mr. Diemert.  Defendant admits that on January 27, 2021, Mr. Diemert expressed concern that physical and online materials were not being processed in a timely fashion, and further responds that Ms. Kilpatrick attempted to resolve this issue, including by checking the status of applications of all members of the Program Intake Specialist team, including Mr. Diemert.  Defendant denies that Ms. Kilpatrick-Goodwill singled Mr. Diemert out for this review. Except as expressly admitted, Defendant denies the remaining allegations contained in Paragraph 134.**

135.     Mr. Diemert's co-workers confirmed Supervisor Kilpatrick-Goodwill's retaliatory targeting of Mr. Diemert.

**ANSWER**:  **Defendant lacks sufficient information or knowledge to form a belief as to the truth of the allegations contained in Paragraph 135, and on that basis, denies the same.**

136.     Mr. Diemert normally met with Supervisor Kilpatrick-Goodwill, his direct supervisor, monthly. In February or March 2020, Mr. Diemert had his usual monthly meeting with Supervisor Kilpatrick-Goodwill and raised his concerns about the racialized training and RSJI material. After that, their monthly meetings became increasingly infrequent. For most of 2021, nearly all of Mr. Diemert's monthly meetings with Supervisor Kilpatrick-Goodwill were canceled even though his other colleagues were having their regular meetings. By August 2021, he had not had a monthly meeting in months and was not receiving any support for his work. For instance, when Mr. Diemert suffered severe tech problems, he received no support from Supervisor Kilpatrick-Goodwill and had to reach out to upper management to get that assistance. He had to spend months getting approval to use the Adobe PDF software even though it was crucial for his day-to-day work.

DEFENDANT'S ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES- 43 (Case 2:22-cv-01640-LK) 4885-6827-5585v.1 0002348-000031

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1    **ANSWER:  Defendant admits that Ms. Kilpatrick-Goodwill occasionally canceled**

2    **meetings with her direct reports.  Defendant denies that Mr. Diemert experienced a**

3    **particular reduction in meetings with Kilpatrick-Goodwill, that Ms. Kilpatrick-Goodwill**

4    **cancelled more meetings with Mr. Diemert than with her other direct reports, or that any**

5    **meeting cancellations were the result of retaliation.  Defendant denies the remainder of the**

6    **allegations contained in Paragraph 136.**

7        137.    Mr. Diemert also experienced issues with an FMLA request in 2021. In July 2021,

8    the Department of Labor found that the City violated Mr. Diemert's FMLA rights by denying

9    him a reduced work schedule and leave for biannual medical treatment. The DOL report also

10    noted that "Tina Ng-Rudell in Human Resources had caused roadblocks in the employee's

11    ability to be approved for FMLA leave" by giving Mr. Diemert incorrect instructions on how to

12    correct the medical certification submitted on May 5, 2021. The report further noted that the City

13    "did not provide an explanation for why the violations occurred."

14    **ANSWER:  Defendant admits that the cited language appears in a DOL report**

15    **related to Mr. Diemert's request for FMLA, which the DOL found had been delayed.**

16    **Except as expressly admitted, Defendant denies the remaining allegations in this**

17    **paragraph.**

18        138.    Mr. Diemert was denied FMLA leave on account of his race and in retaliation for

19    his criticism of the RSJI initiative.

20    **ANSWER:  Denied.**

21        139.    Throughout 2021, Mr. Diemert continued to tell his supervisors and others that his

22    health was suffering because of the racial harassment that he experienced.

23    **ANSWER:  Denied.**

24        140.    One of the few things that helped Mr. Diemert continue to carry out his duties

25    despite his concerns was the ability to work from home following the onset of the COVID-19

26    pandemic. He also felt that being able to work from home was a health necessity given that he

27    was in a high-risk category. But in August 2021, he was informed that due to staffing shortages,

DEFENDANT'S ANSWER TO PLAINTIFF'S FIRST AMENDED
COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES- 44
(Case 2:22-cv-01640-LK)
4885-6827-5585v.1 0002348-000031

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

the City could no longer accommodate his request to work from home. He came to understand that the decision of whether he would be allowed to work from home would be made using the "equity toolkit" and that "BIPOC" applicants would be given priority to telework over him based on their race. He expressed his concern that "I believe it is becoming quite clear that the disregard for my high risk status is solely because of the color of my skin" and that he felt "like the actions by the City of Seattle are purposeful to ensure I have no other choice but be compelled to quit a job I put my heart and soul into."

**ANSWER:  Defendant admits that Mr. Diemert worked from home during the COVID-19 pandemic and further admits that Mr. Diemert requested to continue to work from home after Defendant commenced in-person work for his department.  Defendant admits that the City could not accommodate his request to work from home due to operational needs and that it therefore denied the request.  Defendant further admits that Mr. Diemert sent an email to Defendant in which he used the language quoted in this paragraph.  Defendant denies the remaining allegations contained in Paragraph 140, including the allegation that BIPOC applicants were given priority to telework over Mr. Diemert based on their race.**

141.    As a result of the racial discrimination and the hostile work environment Mr. Diemert experienced, he felt compelled to take a constructive discharge from further employment in the City of Seattle rather than endure continued abuse.

**ANSWER:  Denied.**

142.    The Defendants forced Mr. Diemert to terminate his employment based upon racial animus and/or retaliatory motive, in violation of Title VII and WLAD. Defendants made Mr. Diemert's working conditions so intolerable that a reasonable person in his position would feel compelled to quit.

**ANSWER:  Denied.**

143.    As Mr. Diemert told Mr. Mayo just a few days before he resigned, "ever since I reported Shamsu to Ethics and filed a charge with the EEOC I have felt like I am being pressured

DEFENDANT'S ANSWER TO PLAINTIFF'S FIRST AMENDED
COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES- 45
(Case 2:22-cv-01640-LK)
4885-6827-5585v.1 0002348-000031

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

to quit ... the workplace is not conducive to my health, I feel like I am constantly ... on defense from being attacked or discriminated against because the environment is toxic and hostile ..."

**ANSWER:  Defendant lacks sufficient information or knowledge to form a belief as to the truth of the allegations contained in Paragraph 143, and on that basis, denies the same.**

## CLAIMS FOR RELIEF

### COUNT I

### (Equal Protection)

144.    Plaintiff hereby realleges and incorporates by reference the allegations contained in Paragraphs 1 through 143.

**ANSWER:  Defendant incorporates its responses to the preceding paragraphs.**

145.    "Classifications based on race carry a danger of stigmatic harm," and can "promote notions of racial inferiority and lead to a politics of racial hostility." *Richmond v. J.A. Croson Co,* 488 U.S. 469, 493 (1989).

**ANSWER:  Paragraph 145 contains legal argument to which no response is required; to the extent a response is required, Defendant denies the same.**

146.    Public employees are entitled under the Equal Protection Clause to be "free of purposeful workplace harassment on the basis of protected status." *Rodriguez v. Maricopa Cnty. Cmty. Coll. Dist,* 605 F.3d 703, 707 (9th Cir. 2010).

**ANSWER:  Paragraph 146 contains legal argument to which no response is required; to the extent a response is required, Defendant denies the same.**

147.    Racial classifications that are motivated by "prejudice or stereotype"—even when narrowly tailored—violate the Equal Protection Clause of the Fourteenth Amendment. *Croson,* 488 U.S. at 493.

**ANSWER:  Paragraph 147 contains legal argument to which no response is required; to the extent a response is required, Defendant denies the same.**

///

DEFENDANT'S ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES- 46 (Case 2:22-cv-01640-LK) 4885-6827-5585v.1 0002348-000031

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

148.    Defendants treated Plaintiff differently from his colleagues because of his race when they intentionally segregated staff meetings by race, offered and required race-based programming, promoted affinity groups, and maintained a commitment to making racial distinctions among City staff.

**ANSWER:  Denied.**

149.    Defendants treated Plaintiff differently on account of his race throughout the entirety of his employment with the City.

**ANSWER:  Denied.**

150.    Defendants' discriminatory actions towards Plaintiff do not serve a compelling interest, nor are they narrowly tailored.

**ANSWER:  Denied.**

151.    Defendants' discriminatory actions violated the Equal Protection Clause of the Fourteenth Amendment.

**ANSWER:  Denied.**

## COUNT II

### (Hostile Work Environment - Violation Of Title VII)

152.    Plaintiff hereby realleges and incorporates by reference the allegations contained in Paragraphs 1 through 151.

**ANSWER:  Defendant incorporates its responses to the preceding paragraphs.**

153.    Defendants subjected Plaintiff to severe, pervasive, and objectively offensive racial harassment through mandatory race-based training, segregated staff meetings, encouraging race-based affinity groups, frequent and repeated affirmations by Defendants about the City's commitment to making racial distinctions among City staff through the RSJI, and all the adverse employment actions described above.

**ANSWER:  Denied.**

154.    The harassment Mr. Diemert experienced at the hands of the Defendants was motivated by his race.

DEFENDANT'S ANSWER TO PLAINTIFF'S FIRST AMENDED
COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES- 47
(Case 2:22-cv-01640-LK)
4885-6827-5585v.1 0002348-000031

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1     **ANSWER**:  **Denied.**

2     155.    Mr. Diemert repeatedly expressed his objections not only towards RSJI training,

3  affinity groups, and other racial distinctions made by the City, but also objected to the

4  harassment he experienced from coworkers, thereby clearly communicating that the harassment

5  was unwelcome.

6     **ANSWER**:  **Defendant admits that Mr. Diemert raised objections toward RSJI**

7  **training and affinity groups.  Defendant denies the remaining allegations contained in**

8  **Paragraph 156, including that Mr. Diemert was subject to unlawful harassment.**

9     156.    The harassment deprived Mr. Diemert of access to adequate professional

10  development, altered the conditions of his employment, and had a systemic effect on the work

11  environment within the City as a whole.

12     **ANSWER**:  **Denied.**

13     157.    During the entirety of Mr. Diemert's employment with the City, he was subjected

14  to race-based messaging and humiliation.

15     **ANSWER**:  **Denied.**

16     158.    Mr. Diemert's career stagnation and lack of promotion because of his race and

17  willingness to object to the race and social justice initiative caused him extreme mental distress.

18     **ANSWER**:  **Denied.**

19     159.    Mr. Diemert had no recourse for resolving the conditions of his hostile work

20  environment.

21     **ANSWER**:  **Denied.**

22     160.    The harassment created an objectively hostile and abusive work environment,

23  which a reasonable person would find hostile or abusive.

24     **ANSWER**:  **Denied.**

25     161.    Mr. Diemert experienced a tremendous amount of stress over the hostile work

26  environment created by the City of Seattle, requiring him not only to take time off from work

27  and to seek counseling but ultimately forcing him to take a constructive discharge from

DEFENDANT'S ANSWER TO PLAINTIFF'S FIRST AMENDED
COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES- 48
(Case 2:22-cv-01640-LK)
4885-6827-5585v.1 0002348-000031

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1   employment with the City of Seattle altogether.

2   **ANSWER:  Denied.**

3   162.   Defendants knew of the harassment and were deliberately indifferent to it.

4   **ANSWER:  Denied.**

5   163.   The harassment that Mr. Diemert experienced was a direct and foreseeable

6   consequence of ' the policies and practices adopted by Defendants.

7   **ANSWER:  Denied.**

8   164.   The deliberate indifference of the Defendants to the racially hostile environment

9   violated Title VII of the Civil Rights Act.

10  **ANSWER:  Denied.**

11  165.   As a direct and proximate cause of Defendants' discriminatory actions, Mr.

12  Diemert suffered lost wages and benefits, emotional distress and mental anguish, humiliation,

13  seizures, and other damages in amounts to be proved at trial.

14  **ANSWER:  Denied.**

15  **COUNT III**

16  **(Disparate Treatment On The Basis Of Race - Violation Of Title VII)**

17  166.   Plaintiff hereby realleges and incorporates by reference the allegations contained

18  in Paragraphs 1 through 165.

19  **ANSWER:  Defendant incorporates its responses to the preceding paragraphs.**

20  167.   Under Title VII, it is unlawful for an employer to discriminate against any

21  individual with respect to his compensation, terms, conditions, or privileges of employment

22  because of the individual's race.

23  **ANSWER:  Paragraph 167 contains legal argument to which no response is**

24  **required.**

25  168.   Mr. Diemert is a Caucasian male that was subjected to ongoing harassment and

26  discrimination because of his race in violation of Title VII.

27  ///

DEFENDANT'S ANSWER TO PLAINTIFF'S FIRST AMENDED
COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES- 49
(Case 2:22-cv-01640-LK)
4885-6827-5585v.1 0002348-000031

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1    **ANSWER:  Defendant admits that Mr. Diemert self-identified as a Caucasian male**

2    **during his employment with Defendant.  Defendant denies the remaining allegations**

3    **contained in Paragraph 168.**

4        169.    Mr. Diemert was qualified to perform the duties of his job.

5        **ANSWER:  Admitted.**

6        170.    Defendants engaged in unlawful employment practices and discriminated against

7    Mr. Diemert with respect to his compensation, and the terms, conditions, and privileges of his

8    employment with the City.

9        **ANSWER:  Denied.**

10       171.    The unlawful employment practices include, but are not limited to, giving

11   similarly situated workers more favorable treatment in work/project assignments, hours, and

12   promotions; requiring Mr. Diemert to attend discriminatory training sessions and promoting

13   specific trainings based on his racial identity; denying Mr. Diemert's request to form a non-race-

14   based affinity group; failing to address Mr. Diemert's discrimination concerns; creating a

15   confidential file about him; subjecting him to increased scrutiny; assigning a member of the

16   change team, Mr. Kuykendall, to investigate his claims of discrimination; interfering with his

17   FMLA rights; denying Mr. Diemert back pay for out of class work; reducing Mr. Diemert's

18   workload; cancelling his regularly scheduled meetings with his supervisor; delaying the

19   provisions of remote work support; and forcing Mr. Diemert to continue reporting to Mr. Said, a

20   supervisor that had physically accosted and made discriminatory remarks against Mr. Diemert.

21       **ANSWER:  Denied.**

22       172.    The effect of these practices, in conjunction with the City's implementation and

23   enforcement of the Race and Social Justice Initiative, singled out Mr. Diemert, deprived him of

24   equal employment opportunities, and otherwise adversely affected his employment status

25   because of his race while similarly situated individuals outside of Mr. Diemert's protected class

26   were treated more favorably.

27       **ANSWER:  Denied.**

DEFENDANT'S ANSWER TO PLAINTIFF'S FIRST AMENDED
COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES- 50
(Case 2:22-cv-01640-LK)
4885-6827-5585v.1 0002348-000031

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

173.    As a direct and proximate result of Defendants' unlawful conduct, Mr. Diemert suffered lost wages and benefits, emotional distress and mental anguish, humiliation, seizures, and other damages in amounts to be proved at trial.

**ANSWER:  Denied.**

<div align="center">

**COUNT IV**

**(Retaliation - Violation Of Title VII)**

</div>

174.    Plaintiff hereby realleges and incorporates by reference the allegations contained in Paragraphs 1 through 173.

**ANSWER:  Defendant incorporates its responses to the preceding paragraphs.**

175.    Title VII, 42 U.S.C. § 2000e-3, provides that "it shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter."

**ANSWER:  Paragraph 175 contains legal conclusions to which no response is required.**

176.    At all relevant times hereto, Title VII, 42 U.S.C. § 2000e, *et seq,* was in full force and effect and was binding on Defendants.

**ANSWER:  Paragraph 176 contains legal conclusions to which no response is required.**

177.    Title VII required Defendants, and their employees and agents, to refrain from discriminating against any employee because of their race. Mr. Diemert engaged in protected activity when he complained about discrimination and harassment based on race and when he filed his EEOC charges.

**ANSWER:  Paragraph 177 contains legal conclusions to which no response is required.**

178.    There was a causal connection between Mr. Diemert's discrimination complaints and the materially adverse actions taken against him by Defendants.

**ANSWER:  Denied.**

DEFENDANT'S ANSWER TO PLAINTIFF'S FIRST AMENDED
COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES- 51
(Case 2:22-cv-01640-LK)
4885-6827-5585v.1 0002348-000031

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

179.     In retaliation for Mr. Diemert's complaints, the City subjected Mr. Diemert to increased hostile behavior designed to force him to quit and ultimately leading to his constructive discharge, including, but not limited to, his direct supervisor canceling nearly all of his monthly meetings and ceasing to support him in his work; HR refusing to process Mr. Diemert's FMLA paperwork; attempting to make him do things that were beyond the scope of the law and were explicitly discriminatory towards him until he reported them to the Department of Labor. The DOL subsequently charged the City with 11 violations and forced them to process his FMLA request, and other actions detailed above.

**ANSWER:  Denied.**

180.     There was a causal connection between Mr. Diemert's discrimination complaints and the materially adverse actions taken against him by Defendants.

**ANSWER:  Denied.**

181.     Mr. Diemert had to constantly be on defense, as his work environment became increasingly toxic and hostile. He was forced to continue looking at degrading and racist material disseminated in the office that labeled him a white supremacist. The effect of the practices complained about in Paragraphs 1 through 143 has been to deprive Mr. Diemert of equal employment opportunities and otherwise adversely affected his status as an employee because of his race.

**ANSWER:  Denied.**

182.     The retaliation endured by Mr. Diemert would dissuade a reasonable employee from making complaints of discrimination and harassment.

**ANSWER:  Denied.**

183.     Defendants retaliated against Mr. Diemert for engaging in protected activity in violation of Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a).

**ANSWER:  Denied.**

184.     As a direct and proximate result of Defendants' unlawful conduct, Mr. Diemert suffered lost wages and benefits, emotional distress and mental anguish, humiliation, seizures,

DEFENDANT'S ANSWER TO PLAINTIFF'S FIRST AMENDED
COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES- 52
(Case 2:22-cv-01640-LK)
4885-6827-5585v.1 0002348-000031

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1  and other damages in amounts to be proved at trial.

2      **ANSWER:  Denied.**

3                               **COUNT V**

4      **(Disparate Treatment On The Basis Of Race- Violation Of The WLAD)**

5      185.    Plaintiff hereby realleges and incorporates by reference the allegations contained

6  in Paragraphs 1 through 184.

7      **ANSWER:  Defendant incorporates its responses to the preceding paragraphs.**

8      186.    The WLAD prohibits employers from discriminating against any person in

9  compensation or in other terms or conditions of employment because of race. Mr. Diemert is a

10  Caucasian male that was subjected to ongoing harassment and discrimination because of his race

11  in violation of the WLAD.

12      **ANSWER:  Defendant admits that Mr. Diemert self-identified as a Caucasian male**

13  **while employed with Defendant.  The remainder of Paragraph 186 contains legal**

14  **conclusions to which no response is required; to the extent a response is required,**

15  **Defendant denies the same.**

16      187.    Mr. Diemert was qualified to perform the duties of his job.

17      **ANSWER:  Paragraph 187 contains a legal conclusion to which no response is**

18  **required.**

19      188.    Defendants acted with a discriminatory motive and violated the WLAD because

20  Mr. Diemert's race was a substantial or significant factor in Defendants' actions of subjecting

21  Mr. Diemert to ongoing unlawful employment practices, including, but not limited to, giving

22  similarly situated workers more favorable treatment in work/project assignments, hours, and

23  promotions; requiring Mr. Diemert to attend discriminatory training sessions and promoting

24  specific trainings based on his racial identity; denying Mr. Diemert's request to form a non-race-

25  based affinity group; failing to address Mr. Diemert's discrimination concerns; creating a

26  confidential file about him; subjecting him to increased scrutiny; assigning a member of the

27  change team, Mr. Kuykendall, to investigate his claims of discrimination; interfering with his

DEFENDANT'S ANSWER TO PLAINTIFF'S FIRST AMENDED
COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES- 53
(Case 2:22-cv-01640-LK)
4885-6827-5585v.1 0002348-000031

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1   FMLA rights; denying Mr. Diemert back pay for out of class work reducing Mr. Diemert's

2   workload; cancelling his regularly scheduled meetings with his supervisor; delaying the

3   provisions of remote work support; and forcing Mr. Diemert to continue reporting to Mr. Said, a

4   supervisor that had physically accosted and made discriminatory remarks against Mr. Diemert.

5   **ANSWER:  Denied.**

6   189.    As a direct and proximate result of Defendants' unlawful conduct and disparate

7   treatment discrimination in violation of RCW 49.60 *et seq.,* Mr. Diemert suffered lost wages and

8   benefits, emotional distress and mental anguish, humiliation, seizures, and other damages in

9   amounts to be proved at trial.

10   **ANSWER:  Denied.**

11   **COUNT VI**

12   **(Racially Hostile Work Environment-Violation Of The WLAD)**

13   190.    Plaintiff hereby realleges and incorporates by reference the allegations contained

14   in Paragraphs 1 through 189.

15   **ANSWER:  Defendant incorporates its responses to the preceding paragraphs.**

16   191.    Defendants harassed and discriminated against Mr. Diemert because of his race,

17   subjecting him to a hostile work environment in violation of RCW 49.60.

18   **ANSWER:  Denied.**

19   192.    Defendants subjected Plaintiff to severe, pervasive, and objectively offensive

20   racial harassment through mandatory race-based training, segregated staff meetings, encouraging

21   race-based affinity groups, and frequent and repeated affirmations by Defendants about the

22   City's commitment to making racial distinctions among City staff through the RSJI, and other

23   actions.

24   **ANSWER:  Denied.**

25   193.    Mr. Diemert's race was a substantial factor in the harassment and in all the

26   adverse employment actions the City initiated against him.

27   **ANSWER:  Denied.**

DEFENDANT'S ANSWER TO PLAINTIFF'S FIRST AMENDED
COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES- 54
(Case 2:22-cv-01640-LK)
4885-6827-5585v.1 0002348-000031

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

194.     Mr. Diemert repeatedly expressed his objections not only towards RSJI training, affinity groups, and other racial distinctions made by the City, but also objected to the harassment he experienced from coworkers, thereby clearly communicating that the harassment was unwelcome.

**ANSWER:  Defendant admits that Mr. Diemert raised objections toward RSJI training and affinity groups.  Defendant denies the remaining allegations contained in Paragraph 194, including that Mr. Diemert was subject to unlawful harassment.**

195.     The harassment deprived Mr. Diemert of access to adequate professional development, altered the conditions of his employment, and had a systemic effect on the work environment within the City as a whole.

**ANSWER:  Denied.**

196.     During the entirety of Mr. Diemert's employment with the City, he was subjected to race-based messaging and humiliation.

**ANSWER:  Denied.**

197.     Mr. Diemert had no recourse for resolving the conditions of his hostile work environment.

**ANSWER:  Denied.**

198.     The harassment created an objectively hostile and abusive work environment, which a reasonable person would find hostile or abusive.

**ANSWER:  Denied.**

199.     Mr. Diemert experienced a tremendous amount of stress over the hostile work environment created by the City of Seattle, requiring him not only to take time off from work and to seek counseling but ultimately forcing him to take a constructive discharge from his employment with the City of Seattle altogether.

**ANSWER:  Denied.**

200.     Mr. Diemert's career stagnation and lack of promotion because of his race and willingness to object to the race and social justice initiative caused him extreme mental distress.

DEFENDANT'S ANSWER TO PLAINTIFF'S FIRST AMENDED
COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES- 55
(Case 2:22-cv-01640-LK)
4885-6827-5585v.1 0002348-000031

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1   **ANSWER**:  **Denied.**

2   201.    Defendants participated in and/or knew of the harassment and were deliberately

3   indifferent to it.

4   **ANSWER**:  **Denied.**

5   202.    The harassment that Mr. Diemert experienced was a direct and foreseeable

6   consequence of the policies and practices adopted by Defendants.

7   **ANSWER**:  **Denied.**

8   203.    Through their actions described above, Defendants have discriminated against

9   Mr. Diemert in compensation or in other terms or conditions of employment because of race, in

10  violation of RCW49.60.030, RCW 49.60.180.

11  **ANSWER**:  **Denied.**

12  204.    As a direct and proximate cause of Defendants' discriminatory actions, Mr.

13  Diemert has suffered and continues to suffer damages for economic losses and emotional distress

14  in an amount to be proved at trial.

15  **ANSWER**:  **Denied.**

16  <center>**COUNT VII**</center>

17  <center>**(Retaliation- Violation Of The WLAD)**</center>

18  205.    Plaintiff hereby realleges and incorporates by reference the allegations contained

19  in Paragraphs 1 through 204.

20  **ANSWER**:  **Defendant incorporates its responses to the preceding paragraphs.**

21  206.    The WLAD prohibits employers from discriminating against any person because

22  he or she has opposed any practice forbidden by the WLAD.

23  **ANSWER**:  **Paragraph 206 contains legal conclusions to which no response is**

24  **required; to the extent a response is required, Defendant denies the same.**

25  207.    By reporting racial harassment described above to Defendants and filing his

26  EEOC charges, Plaintiff opposed practices forbidden by the Washington Law Against

27  Discrimination and engaged in protected activity under RCW 49.60.210.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1    **ANSWER:  Paragraph 208 contains legal conclusions to which no response is**

2    **required; to the extent a response is required, Defendant denies the same.**

3    208.    Defendants violated the WLAD because Mr. Diemert's protected activities were a

4    substantial factor in Defendants' actions of subjecting Mr. Diemert to increased hostile behavior

5    designed to force him to quit and ultimately leading to his constructive discharge, including, but

6    not limited to, his direct supervisor canceling nearly all of his monthly meetings and ceasing to

7    support him in his work; HR refusing to process Mr. Diemert's FMLA paperwork; the City

8    attempting to make Mr. Diemert do things that were beyond the scope of the law and were

9    explicitly discriminatory towards him until he reported them to the Department of Labor. The

10   DOL subsequently charged the City with 11 violations and forced them to process his FMLA

11   request, and other actions detailed above.

12   **ANSWER:  Denied.**

13   209.    Mr. Diemert had to constantly be on defense, as his work environment became

14   increasingly toxic and hostile. He was forced to continue looking at degrading and racist material

15   disseminated in the office that labeled him a white supremacist. The effect of the practices

16   complained about in Paragraphs 1 through 144 has been to deprive Mr. Diemert of equal

17   employment opportunities and otherwise adversely affected his status as an employee because of

18   his race.

19   **ANSWER:  Denied.**

20   210.    Defendants are liable to Plaintiff for unlawful retaliation in violation RCW

21   49.60.210.

22   **ANSWER:  Denied.**

23   211.    There was a causal connection between Mr. Diemert's discrimination complaints

24   and the materially adverse actions taken against him by Defendants. Mr. Diemert's complaints of

25   discrimination were a substantial factor Defendants' retaliation against him.

26   **ANSWER: Denied.**

27   ///

DEFENDANT'S ANSWER TO PLAINTIFF'S FIRST AMENDED
COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES- 57
(Case 2:22-cv-01640-LK)
4885-6827-5585v.1 0002348-000031

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

212.     The retaliation endured by Mr. Diemert would dissuade a reasonable employee from making complaints of discrimination and harassment.

**ANSWER: Denied.**

213.     As a direct and proximate cause of Defendants' unlawful conduct, Mr. Diemert suffered lost wages and benefits, emotional distress and mental anguish, seizures, embarrassment, humiliation, and other damages in amounts to be proved at trial.

**ANSWER:  Denied.**

### RESERVATION OF RIGHTS

214.     Plaintiff reserves the right to add, revise, or withdraw any claims, or add additional claims during the course of litigation as information is gained through litigation.

**ANSWER:  Paragraph 214 contains legal conclusions to which no response is required.**

### PRAYER FOR RELIEF

Wherefore, the Plaintiff prays for relief as follows:

1.     For a declaration that the City of Seattle's acts, policies, practices, and procedures complained of herein violated Plaintiff's rights as secured by the Equal Protection Clause of the Fourteenth Amendment, Title VII of the Civil Rights Act, and the Washington Law Against Discrimination;

2.     Enjoin Defendants from discriminating on the basis of race in any aspect of employment or retaliating against employees who complain of discriminatory or unfair employment practices;

3.     Retain jurisdiction over this action to assure full compliance with the orders of the Court and with applicable law and require Defendants to file such reports as the Court deems necessary to evaluate compliance;

4.     Award Plaintiff all the damages to which he is entitled, including but not limited to all wage loss, emotional distress, special, general, compensatory, and/or other damages pursuant to RCW 49.60, Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. §

DEFENDANT'S ANSWER TO PLAINTIFF'S FIRST AMENDED
COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES- 58
(Case 2:22-cv-01640-LK)
4885-6827-5585v.1 0002348-000031

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1  2000e, *et seq.*, 42 U.S.C.A. § 1981a(b)(3), and as otherwise authorized by law;

2      5.    Award Plaintiff pre-litigation interest, in an amount to be proved at trial;

3      6.    Award Plaintiff post-litigation interest on his judgment;

4      7.    Award Plaintiff tax consequences relief as provided by law;

5      8.    Award Plaintiff his reasonable attorneys' fees and costs of litigation as authorized

6  by law;

7      9.    Award Plaintiff such other relief as the Court deems just and proper.

8      **ANSWER**:  **Defendant denies that Mr. Diemert is entitled to any relief, including**

9  **that requested herein.**

10                **AFFIRMATIVE DEFENSES**

11     Below are Defendant's affirmative defenses.  By setting forth these affirmative defenses,

12 Defendant does not assume any burden of proof as to any fact issue or other element of any

13 cause of action that properly belongs to Plaintiff.  Defendant reserves the right to amend or

14 supplement its affirmative defenses.

15     1.    Plaintiff fails to state a claim upon which relief can be granted.

16     2.    Plaintiff's claims are barred by the applicable statutes of limitation.

17     3.    Defendant's actions were undertaken for legitimate, nondiscriminatory reasons

18 and no unlawful factors motivated Defendant.

19     4.    Plaintiff's injuries and damages, if any, are the result of his own actions.

20     5.    Even if Plaintiff could prove the allegation that an unlawful factor motivated any

21 action by Defendant, although such is not hereby admitted and is specifically denied, there were

22 other legitimate factors that motivated those actions.  Defendant asserts that it would have taken

23 the same actions with respect to Plaintiff in the absence of any impermissible motivating factors.

24     6.    Plaintiff's damages, if any, are barred by the after-acquired evidence doctrine;

25     7.    Plaintiff has failed to mitigate damages, said damages being expressly denied.

26     8.    Pending further discovery, Plaintiff's claims are barred in whole or in part by the

27 defenses of waiver, estoppel, ratification, laches, acquiescence, unclean hands, consent, and other

DEFENDANT'S ANSWER TO PLAINTIFF'S FIRST AMENDED
COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES- 59
(Case 2:22-cv-01640-LK)
4885-6827-5585v.1 0002348-000031

Davis Wright Tremaine LLP
L AW  O FFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1  equitable defenses.

2       Defendant reserves the right to amend its Answer herein and also to assert additional

3  affirmative or other defenses as the bases for Plaintiff's causes of action become known in

4  discovery.

5                    **<u>DEFENDANT'S PRAYER FOR RELIEF</u>**

6       WHEREFORE, having fully answered Plaintiff's Complaint, and having asserted its

7  defenses against Plaintiff, Defendant prays for the following relief:

8       1.      That Plaintiff take nothing by way of the Complaint;

9       2.      That Plaintiff's Complaint be dismissed in its entirety with prejudice and without

10 costs or fees to Plaintiff of any kind;

11      3.      That Defendant be awarded its reasonable expenses incurred in defending this

12 action, including its costs and reasonable attorneys' fees as provided by applicable laws; and

13      4.      That Defendant be granted such other and further relief as the Court may deem

14 just and equitable.

15      DATED this 21st day of September, 2023.

16                              DAVIS WRIGHT TREMAINE LLP
17                              *Attorneys for Defendant The City of Seattle*

18                              By    /s/ Victoria M. Slade
                                   Sheehan Sullivan, WSBA #33189
19                                 Victoria M. Slade, WSBA 44597
                                   Darrah N. Hinton, WSBA #53542
20                                 920 Fifth Avenue, Suite 3300
                                   Seattle, WA  98104-1610
21                                 Telephone:  206.622.3150
                                   Fax:  206.757.7700
22                                 Email:  sulls@dwt.com
                                   Email:  vickyslade@dwt.com
23                                 Email:  darrahhinton@dwt.com

24

25

26

27

DEFENDANT'S ANSWER TO PLAINTIFF'S FIRST AMENDED
COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES- 60
(Case 2:22-cv-01640-LK)
4885-6827-5585v.1 0002348-000031

1

## <u>CERTIFICATE OF SERVICE</u>

2          I hereby certify that I caused a true and correct copy of the document to which this

3  Certificate of Service is attached to be served in the manner as indicated below:

4  **PACIFIC LEGAL FOUNDATION**              ☐  Via Legal Messenger

5  *Attorneys for Plaintiff:*                ☐  Via U.S. Mail, postage prepaid

6  **Brian T. Hodges, WSBA #31976**          ☐  Via Federal Express
   1425 Broadway, Suite 429
7  Seattle, WA  98122                        ☐  Via Facsimile
   Telephone:  425.576.0484
8  Email:  bhodges@pacificlegal.org         ☐  Via Electronic Mail

9  **Laura M. D'Agostino, Virginia Bar #91556**  ☒  **Via Court ECF**

10 *Admitted Pro Hac Vice*
   3100 Clarendon Boulevard, Suite 1000
11 Arlington, VA  22201
   Telephone:  916.503.9010
12 Email:  ldagostino@pacificlegal.org

13 **Andrew R. Quinio, California Bar #288101**

14 *Admitted Pro Hac Vice*
   555 Capitol Mall, Suite 1290
15 Sacramento, CA  95814
   Telephone:  916.419.7111
16 Email:  aquinio@pacificlegal.org

17

18         Declared under penalty of perjury under the laws of the State of Washington.

19         DATED at Renton, Washington this 21st day of September, 2023.

20

21                                          */s/ Greta Nelson*
                                            Greta Nelson, Legal Assistant
22                                          DAVIS WRIGHT TREMAINE LLP
                                            920 Fifth Avenue, Suite 3300
23                                          Seattle, WA  98104-1610
                                            Telephone:  206.622.3150
24                                          Email:  gretanelson@dwt.com

25

26

27

DEFENDANT'S ANSWER TO PLAINTIFF'S FIRST AMENDED
COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES- 61
(Case 2:22-cv-01640-LK)
4885-6827-5585v.1 0002348-000031

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax