Hon. Jamal N. Whitehead

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

| | |
|---|---|
| JOSHUA A. DIEMERT, an individual,<br><br>  Plaintiff,<br><br>  v.<br><br>THE CITY OF SEATTLE, a municipal corporation,<br><br>  Defendant. | Civil Action No. 2:22-cv-01640-JNW<br><br>**Plaintiff's Motion *in Limine* to Exclude Expert Testimony of Tim Wise**<br><br>**Note on motion calendar Sept. 13, 2024** |

Plaintiff Joshua A. Diemert hereby moves this Court to exclude the expert testimony of Defendant City of Seattle's expert Tim Wise under Federal Rule of Evidence 702. Wise describes himself as a "Lecturer/Educator/Author/Trainer" and "Consultant/Advisor" on "racial bias and inequity." Wise is more accurately described as a pop psychologist who earns six figures telling cities and companies what they want to hear, but with no academic pedigree, no scientific background, and no independent expertise to testify in a court of law as an actual expert.

Though Wise's education is limited to a bachelor's degree in political science, he opines on subjects ranging from psychology to philosophy, sociology, anthropology, human resources, and workplace investigations in his purported expert witness report and deposition testimony. But Wise is not a psychologist, philosopher, sociologist, or anthropologist (or scholar of any kind) and has no training in human resources or workplace investigations. Wise conducted no independent

P. Mot. to Exclude - Wise - 1
2:22-cv-01640-JNW

*Pacific Legal Foundation*
*1425 Broadway, #429*
*Seattle, Washington 98122*
*(425) 576-0484*

research for his report, interviewed neither Diemert nor his former coworkers, and ignored thousands of relevant documents in this case. Wise repeatedly references Diversity, Equity, and Inclusion (DEI) literature as the basis for his opinions, yet the majority of the work he cites is not peer-reviewed. He also has a significant financial interest in perpetuating the type of racially discriminatory trainings Diemert's lawsuit challenges. Wise is not qualified in the topics he purports to be an expert on and his testimony is neither relevant nor reliable. This Court should exclude the testimony and report of Tim Wise and prohibit him from further testimony as an expert witness.

## I.   STATEMENT OF FACTS

### A.  Background

The Race and Social Justice Initiative (RSJI) is an official City of Seattle policy that requires employees to use race-based decision-making to do their jobs. RSJI directs employees to lead with race, "center People of Color," "de-center whiteness," and tells white employees to work at undoing their "whiteness" and "prioritize the leadership of Black, Indigenous, and People of Color" employees. Ex. A [DIEMERT_PROD03_08252]. Race-based RSJI principles inform City hiring and promotion, as well as all policies, projects, programs, services, procedures, and capital improvements within the City of Seattle. Ex. B, Sharkey Dep. Tr. 20:21–21:3; Ex. C, [DIEMERT_PROD04_12626]. As a result of RSJI, Diemert experienced severe racial harassment and discrimination during his time as a City employee. He was denied opportunities for promotion, Ex. D, Diemert Dep. Tr. 103:15–23, 108:4–11, 109:4–14 (March 22, 2024), and verbally assaulted by a coworker due to his race. Ex. D, Diemert Dep. Tr. 286:20–291:4 (March 22, 2024). Despite repeatedly informing his managers, supervisors, and union representatives of this treatment, the City refused to properly investigate or otherwise address Diemert's complaints. Ex. D, Diemert Dep. Tr. 310:2–312:2 (March 22, 2024). This lawsuit followed, and Diemert's equal protection, Title VII, and Washington Law Against Discrimination (WLAD) claims remain active following Defendant's motion to dismiss. Order, Dkt. 28.

P. Mot. to Exclude - Wise - 2
2:22-cv-01640-JNW

*Pacific Legal Foundation*
*1425 Broadway, #429*
*Seattle, Washington 98122*
*(425) 576-0484*

**B. Defendant's Proffered Expert Witness**

Wise is not a scholar. He is also not a psychologist, sociologist, human resources specialist, statistician, or expert in workplace harassment. His sole academic credential is a B.A. in political science and has never been published in a peer-reviewed publication. Ex. E, Wise Rep., Ex. B (Curriculum Vitae). Instead, Wise earns between $200,000 and $400,000 a year as a consultant, speaker, and author on "racial bias and inequity." *Id.*; Ex. F, Wise Dep. Tr. 211:8–11.

Though Wise is not a scholar, psychologist, sociologist, human resources specialist, statistician, or expert in workplace harassment, Defendant proffers Wise as an expert witness in this case to opine on a host of issues that require in-depth knowledge in each of these specialties:

- The identification of racial bias, individually and institutionally.
- The reasons for differential perceptions of racial bias and hostility, especially the differences between white and non-white perceptions of these matters.
- The reasons for differential reactions to anti-racism analysis and DEI efforts in the workplace.
- The basis for anti-racism analyses that explore whiteness, white privilege, implicit bias, systemic racism, white supremacy culture, and power differentials.
- The practical importance of color-conscious (as opposed to color-blind) policies and practices in the workplace as a means for addressing unjust racial disparities therein, and finally,
- Critical Race Theory as an analytical framework for evaluating institutions in American society.

Ex. E, Wise Rep. 1.

Wise conducted no original research in preparation for his report, reviewed only limited RSJI materials, and acknowledged at deposition that he has no opinion on whether Diemert was "the victim of unlawful racial discrimination" or whether he experienced individual racial bias. Ex. F, Wise Dep. Tr. 112:16–21, 114:4–116:20, 128:12–23, 153:4–154:2. Nonetheless, Wise asserts in his report that the RSJI trainings and materials are (1) not biased against white employees and (2) evince no anti-white animus; (3) that the City of Seattle's racially segregated employee affinity groups or caucuses are not discriminatory but "good pedagogical practice"; (4) that the racial discrimination Diemert experienced was not due to the RSJI program, but rather his own

P. Mot. to Exclude - Wise - 3
2:22-cv-01640-JNW

*Pacific Legal Foundation*
*1425 Broadway, #429*
*Seattle, Washington 98122*
*(425) 576-0484*

"predisposition to find fault with the materials" of RSJI; and (5) Diemert incorrectly perceived racial bias in the RSJI materials because "[t]he tendency for white Americans to perceive bias against us" is a "longstanding tradition." Ex. E, Wise Rep. 10–14. In other words, Wise's opinion is to blame the victim. This is not the work of an expert witness, and Wise should not be qualified by this Court to testify as one.

## II.    LEGAL STANDARD

Whether a witness is qualified to testify as an expert is a question of law. Fed. R. Evid. 104(a) (A district court "must decide any preliminary question about whether a witness is qualified[.]"). Federal R. Evid. 702 permits a witness to testify as an expert only if he is "qualified as an expert by knowledge, skill, experience, training, or education." If the witness meets this threshold determination for admissibility, the party proffering the witness as an expert must then prove the expert's reliability and relevance by demonstrating to the court that "it is more likely than not" that (a) the expert's "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;" (b) his testimony "is based on sufficient facts or data;" (c) the testimony "is the product of reliable principles and methods;" and (d) "the expert's opinion reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702; *see Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457, 463 (9th Cir. 2014) ("We have interpreted Rule 702 to require that expert testimony be both relevant and reliable.") (cleaned up). Rule 702 was amended in 2023 to "clarify and emphasize that expert testimony may not be admitted unless the proponent demonstrates to the court that it is more likely than not that the proffered testimony meets the admissibility requirements set forth in the rule." Fed. R. Evid. 702, Committee Notes on Rules – 2023 Amendment (citing Fed. R. Evid. 104(a)). The proffering party "must demonstrate that the expert's findings are based on sound principles and that they are capable of independent validation." *United States v. Cloud*, No. 1:19-cr-02032-SMJ, 2022 WL 801694, at *2 (E.D. Wash. Mar. 8, 2022).

The Advisory Committee also emphasized that the "critical questions of the sufficiency of an expert's basis, and the application of the expert's methodology," are questions of admissibility,

P. Mot. to Exclude - Wise - 4
2:22-cv-01640-JNW

Pacific Legal Foundation
1425 Broadway, #429
Seattle, Washington 98122
(425) 576-0484

not weight. *Id*. District court judges serve as gatekeepers to ensure that scientific testimony is both reliable and relevant. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993).

The district court's gatekeeping function is not limited to "scientific" testimony, but rather extends to all expert testimony. *United States v. Hankey*, 203 F.3d 1160, 1167 (9th Cir. 2000) (citing *Kuhmo Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999)). As gatekeeper, the court's objective is to "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id*. at 152.

### III.   ARGUMENT

#### A. Wise Is Not Qualified on the Topics in his Report

Whether a proffered expert witness is sufficiently qualified under Rule 702 by knowledge, skill, experience, training, or education is a threshold determination. *See United States v. Figueroa-Lopez*, 125 F.3d 1241, 1246 (9th Cir. 1997). Examples of characteristics courts consider in determining qualification include advanced degrees, qualifying as an expert in other cases involving the same issue, technical expertise, and the completion of trainings or proficiency tests in the relevant field. *See, e.g.*, *F.T.C. v. BurnLounge, Inc.*, 753 F.3d 878, 888 (9th Cir. 2014) (doctorate in economics and advanced degree in mathematics sufficient for interpreting sales data); *Gold v. Midland Credit Management, Inc.*, 82 F.Supp.3d 1064, 1068 (N.D. Cal. 2015) ("numerous" past qualifications on subjects of credit reporting and consumer fraud insufficient to opine on whether statements made in debt collection violate federal statute); *Sundance, Inc. v. DeMonte Fabricating Ltd.*, 550 F.3d 1356, 1360 (Fed. Cir. 2008) (patent attorney not qualified due to lack of relevant technical experience with subject of patent); *United States v. Cloud*, 2022 WL 801694 at *3 ("extensive trainings related to her field of practice," annual proficiency tests, and certification from international professional organization weighed in favor of qualification).

In his report, Wise offers opinions on five topics: (i) the root or intent of RSJI trainings or materials; (ii) the content of RSJI trainings as evidence of anti-white animus; (iii) Defendant's racial affinity groups or caucuses as evidence of anti-white animus; (iv) Diemert's interpretation of RSJI; and (v) the reasons for Diemert's perception of RSJI and the "tendency of white

P. Mot. to Exclude - Wise - 5
2:22-cv-01640-JNW

Pacific Legal Foundation
1425 Broadway, #429
Seattle, Washington 98122
(425) 576-0484

Americans to perceive bias against us." Ex. E, Wise Rep. 10–14. Wise is not qualified under Rule 702 to opine as an expert on any of these topics.

Wise's first three opinions are about the details of RSJI: its trainings, its materials, its racial caucuses and affinity groups, and the intention of the initiative's designers. But Wise has only limited knowledge of and zero experience with these aspects of RSJI. Wise was not involved in developing the RSJI program, its trainings, or materials. Wise's exposure to RSJI is limited; he reviewed approximately 15 select RSJI-related documents—a small fraction of the thousands of RSJI-related materials and training documents that Defendant produced in this case. Ex. E, Wise Rep. 52; Ex. F, Wise Dep. Tr. 153:4–154:2 (reviewed "a very limited subset of the hundred thousand documents or pages" in the case); 179:23–180:1 (only reviewed training materials referenced in First Amended Complaint). He did not review all of the trainings Diemert took, did not do a "deep dive" of RSJI's parameters, logistics, and trainings, did not speak with any of the RSJI trainers that provided training to Diemert, and has never taken RSJI training himself. Ex. F, Wise Dep. Tr. 154:7–9; 174:19–22; 179:23–180:1; 182:12–15. So, when Wise opines that "[t]he RSJI trainings and materials, far from being rooted in racial bias against white people, are grounded in long-established and accepted frameworks for addressing racial disparities in the workplace," that opinion is not based on any experience or knowledge of the intentions of RSJI's architects or what its training and materials are "rooted in." Ex. E, Wise Rep. 10. This lack of experience or knowledge of the RSJI creator's intentions also makes Wise unqualified to opine that Defendant's racial affinity groups and caucuses are "not animated by animus or bias in the least." Ex. E., Wise Rep. 12.[1] Wise's sweeping opinion that "[t]he content of the RSJI trainings, to which the plaintiff objects, are not evidence of anti-white animus" and that "in several cases, the materials undermine that allegation directly with content that says, literally, the opposite of what

---

[1] The other opinion expressed in this section—that "[o]perating and offering intra-racial affinity groups or caucuses for employees is not evidence of anti-white animus or tantamount to 're-segregation'"—is an ultimate issue of law and therefore a question for the trier of fact, not an expert. Ex. E, Wise Report 12; *United States v. Diaz*, 876 F.3d 1194, 1197 (9th Cir. 2017); *see also Marketquest Group, Inc. v. BIC Corp.*, 2018 WL 1756116, at *3 (S.D. Cal. Apr. 12, 2018) (citing Fed. R. Evid. 704, 1972 Advisory Committee Note "clarifying Rule 704 as not permitting 'the admission of opinions which would merely tell the jury what result to reach'").

P. Mot. to Exclude - Wise - 6
2:22-cv-01640-JNW

*Pacific Legal Foundation*
*1425 Broadway, #429*
*Seattle, Washington 98122*
*(425) 576-0484*

the plaintiff asserts," are equally unmoored in experience or knowledge; Wise quite simply cannot be an expert on the content of trainings he has not seen and materials he has not reviewed.

Wise's remaining opinions center on Diemert's interpretation and perception of RSJI. Ex. E, Wise Rep. 14–15. He first opines that "[m]uch of the plaintiff's interpretation of the RSJI seems to reflect a political or ideological predisposition to oppose the training materials and methods—a predisposition that has been heightened by the current political climate in which DEI efforts and any substantive discussions of race and racism are under attack." Ex. E, Wise Rep. at 14. Wise finds Diemert's language "suggestive of his own political and ideological opposition to the materials presented," that he "deploy[s] tropes and verbiage increasing[ly] common among those who, for political reasons, are attacking any substantive discussion of race in schools or workplaces across the country," that his language is "suggestive of an ultra-conservative worldview," and "the fact that he resorts to" this language to describe RSJI "indicates an opposition likely more grounded in politics" than experiences of racial discrimination. *Id*. This, Wise opines, "suggests a predisposition to find fault with the materials, irrespective of actual content." *Id*.

However, Wise is not a psychologist. Ex. F, Wise Dep. Tr. 205:11–14. He is not a social scientist. Ex. F, Wise Dep. Tr. 128:23. Wise has never even spoken with Diemert about his interpretation and perceptions of RSJI or anything else. Ex. F, Wise Dep. Tr, 205:15–20. Without this, Wise has no knowledge, skill, experience, training, or education to qualify him as an expert on Diemert's use of language or what may or may not suggest about Diemert's interpretation of RSJI.

Wise is equally unqualified to opine that Diemert's perceptions of the RSJI materials and analysis are explained by "[t]he tendency for white Americans to perceive bias against us (even in the absence of evidence)." Ex. E, Wise Rep. 14–15. This opinion is little more than a broad cultural stereotype, based on a literature review and Wise's personal experience "doing what we can loosely refer to . . . as DEI trainings, or analysis, or work in the workplace," not any kind of specialized knowledge, training, or education. Ex. F, Wise Dep. Tr. 131:13–24. Wise's opinions on this topic should be excluded. *See Jinro America Inc. v. Secure Investments, Inc.*, 266 F.3d 993, 1006 (9th Cir. 2001) (excluding proffered expert for cultural stereotyping and lack of training in sociology

P. Mot. to Exclude - Wise - 7
2:22-cv-01640-JNW

Pacific Legal Foundation
1425 Broadway, #429
Seattle, Washington 98122
(425) 576-0484

or anthropology, "academic disciplines that *might* qualify one to provide reliable information about the cultural traits and behavior patterns of a particular group of people of a given ethnicity or nationality").

### B. Wise's Testimony Is Not Reliable

Even if this Court finds that Wise satisfies Rule 702's qualification threshold, which he does not, his testimony is still fatally unreliable. In making admissibility determinations on reliability, district court judges may consider factors like: "1) whether a theory or technique can be tested; 2) whether it has been subjected to peer review and publication; 3) the known potential error rate of the theory or technique; and 4) whether the theory or technique enjoys general acceptance within the relevant scientific community." *Hankey*, 203 F.3d at 1167 (citing *Daubert*, 509 U.S. at 592–94). Whatever factors are used, a non-scientist expert's opinion must receive the same degree of "scrutiny for reliability as an opinion from an expert who purports to be a scientist." Fed. R. Evid. 702, Advisory Committee Note to 2000 Amendments. This is because Rule 702 does not "create[] a schematism that segregates expertise by type while mapping certain kinds of questions to certain kinds of experts." *Kuhmo Tire*, 526 U.S. at 151. Expert opinion testimony is reliable "if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Alaska Rent-A-Car, Inc. v. Avis Budget Group, Inc.*, 738 F.3d 960, 969 (9th Cir. 2013). Reliable testimony must also be "more than subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 590. While "no one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized knowledge," *Kumho Tire*, 526 U.S. at 156, if those conclusions are based on unsubstantiated generalizations or opinions not derived by the scientific method they must be excluded. *Daubert v. Merrell Dow Pharmaceuticals, Inc. (Daubert II)*, 43 F.3d 1311, 1316 (9th Cir. 1995).

Wise's report lacks any basis in reliable scientific methodology and draws unsupported (and, as discussed below, irrelevant) conclusions about the content and purpose of RSJI trainings and materials, as well as Diemert's beliefs about those trainings and materials. To start with, Wise conducted no independent research in forming his conclusions. Ex. F, Wise Dep. Tr. 128:12–23; 174:19–22. Instead, Wise conducted a literature review of largely non-peer-reviewed sources, then

P. Mot. to Exclude - Wise - 8
2:22-cv-01640-JNW

*Pacific Legal Foundation*
*1425 Broadway, #429*
*Seattle, Washington 98122*
*(425) 576-0484*

relied on his background as a DEI trainer, writer, and public speaker to opine on the intent of RSJI trainings and materials, Diemert's perceptions, and the tendencies of white Americans. Ex. F, Wise Dep. Tr. 116:21–117:3; 129:2–6.

Since Wise's conclusions are not based on independent research, to be reliable there must be "other objective, verifiable evidence that the testimony is based on 'scientifically valid principles.'" *Daubert II*, 43 F.3d at 1317–18. This can be satisfied if the research and analysis supporting the proffered conclusions "have been subjected to normal scientific scrutiny through peer review and publication" in a "generally-recognized scientific journal that conditions publication on a bona fide process of peer review." *Id*. at 1318 & n.6; *see Daubert*, 509 U.S. at 593–94 ("[S]ubmission to the scrutiny of the scientific community is a component of 'good science,' in part because it increases the likelihood that substantive flaws in methodology will be detected.").

Wise's report fails here too; the majority of the sources he cites—nearly 60 percent—are not peer-reviewed. Ex. E, Wise Rep. 52–57. These non-scientifically scrutinized sources range from social media posts to the writings of Dr. Martin Luther King, Jr. to Wise's own books, which he cites 23 times. *Id*. Yet Wise relied upon this (majority not peer-reviewed) literature review as a basis for his conclusions on evaluating claims of anti-white bias, why white Americans like Diemert "often see ourselves as victims," and what Wise terms Diemert's "pedagogical and content-based objections" to RSJI. Ex. E, Wise Report 15–42; Ex. F, Wise Dep. 128:12–129:6; 131:13–20; 134:21–24; 139:13–16; 148:9–14; 192:25–193:6. Aside from the literature, Wise relies on anecdotes from his speaking and training work. For example, his opinion that white people "commonly assume that any advance for persons of color is evidence of anti-white bias" is based on his experience that "when we talk about these things, and when I talk about them, it is a very consistent thread of defensiveness or response." Ex. F, Wise Dep. Tr. 194:20–195:6. Wise's opinions on the reasons for differing reactions to DEI in the workplace are based on "some literature" and his "personal experience doing what we can loosely refer to . . . as DEI trainings, or analysis, or work in the workplace." Ex. F, Wise Dep. Tr. 131:13–24.

P. Mot. to Exclude - Wise - 9
2:22-cv-01640-JNW

*Pacific Legal Foundation*
*1425 Broadway, #429*
*Seattle, Washington 98122*
*(425) 576-0484*

### C. Wise's Testimony Is Not Relevant

Even if Wise's opinions were reliable—they are not—they should be excluded because they will not help the trier of fact understand the evidence or determine a fact in issue. *See* Fed. R. Evid. 702(a). Expert opinion testimony is relevant "if the knowledge underlying it has a valid connection to the pertinent inquiry," *Alaska Rent-A-Car*, 738 F.3d at 969, and is "helpful" to the trier of fact. *Tekoh v. County of Los Angeles*, 75 F. 4th 1264, 1265 (9th Cir. 2023). Such testimony must be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." *Daubert*, 509 U.S. at 595 (quoting Fed. R. Evid. 403); *United States v. Hoac*, 990 F.2d 1099, 1103 (9th Cir. 1993). Wise's testimony is not closely connected to the underlying lawsuit, it addresses issues the average layperson can understand without expert assistance, and it is more likely to confuse rather than help the jury.

First, Wise's opinions lack a valid connection to Diemert's equal protection, Title VII, or WLAD claims or Defendant's affirmative defenses. Wise admits that he offers no opinion on whether Diemert was "the victim of unlawful racial discrimination" or whether he experienced individual racial bias. Ex. F, Wise Dep. Tr. 112:16–21, 114:4–116:20.[2] Wise's report offers no opinions to support Defendant's affirmative defense that its "actions were undertaken for legitimate, nondiscriminatory reasons and no unlawful factors motivated Defendant." Answer, Dkt. 31 at 59. Wise's report also offers no opinions to support Defendant's affirmative defense that "other legitimate factors" motivated Defendant's actions and that Defendant "would have taken the same actions with respect to Plaintiff in the absence of any impermissible motivating factors." *Id*. The pertinent inquiry in this case is whether Diemert was treated differently by his employer because of his race, and whether that race-based differential treatment created a hostile work environment. Wise's conclusions speak to neither of those issues and should be excluded. *See Barabin*, 740 F.3d at 463 (relevancy requires the evidence "logically advance a material aspect of the party's case"), *overruled on other grounds*, *United States v. Bacon*, 979 F.3d 766 (9th Cir. 2020).

---

[2] Nor did Wise review any of the complaints of racial discrimination made by other Human Services Department employees that Defendant was compelled to produce pursuant to the Court's July 9, 2024, Order. Dkt. 52.

Second, Wise opines on concepts that are well within an average juror's understanding. Under Rule 702, expert testimony is helpful to the jury "if it concerns matters beyond the common knowledge of the average layperson and is not misleading." *Moses v. Payne*, 555 F.3d 742, 756 (9th Cir. 2009). The jury does not need an expert witness to explain whether a reasonable person would believe that the RSJI trainings and materials Diemert was exposed to exhibit racial bias or animus—the jury is presumably composed of reasonable people who can evaluate the evidence using their own knowledge and experience. *See Strong v. Valdez Fine Foods*, 724 F.3d 1042, 1046–47 (9th Cir. 2013) ("Specialized or technical knowledge is not required to understand [plaintiff's] straightforward assertions."). In that same vein, the jury does not need an expert witness to explain the true motivations behind Diemert's perceptions and interpretation of RSJI or to interpret his experiences of workplace discrimination and harassment—the jurors will hear from Diemert and his former coworkers and are capable of making those determinations themselves.

Finally, Wise's testimony is more likely to confuse the jury than help it. In particular, Wise twists straightforward concepts that are central to this case into a maze of jargon. For example, Wise testified that he distinguishes "whiteness from the people called white. People called white may find themselves in a—in a system and a society where whiteness has become relevant. And in fact, if it had not become relevant, they wouldn't be called white. But I'm distinguishing that from white people." Ex. F, Wise Dep. Tr. 132:20–133:2. And while the crux of Diemert's case is whether he experienced discrimination on the basis of race, Wise muddies this concept as well:

> So can a white person be the victim of discrimination? Absolutely, and no one's ever denied that to my knowledge. Are they victims of racism at a systemic and structural level? I would argue no. Can they be victims of interpersonal bias? What some may call, and I'm perfectly comfortable racism? They can be, theoretically.

Ex. F, Wise Dep. Tr. 110:22–111:2. Even basic concepts like racism are unrecognizable in Wise's hands:

> [R]acism is a sociological, or epistemological, or philosophical concept. It . . . isn't the same as racial discrimination. Racism isn't illegal. Racial discrimination is. And so, if I'm looking at the material to opine as to whether it's racist or hostile on the basis of race, I'm looking for indicators that don't necessarily speak to the law.

P. Mot. to Exclude - Wise - 11
2:22-cv-01640-JNW

*Pacific Legal Foundation*
*1425 Broadway, #429*
*Seattle, Washington 98122*
*(425) 576-0484*

Ex. F, Wise Dep. Tr. 109:5–12. Wise's philosophical meanderings serve only to confuse the jury and offer no specialized knowledge on the claims at issue in this case—whether Defendant unlawfully discriminated against Diemert because of his race.

## IV.   CONCLUSION

For the foregoing reasons, this Court should exclude the expert report and testimony of Tim Wise and prohibit Wise from offering further opinion testimony in this case.

Pursuant to Local Civil Rule 7(e)(6), the undersigned certify that this motion contains 4,143 words.

DATED:  August 16, 2024.

Respectfully submitted:

PACIFIC LEGAL FOUNDATION

s/ Erin E. Wilcox
ERIN E. WILCOX
California Bar # 337427 *
s/ Andrew R. Quinio
ANDREW R. QUINIO
California Bar # 288101 *
555 Capitol Mall, Suite 1290
Sacramento, California 95814
Telephone: (916) 419-7111
Fax: (916) 419-7747
EWilcox@pacificlegal.org
AQuinio@pacificlegal.org

s/ Laura M. D'Agostino
LAURA M. D'AGOSTINO
Virginia Bar No. 91556 *
s/ Nicholas J. DeBenedetto
NICHOLAS J. DeBENEDETTO
New Jersey Bar No. 382442021 *
3100 Clarendon Blvd., Suite 1000
Arlington, Virginia 22201
Telephone: (202) 888-6881
LDAgostino@pacificlegal.org
NDeBenedetto@pacificlegal.org

P. Mot. to Exclude - Wise - 12
2:22-cv-01640-JNW

Pacific Legal Foundation
1425 Broadway, #429
Seattle, Washington 98122
(425) 576-0484

*s/ Wesley P. Hottot*
WESLEY P. HOTTOT, WSBA # 47539
1425 Broadway, #429
Seattle, Washington 98122
Telephone: (425) 576-0484
Fax: (916) 419-7747
WHottot@pacificlegal.org

*Counsel for Plaintiff*
*\* Pro hac vice*

## CERTIFICATE OF SERVICE

I hereby certify that on Aug. 16, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*s/ Erin E. Wilcox*
ERIN E. WILCOX
California Bar # 337427 *

*Attorney for Plaintiffs*
*\* pro hac vice*

P. Mot. to Exclude - Wise - 13
2:22-cv-01640-JNW

*Pacific Legal Foundation*
*1425 Broadway, #429*
*Seattle, Washington 98122*
*(425) 576-0484*