THE HONORABLE JAMAL WHITEHEAD

1

2

3

4

5

6

7       UNITED STATES DISTRICT COURT
        WESTERN DISTRICT OF WASHINGTON
8                  AT SEATTLE

9   JOSHUA A. DIEMERT, an individual,

10                      Plaintiff,            No. 2:22-CV-01640-JNW

11          v.                               **DEFENDANT'S MOTION FOR
                                             SUMMARY JUDGMENT**
12   THE CITY OF SEATTLE, a municipal
     corporation,                            NOTING DATE:  September 13, 2024
13                                           **Oral Argument Requested**
                        Defendant.
14

15

16

17

18

19

20

21

22

23

24

25

26

27

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

## **TABLE OF CONTENTS**

I.   INTRODUCTION ....................................................................................................... 1

II.  FACTS ......................................................................................................................... 2

    A.   Plaintiff's tenure with the City was devoid of any negative personnel
        actions and ended with his voluntary resignation. ................................... 2

    B.   RSJI is intended to advance equity, and it does not contradict City policy
        prohibiting discrimination based on race. ............................................... 2

    C.   Plaintiff was required to attend three specific RSJI classes, which are not
        derogatory towards white people and are based in social science and
        history. ...................................................................................................... 3

    D.   HSD required employees to complete two RSJI activities per year,
        although it did not penalize employees who did not fulfil the requirement. ........ 5

    E.   Plaintiff asserted his opposition to RSJI in antagonistic communications
        with HR and other City employees; HR tried to address his concerns, but
        Plaintiff was not satisfied. ....................................................................... 6

        1.   The City told Plaintiff he was not required to take any specific
            RSJI classes and would not be penalized for his failure to meet
            RSJI goals. ...................................................................................... 6

        2.   Plaintiff advocated to start his own affinity group that was contrary
            to RSJI values but then abandoned his request. ............................... 8

        3.   Plaintiff engaged in an online dispute with his coworker and sent
            the coworker an offensive email, but faced no discipline. ................ 8

    F.   After Diemert filed an EEOC charge in late 2020, the City investigated,
        but it was unable to substantiate Diemert's allegations of discrimination. .......... 9

    G.   Plaintiff resigned for personal reasons and not because of any
        mistreatment by the City. ........................................................................ 11

    H.   Plaintiff resigned voluntarily because he had already moved to Texas and
        did not wish to return to in-person work. ................................................ 13

III. ARGUMENT .............................................................................................................. 14

    A.   Plaintiff's Equal Protection claim fails because he cannot offer evidence
        sufficient to support a finding of intentional discrimination. ................... 14

    B.   The Court should dismiss Plaintiff's Hostile Work Environment claim. ........... 15

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1.    RSJI trainings and messaging do not constitute harassment. ................. 15

2.    Plaintiff's other allegations of racial comments are insufficient to carry his claim because they are time-barred and in any event are merely offensive utterances. .................................................................. 18

3.    Plaintiff's belief that RSJI materials and coworker comments constituted harassment was not objectively reasonable. ......................... 20

4.    No Racial Harassment was imputed to the City because the City investigated and could not substantiate Plaintiff's claims. ..................... 20

C.    Plaintiff's Disparate Treatment and Retaliation claims fail because he did not experience an adverse action and was not constructively discharged. ......... 21

IV.    CONCLUSION ............................................................................................. 23

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Antonius v. King Cty.*,
  153 Wn.2d 256 (2004) ...........................................................................................18

*Barrett v. Weyerhaeuser Co. Severance Pay Plan*,
  40 Wn. App. 630 (1985) ........................................................................................23

*Blackburn v. State*,
  186 Wn.2d 250 (2016) ......................................................................................15, 19

*Brooks v. City of San Mateo*,
  229 F.3d 917 (9th Cir. 2000) ............................................................................21, 22

*Cornwell v. Electra Cent. Credit Union*,
  439 F.3d 1018 (9th Cir. 2006) ...............................................................................21

*Cox v. Oasis Physical Therapy*,
  153 Wn. App. 176 (2009) ......................................................................................18

*Crownover v. State ex. Rel Dept. of Transportation*,
  165 Wn. App. 131 (2011) ......................................................................................18

*De Piero v. Pa. State Univ. et. al.*,
  No. 23-2281, 2024 WL 128209 (E.D. Pa. Jan. 11, 2024).....................................16

*Far Out Prods., Inc. v. Oskar*,
  247 F.3d 986 (9th Cir. 2001) .................................................................................14

*Fed. Deposit Ins. Corp. v. Henderson*,
  940 F.2d 465 (9th Cir. 1991) .................................................................................14

*Henderson v. Sch. Dist. of Springfield R-12*,
  650 F. Supp. 3d 786 (W.D. Mo. 2023) ..................................................................17

*Honeyfund.com, Inc. v. DeSantis*,
  94 F. 4th 1272 (11th Cir. 2024) ............................................................................16

*Marin v. King County*,
  194 Wn. App. 795 (2016) ......................................................................................21

*Maron v. Legal Aid Soc'y*,
  605 F. Supp. 3d 547 (S.D.N.Y. 2022).............................................................17, 18

Davis Wright Tremaine LLP
L A W   O F F I C E S
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Moranski v. General Motors*,
    433 F.3d 537 (7th Circuit 2005) ..................................................................................22

*Muldrow v. St. Louis*,
    601 U.S. ---, 144 S. Ct. 967 (2024).............................................................................21

*Norgren v. Minnesota Dep't of Hum. Servs.*,
    No. 22-489 ADM/TNL, 2023 WL 35903,
    at *3 (D. Minn. Jan. 4, 2023), *aff'd*, 96 F.4th 1048 (8th Cir. 2024).........................17

*Ohton v. City of Phoenix*,
    No. CV06-360PHX-MHM, 2007 WL 4405006, at *10 (D. Ariz. Dec. 13, 2007) .................14

*Peña v. Clark Cnty.*,
    No. 3:21-cv-5411-DGE, 2023 WL 3160157 (W.D. Wash. Apr. 28, 2023)............................15

*Peters v. Lieuallen*,
    746 F.2d 1390 (9th Cir.1984) .....................................................................................14

*Phillips v. Starbucks Corp.*,
    624 F. Supp. 3d 530 (D.N.J. 2022) .............................................................................18

*Ray v. Henderson*,
    217 F.3d 1234 (9th Cir. 2000) ....................................................................................22

*Reynaga v. Roseburg Forest Products*,
    847 F.3d 678 (9th Cir. 2017) ................................................................................19, 20

*Sanchez v. City of Santa Ana*,
    936 F.2d 1027 (9th Cir.1990) .....................................................................................19

*Shannon v. Cherry Creek Sch. Dist.*,
    No. 20-cv-3469-WJM-SKC, 2022 WL 4364151 (D. Colo. Sept. 21, 2022) ...........................17

*Silbaugh v. Buttigieg*,
    No. C17-1759RSM, 2021 WL 3565431 (W.D. Wash. Aug. 12, 2021)..................................21

*Sischo-Nownejad v. Merced Cmty. Coll. Dist.*,
    934 F.2d 1104 (9th Cir. 1991), *superseded by statute on other grounds* ...............................14

*Sneed v. Barna*,
    80 Wn. App. 843 (1996) .............................................................................................23

*State of Washington v. Horning Bros., LLC*,
    339 F. Supp. 3d 1106 (E.D. Wash. 2018) .................................................................22

*Townsend v. Walla Walla Sch. Dist.*,
    147 Wn. App. 620 (2008) ...........................................................................................23

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - iv
(Case 2:22-CV-01640-JNW)
4869-4667-2058v.5 0002348-000031

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

*Vavra v. Honeywell Int'l, Inc.*,
    106 F.4th 702 (7th Cir. 2024), 2024 WL 645993 ................................................16

*Vitt v. City of Cincinnati*,
    250 F. Supp. 2d 885 (S.D. Ohio 2002), aff'd, 97 F. App'x 634 (6th Cir. 2004) ...............19, 21

*Young v. Colorado Department of Corrections*,
    No. 22-cv-00145-NYW-KLM, 2023 WL 1437894 (D. Colo. Feb. 1, 2023).........................16

**Statutes**

42 U.S.C. § 1981 ................................................................................14, 19

42 U.S.C. § 1983 ........................................................................................14

**Other Authorities**

EEOC, Burrows Statement on Supreme Court Ruling on College Affirmative Action Programs
    (June 29, 2023),
    https://www.eeoc.gov/newsroom/statement-eeoc-chair-charlotte-burrows-supreme-court-
    ruling-college-affirmative-action ................................................................16

Federal Rule of Civil Procedure 12 ........................................................................16

Federal Rule of Civil Procedure 56(a) ....................................................................14

https://www.racepowerofanillusion.org/..................................................................4

.

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - v
(Case 2:22-CV-01640-JNW)
4869-4667-2058v.5 0002348-000031

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

## I.    INTRODUCTION

The City of Seattle's Race and Social Justice Initiative ("RSJI") is intended to eliminate systemic barriers to equal opportunity, in order to create equitable outcomes for all.  The RJSI has at times required trainings, which educate employees on institutional racism utilizing mainstream pedagogy supported by social science and history.  Beyond those trainings, the City also required employees to participate in two RSJI activities of their choosing per year.  Plaintiff Joshua Diemert attended the required trainings and disagreed with them.  He then refused to take part in additional RSJI activities.  The City never required Plaintiff to attend any specific trainings after he complained, and when he failed to meet the minimum RSJI commitment, it did not penalize him.

In fact, the City never penalized Plaintiff at all, either for his objections to RSJI, or for his increasingly aggressive and inappropriate attacks on coworkers.  Nor did it turn a blind eye to any alleged harassment or mistreatment of Plaintiff based on his race.  On the contrary, the City made allowances for, responded to, investigated the concerns of, and generally supported and even protected Plaintiff.  When Plaintiff nevertheless chose to resign (more than two years after his last required RSJI training), he did so voluntarily, and not because of any mistreatment by the City.

The City's RSJI work is important.  Equally important is the City's commitment to prohibiting workplace discrimination of all kinds, including against white employees.  The undisputed facts show the City adhered to both principles here.  Plaintiff may not have agreed with the teachings of the RSJI, and he is entitled to his opinions.  The City did not, however, in any way mistreat him, and it should not be required to spend additional taxpayer money to defend against his baseless claims.  Because Plaintiff's causes of action are factually and legally deficient, the City respectfully requests that the Court dismiss all of his claims with prejudice.

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 1
(Case 2:22-CV-01640-JNW)
4869-4667-2058v.5 0002348-000031

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

## II.    FACTS

### A.    Plaintiff's tenure with the City was devoid of any negative personnel actions and ended with his voluntary resignation.

Plaintiff began working at the City in January 2013 as a Program Intake Representative in the Utility Discount Program in the Human Services Department ("HSD").  Declaration of Ryan Groce ("Groce Decl."), ¶3.  He remained primarily in this role throughout his employment.  *Id.*[1] He applied for another position once, in 2017, for a role in the Human Resources Department, and he was not selected because he was not qualified.  *Id.*, ¶4.  Plaintiff received satisfactory performance evaluations every year of his employment.  *Id.*, ¶5.  The City never disciplined him or placed him on a performance improvement plan.  *Id.*; Declaration of Victoria Slade ("Slade Decl."), ¶2, Ex. A ("Plaintiff Dep.") at 89:7-25.  The City also never transferred him, reduced his pay, or materially altered his duties.  Groce Decl., ¶5.  His employment ended solely because he voluntary resigned on September 7, 2021.  *Id.*

### B.    RSJI is intended to advance equity, and it does not contradict City policy prohibiting discrimination based on race.

RSJI is a citywide effort to "end institutionalized racism and race-based disparities in City government."  Dkt. 11-9 at 3.  While RSJI is externally focused on advancing equity in City programs, services, and policies, the internal components of RSJI are intended to teach employees to identify and interrupt bias within existing structures so as create an environment that is fair and inclusive for all employees.  Dkt. 11-7; Dkt. 11-12 at 34 ("Racial equity is not just about better outcomes for people of color.  It's about a world in which ***we all get to be whole and valued*** . . . .") (emphasis added).  The goal of RSJI is to "to create a level playing field for all."  Slade Decl., ¶4, Ex C ("Sharkey Dep.") at 20:3-20.

While race is a focal point, the RSJI looks across all identities, not just race, and it works to eliminate disparities based upon ability, status, gender, and other characteristics.  Sharkey

---

[1] Diemert briefly held a lead position in 2016 and performed out of class work for a period in 2017.  Groce Decl., ¶1.  Any allegations related to either role are barred by the statute of limitations. Dkt. 28.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Dep. at 21:22-22:1, 68:22-69:1.  RSJI does not involve quotas, or setting demographic goals for employees.  *Id.* at 61:9-13.  Nor does RSJI single out white employees for special required training or activities.  Plaintiff Dep. Vol 1 at 228:23-229:12.  Although the City has had offerings that were intended for white people, such as affinity groups or certain trainings, none have been mandatory.  Sharkey Dep. at 72:6-17, 106:16-107:3.[2]  And affinity groups (voluntary racially aligned interest groups, also known as caucuses) were open to all and all worked with the same goal of eliminating institutional racism.  Sharkey Dep. at 70:10-72:5.  During his employment, Plaintiff was invited to attend white caucus events, but he was never required to do so.  Plaintiff Dep. Vol 1 at 107:22-108:1.  He also does not allege that the City ever prevented him from attending a training or event that was focused on employees of color.

RSJI does not in any way promote or condone discrimination against white people. Sharkey Dep. at 135:19-136:11.  On the contrary, the City's policies prohibit race discrimination, including discrimination against white employees.  Slade Decl., ¶5, Ex D .  The City takes complaints of discrimination against white employees seriously, to ensure no employee is mistreated based upon a protected class.  Slade Decl., ¶6, Ex. E ("McLellan Individual Dep.") at 35:9-17 (leading with race means ensuring people have equal access to HR services).  To reinforce its prohibition against discrimination, the City requires employees to take regular trainings on anti-discrimination and anti-harassment.  Groce Decl., ¶6; Ex. A (Plaintiff's training history, reflecting his attendance at these classes in 2016 and 2018).

### C.  Plaintiff was required to attend three specific RSJI classes, which are not derogatory towards white people and are based in social science and history.

The City's offerings for employee RSJI trainings have changed over time as the program has evolved.  Sharkey Dep. at 173:3-25; Slade Decl., ¶7, Ex. F ("McLellan 30(b)(6) Dep.") at 71:9-72:15.  Diemert's training records reflect that he attended three required RSJI classes: Race, The Power of an Illusion ("RPOI"), on 3/20/15; Equity Lens: Why We Lead With Race, on

---

[2] Plaintiff admits that he did not attempt to attend either race-separated training, although he told his union representative he wanted to attend the training for people of color as a form of protest, not because he was interested in the material. Slade Decl., ¶3, Ex. B ("Plaintiff Dep. Vol 2") at 408:8-410:9.

4/26/17; and Undoing Institutionalized Racism, presented by the People's Institute for Survival and Beyond, on 11/19/19.  Groce Decl., Ex. A.

These RSJI trainings are not derogatory towards white people.  RPOI is a documentary series created by California Newsreel and the University of California, with accompanying facilitation.  *See* https://www.racepowerofanillusion.org/.  RPOI is "one of the most widely used documentaries ever in formal and non-formal education in the US," and has been used by "millions of people" as a means of furthering racial understanding.  *Id.*  RPOI explains the origin of the modern concept of race, including how ideas of race have evolved over the history and development of the United States.  Groce Decl., ¶8, Ex. B.  One of the primary messages of RPOI is that race is not a biological fact, but instead a social construct that nevertheless has a continuing impact through institutions and systems in the United States.  *Id.*  RPOI repeatedly conveys the message that the concepts it teaches, including white privilege and white supremacy culture, are inherent in structures and not the result of modern individual actors.  *Id.*, ¶9, Ex. C at 12 ("***None of asked for this.  None of us are responsible for the past***; but all of us are responsible for the present and to some extent, the future.") (emphasis added).  RPOI also reflects on how numerous identities—not just whiteness—can confer unearned privilege.  *Id.*, Ex. B at 26.

Racial Equity Lens: Why We Lead with Race teaches that the goal of RSJI is to eliminate racial disparities and achieve racial equity.  *Id.*, Ex D.  This includes a discussion about "how white supremacy culture affects us all," and why "leading with a racial equity lens is the strategy to create equity for all."  *Id.* at 2, 4 (emphasis in original).  This training also explains various forms of oppression and privilege, emphasizing that there are numerous power systems in our society, of which race is one.  *Id.* at 8-9.  This training focuses on educating attendees about systemic inequities and how they impact outcomes.  *See id.* at 11-13 (discussing data around disparities in educational attainment and social mobility by race), 14 (discussing racial wealth gap).  Throughout the training, the messaging is clear that the end goal is to eliminate disparities and create equity, not to subjugate white people.  *See id.* at 15 ("Racial equity is not just about

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 4
(Case 2:22-CV-01640-JNW)
4869-4667-2058v.5 0002348-000031

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

better outcomes for people of color. ***It's about a world in which we all get to be whole and valued*** . . . .") (emphasis added). [3]

The third official RSJI training that Plaintiff attended was conducted by a third party, the People's Institute of Survival and Beyond ("PISAB"). PISAB has presented this training for 40 years, in dozens of states, and with hundreds of public and private sector institutions. Slade Decl., ¶8, Ex. G ("Wise Report") at 11. PISAB is among the more respected and commonly employed training organizations in the United States. *Id.* The PISAB trainings provide similar content, including emphasizing that systems and structures that developed over the history of the United States have created disparate outcomes based on race. Groce Decl., Ex. E ("Racism has distorted, suppressed and denied the histories of people of color ***and white people as well***.") (emphasis added).

The materials the City used in these trainings and across the RSJI are based on well-established analytical frameworks and social science literature, and mainstream anti-bias training practices. As nationally recognized anti-racism trainer and expert Tim Wise observed, "[RSJI materials] are well within the respected, and scholarly frameworks established by those who study racial inequality, and they are supported by the relevant social science literature on methods for effectively promoting greater diversity, equity, and inclusion in institutional spaces." Wise Report at 26. *See also id.* at 31 ("[T]he methodologies and materials used by the RSJI are in keeping with some of the most commonly deployed approaches to this work, nationwide, for several decades, including discussions of white privilege, internalized superiority/inferiority, implicit bias, and white supremacy culture.").

> **D.    HSD required employees to complete two RSJI activities per year, although it did not penalize employees who did not fulfil the requirement.**

Outside of the three required trainings referenced above, employees in HSD were required to complete two RSJI activities per year. Groce Decl., ¶7. To do so, employees could

---

[3] See also Dkt. 11-7 (the goal of RSJI is to "create a relational culture that is fertile soil for our collective care, health, wellbeing, creativity, power, and collaboration.").

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 5
(Case 2:22-CV-01640-JNW)
4869-4667-2058v.5 0002348-000031

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

take trainings or attend events pertaining to race **or** social justice.  *Id.*  These did not need to address race and instead could relate to gender, poverty, Indian affairs, LGBTQ issues, or other social justice subjects.  *Id.*  If an employee was not interested in the trainings the City offered, he could identify outside trainings or activities and submit them for approval.  *Id.*; *see also* Sharkey Dep. at 24:14-25:22; McLellan 30(b)(6) Dep. at 79:19-81:3.

The RSJI requirement is aspirational, not punitive:  as the HR Director for HSD testified, "If an employee does not attend the two required trainings, or events, or isn't working on a work group to advance racial equity, or does no learning about racial equity within that year, ***they're still able to get a meets expectations or fully performing rating.  So there isn't any adverse or negative impact to the employee for [not taking] . . . the two required or [attending] two events to advance your learning in the year***."  McLellan 30(b)(6) Dep. at 97:19-98:3 (emphasis added).  This proved true for Diemert.  Despite not meeting the RSJI requirement in 2019, he received a fully performing rating on his review.  Groce Decl., ¶12, Ex. F; Plaintiff Dep. Vol 1 at 272:12-273:5.

### E.   Plaintiff asserted his opposition to RSJI in antagonistic communications with HR and other City employees; HR tried to address his concerns, but Plaintiff was not satisfied.

Plaintiff is opposed to critical race theory ("CRT") and embraces a "color-blind" philosophy.  Plaintiff Dep. Vol 2 at 356:14-18; Plaintiff Dep. Vol 1 at 199:21-200:12.  He objected that RSJI's recognition of race was discriminatory and refused to participate in RSJI.  The City attempted to but could not resolve his concerns.

### 1.   The City told Plaintiff he was not required to take any specific RSJI classes and would not be penalized for his failure to meet RSJI goals.

On November 14, 2018, Plaintiff reached out HSD HR to ask about available RSJI classes.  Groce Decl., ¶13, Ex. G.  He wrote, "there are not a lot of classes offered, some discriminate based on your cultural background and the ones offered I have already taken."  *Id.*  He was referred to another HR representative, who attempted to assist him in identifying training classes.  *Id.*  Plaintiff appeared to drop the issue at that time.  *Id.* (noting that Plaintiff did not

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 6
(Case 2:22-CV-01640-JNW)
4869-4667-2058v.5 0002348-000031

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

meet the requirement in 2019, and the City waived the requirement in 2020 due to COVID).

On January 15, 2021, Diemert again reached out to HSD HR to ask about required RSJI trainings. *Id.*, ¶14, Ex H.  The City responded, "While HSD does not require any specific trainings each year for staff in the area of RSJI, we do require that staff participate in at least 2 events each year that fall into the area of RSJI to facilitate growth as an organization in this area."  *Id.*  Plaintiff reiterated the same question to a different HSD HR employee, Ryan Groce, on May 18, 2021, and he requested to remove the RSJI component from his evaluation.  *Id.*, Ex. I.  Groce responded, "we have not recently had any specific mandatory trainings.  Only a requirement that staff identify areas within RSJI they want to explore and participate in those trainings."  *Id.*  Groce advised Plaintiff that failure to address RSJI trainings in his mid-year review would not be considered in the review process.  *Id.*

Plaintiff persisted, stating he wanted any reference to RSJI removed from his review and also arguing that City meetings and other gatherings had RSJI embedded in them.  *Id.*  Groce responded that leadership was looking into revising RSJI requirements but that in the meantime, Groce would document for Plaintiff that he was excused from the requirement.  *Id.*  Regarding the meetings with RSJI content embedded, Groce indicated Plaintiff may be required to attend meetings with RSJI components if appropriate for his role, but "[w]hether or not you participate in discussions during these sessions, or apply what is taught, would be based on your ability or comfort level."  *Id.*

Despite this reassurance, Plaintiff continued to challenge the City.  He asserted his belief that all RSJI classes are inherently racist, and he flatly refused to take any more classes.  *Id.*  ("I will not take any RSJ trainings or take part in any activity relating to the ideology that RSJ is founded on.")  The City took no action against Plaintiff in response to his decision to forego future RSJI involvement.  *Id.*;  Plaintiff Dep. Vol 1 at 265:5-267:21.

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 7
(Case 2:22-CV-01640-JNW)
4869-4667-2058v.5 0002348-000031

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

2.     **Plaintiff advocated to start his own affinity group that was contrary to RSJI values but then abandoned his request.**

Around the same time that he was arguing that all of RSJI was racist and asserting that he would refuse to participate in it, Plaintiff also requested to start his own affinity group, which he stated would be in favor of colorblind values. Plaintiff Dep. Vol 1 at 275:2-276:1. Previously, he had declined to participate in the white caucus, based on his belief that the contents would be offensive. Plaintiff Dep. Vol 1 at 108:19-24; 129:20-24. Indeed, when a white coworker invited him to a caucus event, Plaintiff threatened to report her to the EEOC for discrimination. Slade Decl., ¶9, Ex. H. Groce received Plaintiff's request and researched the procedure for starting an affinity group. Groce Decl., ¶15, Ex. J. Groce learned that the groups were subject to approval by the Change Team, a group of RSJI leaders within each department. *Id.* He advised Plaintiff of the process, and Plaintiff did not follow up, instead objecting to the Change Team as having "an anti-Capitalist, anti-Christian and anti-western liberal values ideology[.]" *Id.*; *see also* Plaintiff Dep. Vol 1 at 276:10-277:18.

3.     **Plaintiff engaged in an online dispute with his coworker and sent the coworker an offensive email, but faced no discipline.**

Plaintiff also aggressively attacked his coworkers. On June 23, 2021, an employee in the IT Department, Ed Odom, posted an article about the Tulsa Race Massacre and efforts to ban CRT on a City SharePoint site. Slade Decl., ¶10, Ex. I. Plaintiff responded to the post, claiming it was racist, and stating "[The] Republican party was created to free the slaves from the Democrats." *Id.* When a coworker replied that Plaintiff's comment was ignorant, Plaintiff called her a bigot and said, "I am sorry if my rejection of racial stereotypes upsets you. I am against people attempting to racially scapegoat others because of their skin color which is why I stand against CRT." *Id.* Odom attempted to engage Plaintiff in a dialogue via email. *Id.*, ¶11, Ex. J. He wrote, "I chose to respond by email because I wouldn't want this content to be misconstrued and seen as demeaning. I appreciate and invite tough conversations and value the opinion of others. . . . ***I get it-it can seem as if it was a personal attack directed against all white people, but it is not.*** It is about accurately telling the stories that have been buried for years." *Id.*

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 8
(Case 2:22-CV-01640-JNW)
4869-4667-2058v.5 0002348-000031

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

Plaintiff responded to Odom with a hateful diatribe, asking him if he is "a psychic," accusing him of spreading "political disinformation" and "public support of racism," and comparing discussing CRT to teaching Mein Kampf in the workplace. *Id.*  Plaintiff has testified that it was offensive to him to teach that white people had been responsible for Tulsa massacre, because doing so stereotypes white people based upon their race.  Plaintiff Dep. Vol 2 at 398:16-399:21.

Following this exchange, Odom forwarded the message to HSD HR Director McLellan and also complained that he felt "personally attacked" by Plaintiff's response.  Slade Decl., Ex. J; McLellan Individual Dep. at 31:6-21.  McLellan, mindful of Plaintiff's polarizing views, took no action against Plaintiff.  *Id.* at 46:10-49:17.  She also protected him when other employees raised concerns that Plaintiff was posting City RSJI materials on his social media account.  *Id.* at 45:20-49:17 ("I wanted to do everything in my power to ensure that this did not go out and hurt Josh's reputation in any way, shape, or form. . . . I wanted to ensure that there was no negative impact on Josh for simply posting on his personal social media account.").

### F.    After Diemert filed an EEOC charge in late 2020, the City investigated, but it was unable to substantiate Diemert's allegations of discrimination.

On December 23, 2020, Plaintiff filed a Charge of Discrimination with the EEOC.  Groce Decl., ¶16.  In response to the Charge, the City's Human Resources Investigation Unit ("HRIU") commenced an investigation.  *Id.*  Brandon Kuykendall, a licensed attorney working as an investigator with HRIU, was assigned the investigation.  Slade Decl., ¶12, Ex. K ("Kukyendall Dep.") at 14:4-12.  After Plaintiff complained that Kuykendall was biased, the City designated a different investigator, Christy Kuna, to handle the allegations related to RSJI trainings.  Kuykendall Dep. at 14:4-12, 25:8-23.

Plaintiff did not cooperate with the investigation.  Kuykendall tried multiple times to get more information from him about his allegations, but Plaintiff said Kuykendall's involvement and communications were "triggering" for him.  *Id.* at 53:16-54:2, 59:3-12 (noting he wrote "reporter not cooperating" in the file), 62:1-8 (Kuykendall tried to communicate with Plaintiff on

multiple occasions, including assuring him that he would conduct an unbiased investigation; but was not able to get additional information).  Plaintiff admitted he intentionally blocked the investigation: in a March 2021 private message to conservative politician and activist Chris Rufo (with whom Plaintiff had collaborated regarding his prospective claims against the City since 2020 and to whom he had provided copies of RSJI materials during his employment), Plaintiff wrote, "***I purposely did not give the City much in their internal investigation***[.]"  Slade Decl., ¶13, Ex. L at 8; Plaintiff Dep. Vol 2 at 507:15-513:14.

What Plaintiff did communicate to the City was that his primary concern was the RSJI trainings, not the conduct of individuals he had alleged made racial comments to him. Kuykendall Dep. at 73:10-74:12.  Kuykendall nevertheless investigated the comments Diemert cited, and he could not determine that any constituted racial harassment.  Groce Decl., ¶17, Ex. K (Kuykendall Report).  For example, regarding Plaintiff's claim that Javier Pulido asked Plaintiff what he believed he could offer the department "as a straight white man," Kuykendall determined this was a "one-time utterance by a manager that happened two years ago, that the issue was resolved when the manager apologized to [Diemert's] satisfaction after, and that the two were now on good terms."  *Id.* at 4*;*Plaintiff Dep. Vol 1 at 166:20-167:21 (Pulido never made another offensive comment).  Regarding the allegation that another employee denied a Utility Discount Program applicant based on race, Kuykendall found Plaintiff  "reported the matter to management, and the customer's benefit was ultimately approved."  Kuykendall Report at 4.  *See also* Plaintiff Dep. Vol 1 at 169:24-170:20, 172:4-20 (admitting this only happened once, and the issue was corrected).  Kuykendall also noted that this, and the alleged comment by Plaintiff's manager that it was "impossible to discriminate against a white person" would have been sometime before 2017.  *Id.*

Regarding the allegations that RSJI trainings were discriminatory, Kuna's report reflects that she reviewed numerous training materials, including from sessions Plaintiff had not personally attended, and she interviewed trainers.  Groce Decl., ¶17, Ex. L (Kuna report).  She could not substantiate the allegations that trainers had made the statements Plaintiff attributed to

them, including the alleged statement that white people should give up opportunities or resources, or that they should give up friendship, safety, or security. *Id.* The trainers also confirmed that there had never been a focus on who was allowed to talk based on skin color. *Id.* (also regarding allegation that white people were required to be uncomfortable, noting that the White Supremacist Culture Training handout explained that "everyone is encouraged to welcome discomfort" and that it "did not target white people").

Kuykendall advised Plaintiff on August 27, 2021, that HRIU had not substantiated his claims of discrimination, and he provided Plaintiff copies of both investigative reports. Slade Decl., ¶22, Ex. U. He wrote, "If you would like to speak further about our report or any other questions or concerns you may have, please let me know. . . ." *Id.* Plaintiff resigned less than two weeks later.

## G.    Plaintiff resigned for personal reasons and not because of any mistreatment by the City.

After Plaintiff submitted his EEOC charge in late 2020, the City took no action against him. As discussed above, the City investigated his complaints, did not require him to attend any additional RSJI trainings, and did not discipline him despite coworker complaints. Plaintiff has nevertheless concocted an array of allegations to support an alleged retaliation claim. None have merit.

Plaintiff claims he had technical issues that prevented him from working and that the City failed to assist him in retaliation for his complaint. In reality, Plaintiff's supervisor and manager both assisted him, in addition to providing other options so he could work while having technical issues. Slade Decl., ¶14, Ex. M at 2-4; Plaintiff Dep. Vol 1 at 323:24-324:24. Plaintiff contends his supervisor Chaney Kilpatrick Goodwill cancelled one-on-one meetings with him; however, Goodwill denies that she cancelled more meetings with Plaintiff than with any other employee. Slade Decl., ¶15, Ex. N ("Goodwill Dep.") at 21:14-22:21. And Plaintiff admits he has no knowledge of whether she cancelled meetings with others. Plaintiff Dep. Vol 1 at 315:17-23. Plaintiff claims Goodwill singled him out by asking another employee how many applications

1   Plaintiff had in his office drawer.  This is false—Plaintiff had raised concerns about delays in

2   processing applications, and Goodwill was attempting to help him.  Slade Decl., ¶16-17, Ex. O

3   and P; Plaintiff Dep. Vol 1 at 317:6-322:21.  *See also* Goodwill Dep. at 40:11-42:23, 47:10-48:5.

4   Meanwhile, Plaintiff admits he has no personal knowledge of whether Goodwill reviewed other

5   employee's applications.  Plaintiff Dep. Vol 1 at 322:8-21.

6        Plaintiff alleges his coworker Shamsu Said discriminated against him.  Plaintiff made a

7   complaint in late 2019 that Said had improperly approved a family member for the Utility

8   Discount Program.  Groce Decl. at ¶18.  He claims Said thereafter confronted him in February

9   2020 and accused him of having white privilege and being racist. Slade Decl., ¶18, Ex. Q.

10  Plaintiff complained, and the City immediately separated him from Said.  McLellan Individual

11  Dep. at 66:20-67:12; *Id.* at 82:9-83:4 (Plaintiff's desk was mistakenly moved first instead of

12  Said's, but this was corrected before Plaintiff reported to work).  The City also submitted the

13  complaint to the Ethics and Elections Committee for investigation.  *Id.* at 69:6-10.  Plaintiff

14  cannot recall any negative or race-based interactions with Said after this interaction.   Plaintiff

15  Dep. Vol 1 at 300:14-301:18.[4]

16       Plaintiff also claims the City violated his FMLA rights.  While there was a paperwork

17  error that resulted in his partial leave being briefly mischaracterized, this technical violation did

18  not cause Plaintiff to lose any FMLA benefits or pay.  Groce Decl., ¶19; *see also* Plaintiff Dep.

19  Vol 1 at 325:4-326:20.  Moreover, when the error was uncovered, the City retroactively

20  approved and reclassified the leave.  Groce Decl., ¶19, Ex. M.  In short, Plaintiff was not

21  harmed.  Plaintiff Dep. Vol. 1 at 325:4-326:20.  Nor does he have evidence that the individual

22  who processed his application harbored retaliatory animus against him or even that she was

23  aware of his complaint.  *Id.* at 326:21-327:17.

24

25  _____

    [4] Nevertheless, on August 31, 2021, Plaintiff sent an eleven-page screed to his HSD workgroup, reiterating and
26  expanding upon the concerns he had previously reported regarding Said.  Groce Decl., ¶20, Ex. N.  The email
    revealed Plaintiff had conducted a vigilante investigation into Said, searching property and business records,
    Employment Security Department data, and PPP loan information, and even posing as a customer of Said's family
27  member's business.  *Id.*  Although this was not an appropriate manner of raising ethics concerns, HR shared the
    message with the Ethics and Elections Commission for further investigation.  *Id.*

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 12       Davis Wright Tremaine LLP
(Case 2:22-CV-01640-JNW)                                      LAW OFFICES
4869-4667-2058v.5 0002348-000031                       920 Fifth Avenue, Suite 3300
                                                          Seattle, WA 98104-1610
                                                    206.622.3150 main · 206.757.7700 fax

Finally, Plaintiff contends the City maintained a confidential folder on him.  But this was simply an investigation file, maintained confidentially when an employee has made a complaint, as Plaintiff had.  McLellan Individual Dep. at 51:19-52:12.

### H.   Plaintiff resigned voluntarily because he had already moved to Texas and did not wish to return to in-person work.

Plaintiff resigned on September 7, 2021.  Groce Decl.,¶22.  Plaintiff had at that time been working remotely due to the COVID-19 pandemic, but he was on the verge of being required to return to work in person unless he had an approved alternative work arrangement or disability accommodation.  *Id.*  Plaintiff had an accommodation request pending, meaning he had not been denied the ability to telework, although he had been informed that his position was not one that could be performed 100% remotely on a permanent basis.  *Id.*.; Slade Decl., ¶19, Ex. R.; Plaintiff Dep. Vol 1 at 327:18-25.

Plaintiff did not wish to return to work in-person because he was not living in Seattle or even Washington State.  Over five months earlier, Plaintiff had sold his house in the Seattle area and moved with his wife to Texas.  Although Plaintiff claims he was traveling back and forth to Seattle, he admits he resided "a majority of the time" in Texas.  Plaintiff Dep. Vol 1 at 68:17-70:17.  Plaintiff has also made numerous statements that conflict with the notion that he still lived in Seattle.  For example, on July 8, 2021, Plaintiff responded to a tweet that was critical of schools teaching CRT stating, "My children had the same ideology pushed on them in the public schools [in Seattle].  *We moved to get away from it*."  Slade Decl., ¶20, Ex. S. *See also* Slade Decl., ¶21, Ex. T at 2 (telling Rufo in July 2020 that he was planning to sell his house in August or September of that year and would only continue working for the City if he could continue to telecommute); *see also* Plaintiff Dep. Vol 2 at 490:2- 491:4 (confirming he searched for materials regarding "whiteness" on Seattle systems in 2020 to share with Rufo, based on his expectation of leaving his position that August).  The City was not aware that Plaintiff was living in Texas and would not have permitted him to work remotely from another state.  Groce Decl., ¶23.

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

In his resignation email, Plaintiff made additional discrimination allegations. *Id.*, ¶21, Ex. O. Consistent with its practice, the City notified Plaintiff it had forwarded the concern to HRIU for investigation. *Id.* Plaintiff responded that he did not wish to proceed with another investigation. *Id.*

## III.   ARGUMENT

FRCP 56(a) entitles a party to summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A factual dispute is genuine "only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001). In this case, there is no genuine dispute as to any material fact. The City is entitled to summary judgment on all of Plaintiff's claims.

### A.   Plaintiff's Equal Protection claim fails because he cannot offer evidence sufficient to support a finding of intentional discrimination.

Section 1983 authorizes civil actions for the "deprivation of any rights ... secured by the Constitution and laws" against a party acting under color of state law. 42 U.S.C. § 1983. In order to prove discrimination in violation of § 1983, a plaintiff must demonstrate that the defendant acted with the intent to discriminate. *Sischo-Nownejad v. Merced Cmty. Coll. Dist.*, 934 F.2d 1104, 1112–13 (9th Cir. 1991), *superseded by statute on other grounds.* In an employment discrimination matter, the burden of proof for an Equal Protection claim mirrors that of Title VII. *Peters v. Lieuallen,* 746 F.2d 1390, 1393 (9th Cir.1984) ("Since Peters has failed to demonstrate intentional discrimination on the part of the defendants, his race discrimination claims under 42 U.S.C. §§ 1981 and 1983 must also fail."); *Fed. Deposit Ins. Corp. v. Henderson*, 940 F.2d 465, 472 n. 14 (9th Cir. 1991) ("Our cases make clear . . . that the status of the § 1983 equal protection claim generally depends on the outcome of the Title VII analysis."). *See also Ohton v. City of Phoenix*, No. CV06-360PHX-MHM, 2007 WL 4405006, at *10 (D. Ariz. Dec. 13, 2007) ("Analysis of a discrimination claim under § 1983 follows the same legal principles as those applicable in a Title VII discrimination case) (citing *Stones v. Los*

1  *Angeles Community College Dist.*, 796 F.2d 270 (9th Cir.1986)).

2      Here, Plaintiff alleges the RSJI, and particularly affinity groups and trainings that were

3  separated by race, violated the Equal Protection Clause.  He cannot create an issue of fact on this

4  claim.  First, affinity groups were open to anyone who wished to attend, and there was no penalty

5  for failure to participate.  The same applies to the one optional training that was offered in two

6  sections, for white employees and for employees of color—Plaintiff admits he did not take or

7  attempt to attend either session.  Every other aspect of the RSJI was directed equally to all

8  employees.  Second, there is no evidence of discriminatory intent.  On the contrary, the

9  undisputed evidence is that the motive of RSJI programming including affinity groups and all

10  trainings, was to advance equity **for all**.  *See* Sharkey Dep. at 70:10-72:5; 106:16-107:3

11  (caucuses are open to anyone).  *See also* Wise Report at 16 ("it is often helpful for employees

12  with similar backgrounds (race, gender, sexuality, etc.) to occasionally meet to discuss the

13  challenges and experiences that they as group members are having at work  . . .").  Because there

14  is no evidence of intentional discrimination, and because Plaintiff's Title VII claims are deficient

15  as discussed herein, the Court should dismiss his Equal Protection claim.

16      **B.      The Court should dismiss Plaintiff's Hostile Work Environment claim.**

17      To defeat summary  judgment, Plaintiff must "raise a triable issue of fact as to whether

18  (1) [he was] 'subjected to verbal or physical conduct' because of [his] race, (2) 'the conduct was

19  unwelcome,' and (3) 'the conduct was sufficiently severe or pervasive to alter the conditions of

20  [his] employment and create an abusive work environment.'"  *Peña v. Clark Cnty.*, No. 3:21-cv-

21  5411-DGE, 2023 WL 3160157, *11 (W.D. Wash. Apr. 28, 2023) (citing *Manatt v. Bank of Am.,*

22  *NA*, 339 F.3d 792, 798 (9th Cir. 2003); *Blackburn v. State*, 186 Wn.2d 250, 260(2016).  With

23  regard to coworker harassment, he must also show that the City, "once apprised of [the

24  situation], failed to take adequate remedial and disciplinary action[.]"  *Peña* at *11.

25      **1.      RSJI trainings and messaging do not constitute harassment.**

26      Trainings about institutional racism like those Plaintiff attended while with the City are

27  widely recognized as important tools for creating equitable workplaces.  As the EEOC has noted,

"[Diversity] trainings can serve as vital measures to prevent or remediate workplace discrimination."  Brief for EEOC as Amici Curiae Supporting Neither Party, *Vavra v. Honeywell Int'l, Inc.*, 106 F.4th 702 (7th Cir. 2024) (No. 23-2823), 2024 WL 645993, at *17 (identifying orders and consent decrees requiring employers to adopt training programs to redress discrimination, including implicit bias training).  "Training on concepts such as 'white privilege,' 'white fragility,' implicit bias, or critical race theory can contribute positively to nuanced, important conversations about how to form a healthy and inclusive working environment."  *De Piero v. Pa. State Univ. et. al.*, No. 23-2281, 2024 WL 128209, at *8 (E.D. Pa. Jan. 11, 2024) (although denying Rule 12 motion, noting that "[d]iscussing in an educational environment the influence of racism on our society does not necessarily violate federal law.").  *See also* Press Release, Charlotte A. Burrows, Chair, EEOC, Burrows Statement on Supreme Court Ruling on College Affirmative Action Programs (June 29, 2023), https://www.eeoc.gov/newsroom/statement-eeoc-chair-charlotte-burrows-supreme-court-ruling-college-affirmative-action.  ("The [Students for Fair Admissions decision ending affirmative action]. . . does not address employer efforts to foster diverse and inclusive workforces or to engage the talents of all qualified workers, regardless of their background.  It remains lawful for employers to implement DEI and accessibility programs that seek to ensure workers of all backgrounds are afforded equal opportunity in the workplace."); *Honeyfund.com, Inc. v. DeSantis*, 94 F. 4th 1272, 1281 (11th Cir. 2024), (rejecting state anti-WOKE law because teaching concepts based in CRT does not constitute discrimination *per se*).

The fact that Plaintiff took issue with the well-accepted principles taught in the RSJI does not give rise to a hostile work environment claim.  In *Young v. Colorado Department of Corrections*, the plaintiff argued a glossary of terms that defined concepts such as "BIPOC," "White Fragility," "Race," and "White Exceptionalism" promoted racist principles.  No. 22-cv-00145-NYW-KLM,  2023 WL 1437894, at *1 (D. Colo. Feb. 1, 2023)   The district court dismissed the matter on the pleadings, which was affirmed on appeal, on the basis that the allegations did not rise to the level of a hostile work environment.  Numerous courts have

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 16
(Case 2:22-CV-01640-JNW)
4869-4667-2058v.5 0002348-000031

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

likewise held that personal disagreement with racial equity training does not support a discrimination action.  *See, e.g.  Norgren v. Minnesota Dep't of Hum. Servs.*, No. 22-489 ADM/TNL, 2023 WL 35903, at *3 (D. Minn. Jan. 4, 2023), *aff'd*, 96 F.4th 1048 (8th Cir. 2024) (rejecting hostile work environment and constructive discharge claims based on "refusal to subscribe to CRT and 'internalized whiteness" and "forced imposition of CRT ideology" on basis that "being required to attend across-the-board diversity training is not a discriminatory practice under Title VII"); *Henderson v. Sch. Dist. of Springfield R-12*, 650 F. Supp. 3d 786, 802 (W.D. Mo. 2023) ("Plaintiffs contend they should not have to listen to, learn, or follow Defendants' description of equity and anti-racism discussed during the training because they personally disagree.  The problem with such a theory is, particularly in areas of controversy like racial policy, a government entity would be unlikely to find any approach all employees find agreeable."); *Shannon v. Cherry Creek Sch. Dist.*, No. 20-cv-3469-WJM-SKC, 2022 WL 4364151, at *3, 7 (D. Colo. Sept. 21, 2022) (rejecting Black plaintiff's claim that equity trainings subjected her to a racially hostile work environment where "the undisputed evidence demonstrates that the equity trainings adhere to the policy designed to promote workplace equity and nondiscrimination"); *Maron v. Legal Aid Soc'y*, 605 F. Supp. 3d 547, 552 (S.D.N.Y. 2022) (granting motion to dismiss despite Plaintiff's complaints that employer training "insists on defining everyone by race, invites discrimination[,] and divides all thought and behavior along a racial axis").

Here, the City's trainings are based in social science and history, and expressly teach that institutional racism and inequity are the products of history and structures—they are not attributable to individual white people, and in fact can harm white people as well as people of color.  Wise Report at 40 (RSJI teaches that racism and white supremacy are deeply embedded in customs, structures, and American society but "says nothing about the character of white people, as people"); Sharkey Dep. at 46:20-47:2 (RSJI recognizes that institutional racism arose from American history); 128:10-129:12 (white privilege was about historic access, not about individual white people having more privilege than others).  Plaintiff may not agree with these

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 17
(Case 2:22-CV-01640-JNW)
4869-4667-2058v.5 0002348-000031

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

concepts, but that does not mean he has experienced discrimination by being exposed to them.[5]

**2. Plaintiff's other allegations of racial comments are insufficient to carry his claim because they are time-barred and in any event are merely offensive utterances.**

As an initial matter, most of Plaintiff's  harassment allegations are barred by the statute of limitations.  The statute of limitations for a hostile work environment claim is three years.  *Antonius v. King Cty.*, 153 Wn.2d 256, 261 (2004).  Untimely allegations may be considered, but only if they bear a sufficient relationship to the timely allegations such that they are "part of the same unlawful employment practice."  *Id.*  This typically requires that the conduct at issue involved "the same type of employment action, occurred relatively frequently, and [was] perpetrated by the same managers."  *Crownover v. State ex. Rel Dept. of Transportation*, 165 Wn. App. 131, 144 (2011) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 120 (2002)).  Acts that are "so discrete in time or circumstances that they do not reinforce each other' do not constitute a single hostile work environment.  *Id. See also Cox v. Oasis Physical Therapy*, 153 Wn. App. 176 (2009) (where there has been "intervening action by the employer," an untimely act "is no longer part of the same hostile environment claim").

Nearly all of Plaintiff's specific allegations are from 2017 or earlier.  For example, Plaintiff claims he caught another employee denying white applicants benefits because they had white privilege in 2016.  He claims that a manager asked him, "what a straight white male could possibly offer this department" in 2016.  He claims that another manager told him it was impossible to be racist towards a white person sometime before April 2017.  Plaintiff also claimed another employee told him he was "mansplaining" in 2017.  Plaintiff Dep. at 152-155 (although he admits he is not sure what it means and also that she did not say it directly to him).  And he claims another employee commented about the United States' history of white supremacy in a way that felt discriminatory to him in 2017.  Plaintiff Dep. Vol 1 at 175:3-181:4.

---

[5] Additionally, calling someone racist is not the equivalent of making a racially derogatory comment.  *Maron*, 605 F. Supp. 3d  at 560 ("[A]s a matter of both logic and precedent, accusations of racism against a white person are not *ipso facto* indicia of race-based discrimination."); *Phillips v. Starbucks Corp.*, 624 F. Supp. 3d 530, 548 (D.N.J. 2022) ("[A]n accusation of racism, however wrong, does not fall within the protections of Title VII.").

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 18
(Case 2:22-CV-01640-JNW)
4869-4667-2058v.5 0002348-000031

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1      Within the limitations period, Plaintiff alleges vaguely that people called him a

2 "colonist," but he cannot identify details.  Plaintiff Dep. at 260:2-22.  He claims there were more

3 racial comments outside of RSJI trainings, but he cannot recall any specifics.  *Id.* at 262:14-

4 264:17.  His most concrete allegation is one remark from Said in February 2020.  Because

5 Plaintiff's untimely allegations involve different people and circumstances than what little he

6 alleges occurred in 2019-2021, they should not be considered part of the same alleged unlawful

7 practice.  This leaves virtually no allegations in support of this claim, warranting its dismissal.

8      Even if the Court considers all of Plaintiff's allegations, he cannot create an issue of fact

9 that any harassment was severe or pervasive.  In assessing whether conduct rises to the level of

10 harassment under Title VII and WLAD, "the court examines the frequency of the discriminatory

11 conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive

12 utterance; and whether it unreasonably interferes with an employee's work performance."

13 *Reynaga v. Roseburg Forest Products*, 847 F.3d 678, 687 (9th Cir. 2017); *Blackburn*, 186 Wn.2d

14 at 261 n.4.  "'[S]imple teasing, offhand comments, and isolated incidents (unless extremely

15 serious)' are not sufficient to create an actionable claim under Title VII [or § 1981][.]"  *Reynaga*,

16 847 F.3d at 687 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).

17      Outside of the trainings (the last official one of which he took in 2019), Plaintiff alleges a

18 handful of allegations he found offensive over the span of over five years.  This is not the type of

19 oppressive environment courts find sufficient for a hostile work environment, and this claim

20 should be dismissed.  *See Vitt v. City of Cincinnati*, 250 F. Supp. 2d 885, 890 (S.D. Ohio 2002),

21 aff'd, 97 F. App'x 634 (6th Cir. 2004) (comment that all white people are racist, various

22 interpersonal disputes with black employees, supervisor comment that white employee's

23 complaints were not taken seriously, and anonymous carving of "white bitch" into plaintiff's

24 desk were insufficient to create prima facie case of hostile work environment); *Sanchez v. City of

25 Santa Ana*, 936 F.2d 1027, 1031, 1036 (9th Cir.1990) (allegations that employer posted a racially

26 offensive cartoon, made racially offensive slurs, targeted Latinos when enforcing rules, provided

27 unsafe vehicles to Latinos, did not provide adequate police backup to Latino officers, and kept

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 19
(Case 2:22-CV-01640-JNW)
4869-4667-2058v.5 0002348-000031

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

illegal personnel files on plaintiffs because they were Latino were insufficient).

### 3. Plaintiff's belief that RSJI materials and coworker comments constituted harassment was not objectively reasonable.

Plaintiff repeatedly asserted during his employment that the RSJI was discriminatory and harassing towards him as a white male.  To prove a hostile work environment, however, Plaintiff must show not only that he perceived conduct as harassing, but that the work environment was hostile from "the perspective of a reasonable person belonging to the plaintiff's racial or ethnic group[.]"  *Reynaga*, 847 F.3d at 687.  Here, Plaintiff's objections to RSJI and the umbrage he took in response to his coworkers' comments are tied to his outlier, fringe views on race.  For example, Plaintiff disagrees with the concept of white privilege and believes it is discriminatory for employers to teach about it.  Plaintiff Dep. Vol 1 at 148:23-149:14.  Plaintiff denies the United States' history of white supremacy and finds discussion of this concept offensive.  *Id.* at 175:17-177:6.  He believes it is offensive and discriminatory to state that colorblind policies perpetuate white supremacy or to say that white people benefit from systems of white supremacy.  *Id.* at 200:5-21, 202:2-203:5.  *See also id.* at 225:1-226:9 (it is offensive to be asked to identify his race in an employment situation); 227:9-228:8 (it is offensive to say white people in this country historically bore responsibility for slavery); 229:7-231:21 (discussions of white privilege and tribal land acknowledgments are discriminatory); *see* Plaintiff Dep. Vol 2 at 403:3-405:10 (it was offensive to be invited to a white caucus gathering, even though he did not read the article whose title he found offensive).

Plaintiff's extreme views on race demonstrate that his perspective is not that of a reasonable person, and his subjective perception of discrimination should therefore carry no weight.

### 4. No Racial Harassment was imputed to the City because the City investigated and could not substantiate Plaintiff's claims.

An employer is only liable for harassment "if it knew or should have known of the harassing conduct and failed to take reasonably prompt and adequate corrective

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 20
(Case 2:22-CV-01640-JNW)
4869-4667-2058v.5 0002348-000031

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

action." *Silbaugh v. Buttigieg*, No. C17-1759RSM, 2021 WL 3565431, at *7 (W.D. Wash. Aug. 12, 2021).

Here, the City took immediate corrective action upon learning of Plaintiff's concerns about Said, and Plaintiff admits Said never made another racial comment to him.  When Plaintiff later filed an EEOC charge, the City quickly commenced an investigation.  It assigned an attorney investigator from the HRIU, and it bifurcated the investigation to avoid any perceived conflict of interest.  The City investigated the allegations using the limited information Plaintiff provided and determined the RSJI does not discriminate against white people.  It also concluded the allegations about individuals did not violate City policy.  Plaintiff cites no harassing conduct from other employees after his EEOC charge.  For this additional reason, his claims should be dismissed.  *Vitt*, 250 F. Supp. 2d  at 890 (finding plaintiff failed to state a claim for harassment when employer took steps to address Plaintiff's concerns, including meeting with her to discuss her concerns and conducting an investigation into her complaints).

### C.   Plaintiff's Disparate Treatment and Retaliation claims fail because he did not experience an adverse action and was not constructively discharged.

For his disparate treatment claim, Plaintiff must establish that he (1) is a member of a protected class; (2) performed his job satisfactorily; (3) experienced an adverse employment action; and (4) similarly situated individuals outside of plaintiff's protected class were treated more favorably.  *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006).  Under the WLAD, adverse employment action means "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."  *Marin v. King County*, 194 Wn. App. 795, 808 (2016).  Under Title VII, Plaintiff must show "some harm respecting an identifiable term or condition of employment."  *Muldrow v. St. Louis*, 601 U.S. ---, 144 S. Ct. 967, 974 (2024).   For his retaliation claim, Plaintiff must demonstrate he experienced an adverse event that "would deter reasonable employees from complaining" about discrimination.  *Brooks*

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 21
(Case 2:22-CV-01640-JNW)
4869-4667-2058v.5 0002348-000031

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

*v. City of San Mateo,* 229 F.3d 917, 928 (9th Cir. 2000); *Ray v. Henderson*, 217 F.3d 1234, 1243 (9th Cir. 2000).

Plaintiff was not terminated, disciplined, transferred, or otherwise negatively impacted at the City.  While he objected to RSJI trainings and activities, it is undisputed that RSJI requirements were applied to all employees, regardless of race.  In any event, attending an educational training that the employee finds uncomfortable does not rise to the level of an adverse action. *Brooks*, 229 F.3d at 929.  Nor can Plaintiff claim the City's alleged decision not to authorize his affinity group constitute disparate treatment—first, the City did not deny his request, he dropped it after Groce explained the approval process.  Second, Plaintiff does not allege that another employee was permitted to create an affinity group that conflicted with RSJI goals or that the denial of his proposed affinity group negatively impact him. *Moranski v. General Motors*, 433 F.3d 537 (7th Circuit 2005) (rejection of request to start Christian affinity group did not constitute discrimination where decision was based on blanket rule against all religious affinity group).  Finally, the various allegations Plaintiff asserts regarding his experiences after filing his EEOC charge are baseless and did not harm him in any way, as discussed above.

Plaintiff's sole avenue to avoid dismissal of his disparate treatment or retaliation claims is constructive discharge, which he cannot prove.  Constructive discharge is "an employee's reasonable decision to resign because of unendurable working conditions."  *State of Washington v. Horning Bros., LLC*, 339 F. Supp. 3d 1106, 1130–31 (E.D. Wash. 2018) (citing *Pennsylvania State Police v. Suders*, 542 U.S. 129, 141 (2004)).  This is an objective inquiry for the Court. *Id.* at 1131 (under Washington law, an employee must show: (1) the employer engaged in deliberate conduct which made the employee's working conditions intolerable; (2) a reasonable person in the employee's position would be forced to resign; (3) the employee resigned solely because of the intolerable conditions; and (4) the employee suffered damages) (citing *Allstot v. Edwards*, 116 Wn. App. 424, 433 (2003)).  Resignations are presumed voluntary and cannot give rise to a claim for constructive discharge unless the employee shows "the resignation was prompted by

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 22
(Case 2:22-CV-01640-JNW)
4869-4667-2058v.5 0002348-000031

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

duress or an employer's oppressive actions." *Townsend v. Walla Walla Sch. Dist.*, 147 Wn. App. 620, 627-628 (2008).

At the time of his resignation, Plaintiff had not been mandated to take a specific RSJI training in nearly two years. He had adamantly refused to participate in two RSJI activities a year, yet he faced no discipline or negative impact on his review. The City had investigated his discrimination complaints, HR had corrected his FMLA paperwork error, and his management and HR were working through his technical and other issues pertaining to working remotely. There was nothing preventing Plaintiff from remaining employed at the City other than the fact that he had already moved to Texas and did not wish to return to Seattle for work. There is simply no basis to find a constructive discharge here, and so all claims predicated on this theory should be dismissed. *Sneed v. Barna*, 80 Wn. App. 843, 850 (1996) (no evidence of constructive discharge where plaintiff had to share a secretary and supplies in her new position, was moved to a small and noisy office, and received no guidance because these allegations, while frustrating, were not objectively intolerable); *Barrett v. Weyerhaeuser Co. Severance Pay Plan*, 40 Wn. App. 630, 638 (1985) (mere dissatisfaction with working conditions does not negate the voluntariness of a resignation).

## IV.   CONCLUSION

For the foregoing reasons, the Court should grant Defendant's Motion for Summary Judgment and dismiss all claims with prejudice.

DATED August 16, 2024.          *I certify that this Motion contains 8,394 words, in compliance with the Local Civil Rules.*

DAVIS WRIGHT TREMAINE LLP
*Attorneys for Defendant The City of Seattle*

By   /s/ Victoria M. Slade
   Sheehan Sullivan, WSBA #33189
   Victoria M. Slade, WSBA 44597
   Darrah N. Hinton, WSBA #53542
   920 Fifth Avenue, Suite 3300
   Seattle, WA 98104-1610
   Telephone: 206.622.3150
   sulls@dwt.com
   vickyslade@dwt.com
   darrahhinton@dwt.com

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 23
(Case 2:22-CV-01640-JNW)
4869-4667-2058v.5 0002348-000031

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.622.3150 main · 206.757.7700 fax

1

## **CERTIFICATE OF SERVICE**

2

I hereby certify that I caused a true and correct copy of the document to which this

3

Certificate of Service is attached to be served in the manner as indicated below:

4

**PACIFIC LEGAL FOUNDATION**
*Attorneys for Plaintiff:*

5

☐ Via Legal Messenger

☐ Via U.S. Mail, postage
prepaid

6

**Wesley P. Hottot, WSBA #47539**
1425 Broadway, Suite 429

7

Seattle, WA  98122
Telephone:  425.576.0484
whottot@pacificlegal.org

☐ Via Federal Express

☐ Via Facsimile

8

Additional Email Address for Service:
Brien P. Bartels, Legal Secretary
bbartels@pacificlegal.org

9

⊠ **Via Electronic Mail, per
the Electronic Service
Agreement**

10

**Laura M. D'Agostino, Virginia Bar #91556**
*Admitted Pro Hac Vice*

⊠ **Via CM/ECF**

11

3100 Clarendon Boulevard, Suite 1000
Arlington, VA  22201

12

Telephone:  916.503.9010
ldagostino@pacificlegal.org

13

14

**Andrew R. Quinio, California Bar #288101**
*Admitted Pro Hac Vice*

15

555 Capitol Mall, Suite 1290
Sacramento, CA  95814

16

Telephone:  916.419.7111
aquinio@pacificlegal.org

17

18

**Erin E. Wilcox, California Bar #337427**
*Admitted Pro Hac Vice*

19

555 Capital Mall, Suite 1290
Sacramento, CA  95814

20

Telephone:  916.419.7111
ewilcox@pacificlegal.org

21

**Nicholas J. DeBenedetto**

22

**New Jersey Bar #382442021**
*Admitted Pro Hac Vice*

23

3100 Clarendon Blvd, Suite 1000
Arlington, VA  22201

24

Telephone:  916.419.7111
NDeBenedetto@pacificlegal.org

25

///

26

///

27

///

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 24
(Case 2:22-CV-01640-JNW)
4869-4667-2058v.5 0002348-000031

Davis Wright Tremaine LLP
LAW OFFICES
920 Fifth Avenue, Suite 3300
Seattle, WA  98104-1610
206.622.3150 main · 206.757.7700 fax

1    Declared under penalty of perjury under the laws of the State of Washington.

2    DATED August 16, 2024 at Renton, Washington.

3

4                              /s/ Greta Nelson
                              Greta Nelson, Legal Assistant
5                              DAVIS WRIGHT TREMAINE LLP
                              920 Fifth Avenue, Suite 3300
6                              Seattle, WA  98104-1610
                              Telephone:  206.622.3150
7                              gretanelson@dwt.com

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27